ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
ddonadio@braytonlaw.com
GEOFF T. SLONIKER, ESQ., S.B. #268049
gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California  94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY MARION,<br><br>           Plaintiff-Claimant,<br><br>vs.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.,<br><br>           Defendant-Employer,<br><br>and<br><br>PACIFIC SHIP REPAIR, FRASER'S BOILER SERVICE, INC., DAVIS BOAT WORKS, INC., THE MARINE GROUP LLC, THE OFFICE OF THE SOLICITOR,<br><br>           Parties-in-Interest. | No. <u>3:21-cv-10081</u><br><br>COMPLAINT FOR SANCTIONS PURSUANT TO 5 U.S.C. 33.927(b) |

## I.

## PARTIES

1.    Plaintiff in this action, Mary Marion, is the Claimant in an action for death benefits filed under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.

///

///

2.      Plaintiff's husband, Decedent Vernon Marion ("Decedent"), sustained asbestos-related lung injuries due to the occupational inhalation of asbestos fibers and died from his asbestos-related lung injuries on November 10, 2016.

3.      Decedent was exposed to asbestos while working for Southwest Marine from 1979 until 1993.  Southwest Marine changed its name to BAE Systems San Diego Ship Repair, Inc., in 2005.  BAE Systems San Diego Ship Repair, Inc., is a Respondent in Plaintiff's Longshore & Harbor Workers' Compensation Act claim and the Defendant in this matter.

4.      Plaintiff's claim in this matter arises out of Defendant's defective responses to discovery propounded under 29 CFR § 18.50, et seq., and Defendants's subsequent failure to comply with discovery orders.

5.      The Parties-in-Interest to this matter are Decedent's other employers who have been joined to Claimant's action but against whom sanctions are not being sought in this action, and the Office of the Solicitor, which represents the Director, Office of Workers' Compensation Programs.  The Parties-in-Interest include Pacific Ship Repair, Inc., Fraser's Boiler Service, Inc., Davis Boat Works, Inc., The Marine Group LLC and the Office of the Solicitor (hereinafter jointly referred to as the "Parties-in-Interest").

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

6.      <u>Jurisdiction</u>:  Plaintiff is a citizen of the State of California.

This Court has jurisdiction under 33 U.S.C. § 927(b) in that a matter can be referred to the Federal District Court for enforcement when any person in a proceeding before a deputy commissioner or Board disobeys or resists any lawful order or process.

7.      <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as Claimant's underlying claim under the Longshore & Harbor Workers' Compensation Act is pending in the Office of Administrative Law Judges in San Francisco.

///

///

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Sanctions)

Plaintiff Mary Marion seeks sanctions from Defendant BAE Systems San Diego Ship Repair, Inc., for sanctions for the following behavior:

8.      Plaintiff Mary Marion filed a claim (the "Claim") for death benefits under the Longshore & Harbor Workers' Compensation Act, 33 USC 901, et seq, upon the death of Decedent.

9.      Plaintiff joined entities including BAE Systems San Diego Ship Repair, Inc., and The Marine Group as successors to Decedent's employer Southwest Marine.

10.      Decedent Vernon Marion worked for Southwest Marine from 1979 until 1993. The parties, including BAE Systems San Diego Ship Repair ("BAE Systems") and Marine Group, stipulated including that Decedent was exposed to asbestos between 1979 and 1993 while employed by Southwest Marine.

11.      On October 13, 2020, Plaintiff propounded written discovery on BAE Systems San Diego Ship Repair, Inc., by email.  This discovery sought, among other documents and information, specific documents that had been identified in a January 27, 2012, Order in *Century Indem. Co. v. Marine Group, LLC*, United States District Court for the District of Oregon, Portland Division, Civ. No. 08-1375-AC, which was a case involving insurance coverage.  A section of the Order, titled "Corporate Succession," is relevant to which entity holds Southwest Marine's, liability under the Longshore & Harbor Workers' Compensation Act.  The information contained within that section was largely based on at least two declarations and the attached exhibits from Southwest Marine's President's Arthur Engel.

12.      BAE Systems San Diego Ship Repair, Inc., served responses to Plaintiff's discovery on October 26, 2020.

13.      After meeting and conferring with BAE San Diego Ship Repair, Inc., due to the defective nature of its responses, on December 14, 2020, Plaintiff filed a motion to compel BAE

1   Systems San Diego Ship Repair, Inc., to provide further responses.  Plaintiff's Motion to Compel

2   is attached as **Exhibit A**.

3          14.     On March 16, 2021, Administration Law Judge Evan H. Nordby held a hearing

4   via Microsoft Teams regarding Claimant's motion to compel.  During the hearing, Judge Nordby

5   found that BAE Systems San Diego Ship Repair, Inc.'s, objections to discovery were insufficient

6   and ordered that BAE Systems San Diego Ship Repair, Inc., provide supplemental responses to

7   discovery by April 19, 2021.

8          15.     During the aforementioned hearing, Judge Nordby also ordered that the

9   depositions of BAE Systems San Diego Ship Repair, Inc.'s, four witnesses – Richard Stanton,

10  Ellen Vinck, Laura Machado and Lisa Cake – occur by May 28, 2021.

11         16.     The transcript of March 16, 2021, telephonic hearing is attached as **Exhibit B**.

12         17.     BAE Systems neither produced supplemental responses to Plaintiff's discovery

13  nor did not produce its witnesses for deposition.

14         18.     Upon receipt of a motion requesting referral to the District Court, Judge Nordby

15  issued a June 4, 2021, Order to Show Cause directing counsel for BAE Systems San Diego Ship

16  Repair, Inc., to show cause why this matter should not be referred to the District Court for further

17  proceedings under the Longshore & Harbor Workers' Compensation Act.  The Order to Show

18  Cause is attached as **Exhibit C**.

19         19.     BAE Systems San Diego Ship Repair, Inc., responded to the Order to Show Cause

20  on June 17, 2021.  Within its response, BAE Systems San Diego Ship Repair, Inc., asserted that

21  no lawful order existed but acknowledge that Section 27 of the Longshore & Harbor Workers'

22  Compensation Act would apply to an entity that had not complied with a discovery order.  BAE

23  Systems San Diego Ship Repair, Inc.'s, response to the Order to Show Cause is attached as

24  **Exhibit D**.

25         20.     Judge Nordby issued his Findings of Fact Regarding Discovery Sanctions and

26  Order of Referral on December 2, 2021.  The Order is attached as **Exhibit E.**

27  ///

28  ///

IV.

**PRAYER**

Plaintiff Mary Marion seeks an Order from the District Court:

(a)    Compelling BAE Systems San Diego Ship Repair, Inc., to produce all of the documents requested in the discovery that she propounded;

(b)    Compelling BAE Systems San Diego Ship Repair to provide further written responses to discovery as appropriate;

(c)    Compelling BAE Systems San Diego Ship Repair, Inc., to immediately pay all costs and attorney fees, according to proof, associated with having to bring this matter before the District Court, separate and apart from any costs and fees for which BAE Systems San Diego Ship Repair, Inc., may be liable upon the conclusion of Plaintiff's claim under the Longshore & Harbor Workers' Compensation Act; and

(d)    For such other and further relief as the District Court may deem just and proper.


Dated:    _____12/30/21_____                    BRAYTON❖PURCELL LLP


                                               By: /s/ David R. Donadio
                                               David R. Donadio, Esq., S.B. #154436
                                               Attorneys for Plaintiff-Claimant Mary Marion

# EXHIBIT A

1 ALAN R. BRAYTON, ESQ., S.B. #73685
GEOFF T. SLONIKER, ESQ., S.B. #268049
2 gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
3 ATTORNEYS AT LAW
222 Rush Landing Road
4 P.O. Box 6169
Novato, California 94948-6169
5 Tel: 415-898-1555
Fax: 415-898-1247
6
7 Attorneys for Claimant MARY MARION

8 **UNITED STATES DEPARTMENT OF LABOR**

9 **OFFICE OF ADMINISTRATIVE LAW JUDGES**

10

| | |
|---|---|
| 11 MARY MARION (Widow), VERNON ) | OALJ Case No.: 2019-LHC-01475 |
| 12 MARION (Deceased), Claimant, ) | OWCP Case No.: 13-306597 |
| 13 vs. ) | CLAIMANT'S MOTION TO COMPEL |
| ) | BAE SYSTEMS SHIP REPAIR SAN |
| 14 FRASER'S BOILER SERVICE, ) | DIEGO TO PROVIDE FURTHER |
| Employer, ) | RESPONSES TO CLAIMANT'S |
| 15 ) | DISCOVERY AND TO PRODUCE |
| and ) | DOCUMENTS |
| 16 PACIFIC SHIP REPAIR AND ) | |
| FABRICATION, Employer ) | |
| 17 ) | Hon. Evan H. Nordby |
| and ) | |
| 18 THE MARINE GROUP, Employer, ) | |
| 19 ) | |
| and ) | |
| 20 PACIFIC SHIP REPAIR, Employer, ) | |
| 21 ) | |
| and ) | |
| 22 DIRECTOR, OFFICE OF WORKERS' ) | |
| 23 COMPENSATION PROGRAMS, Party- ) | |
| In-Interest. ) | |
| 24 ) | |

25          COMES NOW Claimant Mary Marion with a motion to compel BAE Systems Ship

26 Repair San Diego to provide further responses to discovery and to produce documents.

27 ///

28 ///

mtc BAE rsps.wpd                                        1
CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO
CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

*(left margin, vertical text)* BRAYTON❖PURCELL LLP / ATTORNEYS AT LAW / 222 RUSH LANDING ROAD / P.O. BOX 6169 / NOVATO, CALIFORNIA 94948-6169 / 415-898-1555

**I.**

**INTRODUCTION**

Claimant Mary Marion ("Claimant") propounded Interrogatories, Request for Production of Documents and Requests for Admission to BAE Systems San Diego Ship Repair ("BAE Systems"). Decedent Vernon Marion ("Decedent") worked for Southwest Marine, Inc. ("Southwest Marine"), from 1979 until 1993. The parties have stipulated that Decedent was exposed to asbestos during that employment and that Decedent died from lung cancer caused by his asbestos exposures.

In 1997, Southwest Marine engaged in a series of transactions that resulted in the creation of The Marine Group, LLC ("Marine Group") and the potential transfer of Southwest Marine's liability under the Longshore & Harbor Workers' Compensation Act. In 2005, Southwest Marine changed its named to BAE Systems San Diego Ship Repair (BAE Systems).

Claimant's discovery seeks information and documents related to the identify of the entity that now holds Southwest Marine's pre-1997 liability under the Longshore & Harbor Workers' Act. Both BAE Systems and co-defendant The Marine Group, LLC ("Marine Group"), have each denied holding that liability. BAE Systems has also refused to produce the requested information and materials. Instead, without explanation, BAE Systems simply states that the information and documents are not relevant.

Claimant has therefore filed this Motion to Compel to obtain the requested information and documents, which are necessary for Claimant to prosecute her claim.

**II.**

**STATEMENT OF FACTS**

Decedent Vernon Marion worked for Southwest Marine from 1979 until 1993. Declaration of Geoff T. Sloniker ("Sloniker Decl.") ¶ 2. The parties, including BAE Systems and Marine Group, stipulated including that Decedent was exposed to asbestos between 1979 and 1993 while employed by Southwest Marine. Id.

Marine Group served its Initial Disclosures in this matter on November 1, 2019. Sloniker Decl. ¶ 3, Ex. A. In its Initial Disclosures, The Marine Group included the following

argument in the section containing its allegations regarding benefits entitlement: "[The Marine Group] contends that Decedent did not have any injurious exposure during his employment with Southwest Marine, such that there is no compensable injury as against [The Marine Group]." Id.

During the Informal Conference in another matter, BAE Systems's counsel in this case, Frank Hugg, stated that "any work performed for BAE Systems prior to November 7, 1997, is covered under the Marine Group." Sloniker Decl. ¶ 4, Ex. B, pg. 4.

Southwest Marine changed its name to "BAE Systems San Diego Ship Repair" in 2005. Sloniker Decl. ¶ 5, Ex. C.

Just prior to the previously-set formal hearing, BAE Systems and Marine Group filed separate Motions to Dismiss asserting that neither held Southwest Marine's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act. Sloniker Decl. ¶ 6. In response to those motions – and Claimant's motion to exclude BAE Systems's and Marine Group's witnesses and documents that both defendants failed to timely disclose – the Court scheduled a September 21, 2020, status conference in lieu of the formal hearing. Id. At the status conference, the parties discussed a new schedule for the proceedings in this matter. Id. Pursuant to the new schedule, discovery closes on January 22, 2021. Id.

On October 13, 2020, Claimant propounded written discovery on BAE Systems by email. Sloniker Decl. ¶ 7. This discovery sought, among other documents and information, specific documents identified in a January 27, 2012, Order issued in a case involving Marine Group. Id., Exhibit D. Within that Order is a section titled "Corporate Succession," which is relevant to which entity holds Southwest Marine's liability under the Act. Id. The information contained within that section was largely based on at least two declarations and the attached exhibits from Southwest Marine's President's Arthur Engel. Id. According to that section:

- In 1997, Southwest Marine Holdings, Inc. ("SWM Holdings"), purchased the stock of Southwest Marine, and Marine Group was formed at or around the same time to be a repository of assets and liabilities, *Century Indem. Co. v. Marine Group, LLC*, 848 F.Supp.2d 1238, 1243 (D. Or. 2012);

3
CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

1

2

3

- A document entitled "Stock Purchase Agreement" governed this sale of stock to Southwest Marine Holdings and stated that the stockholders of Southwest Marine would retain certain liabilities, Id.;

4

5

- Southwest Marine assigned these liabilities to Marine Group in an agreement entitled "Assignment and Assumption Agreement," Id.;

6

7

8

9

- The Assignment and Assumption Agreement provided for assignment of the liabilities described in the Stock Purchase Agreement related to any business or activity conducted by any of certain companies identified in the Stock Purchase Agreement, Id.

10

<u>Requests for Production of Documents</u>

11     Claimant propounded Requests for Production of Documents seeking specific

12 documents including those identified above to determine whether BAE Systems or Marine

13 Group hold Southwest Marine's pre-1997 liability under the Longshore & Harbor Workers'

14 Compensation Act.  Sloniker Decl., ¶ 8, Ex. E.  BAE Systems responded that the requested

15 documents were not relevant.  Sloniker Decl., ¶ 12, Ex. H.  The table below summarizes the

16 requests and BAE Systems's responses.

17

| Request for Production | Objection |
|---|---|
| Request No. 1: YOUR current DOCUMENT retention policy. | Objection, not relevant. |
| Request No. 2: All of YOUR prior DOCUMENT retention policies. | Not relevant. |
| Request No. 3: YOUR Articles of Incorporation at the time of YOUR incorporation. | Not relevant. |
| Request No. 4: All amendments to YOUR Articles of Incorporation. | Not relevant. |
| Request No. 5: All DOCUMENTS PERTAINING TO the relationship between YOU and SOUTHWEST MARINE. | SOUTHWEST MARINE was a predecessor to BAE. |
| Request No. 6: All DOCUMENTS PERTAINING TO the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS. | Not relevant. |

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| <u>Request No. 7</u>: All DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to SOUTHWEST MARINE HOLDINGS. | Not relevant for BAE and its successors in interest, including but not limited to Puglia Engineering, who is believed to have all extant documents in regard to the alleged transfers of liability. |
| <u>Request No. 8</u>: All DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to MARINE GROUP. | Neither respondents TMG or BAE have such records. |
| <u>Request No. 9</u>: All DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1997. | Nor [sic] relevant. |
| <u>Request No. 10</u>: All DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1998. | Not relevant. |
| <u>Request No. 11</u>: The 1997 "Assignment and Assumption Agreement" that assigned liabilities to MARINE GROUP. | Confidential and not relevant to any issue. |
| <u>Request No. 12</u>: The 1997 "Stock Purchase Agreement" that governed SOUTHWEST MARINE HOLDING's purchase of SOUTHWEST MARINE's stock. | Confidential and not relevant to any issue. Stock purchases again are not related in any fashion to the alleged agreement. |
| <u>Request No. 13</u>: All DOCUMENTS, including the insurance policies, PERTAINING TO SOUTHWEST MARINE's Longshore & Harbor Workers' Compensation Act liability insurance for each year between 1979 and 1993. | This policy is proprietary. |
| <u>Request No. 14</u>: All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR corporate officers at the time of YOUR formation. | Not relevant. |
| <u>Request No. 15</u>: All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR corporate officers in 1997. | Not relevant. |
| <u>Request No. 16</u>: All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR current corporate officers. | Not relevant. |
| <u>Request No. 17</u>: All DOCUMENTS PERTAINING TO any agreements between YOU and MARINE GROUP PERTAINING TO this CLAIM. | There may be such oral agreements, but TMG and BAE have resolved the coverage issues between the corporations for the alleged losses herein. |

CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO
CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

| | |
|---|---|
| Request No. 18: A copy of the declaration of Arthur Engel, and all attached exhibits (Docket Number 301), filed on April 20, 2011, in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District of Oregon. | Not relevant. |
| Request No. 19: A copy of the declaration of Arthur Engel (Docket Number 369), and all attached exhibits, filed on July 11, 2011, in Century Indemnity Company v. The Marine Group LLC, et al, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District of Oregon. | Not relevant. |

<u>Interrogatories</u>

Claimant propounded Interrogatories seeking information including what had become of Southwest Marine's liabilities under the Longshore & Harbor Workers' Compensation Act and the identify of witnesses who might have such information.  Sloniker Decl., ¶ 9, Ex. F.  BAE Systems's responses were largely non-responsive and evasive.  Sloniker Decl., ¶ 13, Ex. I.  The table below summarizes those responses.

| Interrogatories | Responses |
|---|---|
| Interrogatory No. 4: State the year that YOU formed. | Irrelevant. |
| Interrogatory No. 5: State whether YOU amended YOUR Articles of Incorporation in 2005 to change your name to BAE Systems San Diego Ship Repair, Inc., from Southwest Marine, Inc. | Irrelevant. |
| Interrogatory No. 6: State whether SOUTHWEST MARINE sold its stock to SOUTHWEST MARINE HOLDINGS in 1997. | Not relevant. |
| Interrogatory No. 7:  IDENTIFY all DOCUMENTS PERTAINING TO the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS. | Not relevant. |

| Interrogatory No. 8: IDENTIFY all PERSONS with information PERTAINING TO the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS. | Not relevant. |
|---|---|
| Interrogatory No. 9: IDENTIFY all DOCUMENTS PERTAINING TO communications BETWEEN SOUTHWEST MARINE and SOUTHWEST MARINE HOLDINGS. | Not relevant. |
| Interrogatory No. 10: State which liabilities SOUTHWEST MARINE assigned to MARINE GROUP. | Not relevant. |
| Interrogatory No. 11: IDENTIFY all PERSONS with information PERTAINING TO the liabilities which SOUTHWEST MARINE assigned to MARINE GROUP. | Not relevant. |
| Interrogatory No. 12: IDENTIFY all DOCUMENTS PERTAINING TO the liabilities SOUTHWEST MARINE assigned to MARINE GROUP. | Not relevant. |
| Interrogatory No. 13: If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act liability, state all facts that support that contention. | Do not so contend. |
| Interrogatory No. 14: If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act liability, IDENTIFY all PERSONS with information that support that contention. | Not relevant. |
| Interrogatory No. 15: If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act liability, IDENTIFY all DOCUMENTS which support that contention. | Not relevant. |
| Interrogatory No. 16: State the name of each company to which YOU tendered this CLAIM. | Not relevant. |
| Interrogatory No. 17: State whether YOU have had communications with MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |

CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO
CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

| | |
|---|---|
| Interrogatory No. 18: IDENTIFY all PERSONS with information PERTAINING TO YOUR communications with the MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |
| Interrogatory No. 19: IDENTIFY all DOCUMENTS PERTAINING TO communications between YOU and the MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |
| Interrogatory No. 20: State the name of the PERSONS who hold SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act. | Not relevant. |
| Interrogatory No. 21: IDENTIFY all PERSONS with information PERTAINING TO THE PERSON who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act. | Not relevant. |
| Interrogatory No. 22: IDENTIFY all DOCUMENTS PERTAINING TO the PERSON who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act. | Not relevant. |
| Interrogatory No. 23: State whether YOU have entered into any agreements with MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |
| Interrogatory No. 24: IDENTIFY all PERSONS with knowledge of agreements between YOU and MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |
| Interrogatory No. 25: IDENTIFY all DOCUMENTS PERTAINING TO agreements between YOU and MARINE GROUP PERTAINING TO this CLAIM. | Not relevant. |

### Request for Admissions

Claimant propounded Requests for Admission seeking to confirm facts including certain about BAE Systems and about potential witnesses. Sloniker Decl., ¶ 10, Ex. G. Some of BAE Systems's responses denied easily-proven facts, and BAE Systems also failed to answer several of the Requests. Sloniker Decl., ¶ 14, Ex. J. The table below summarizes those responses.

| Requests for Admissions | Responses |
|---|---|
| Request No. 6: Admit that YOUR name prior to 2005 was Southwest Marine, Inc. | Denied. |
| Request No. 7: Admit that YOU amended YOUR Articles of Incorporation in 2005 to change YOUR name from Southwest Marine, Inc., to BAE Systems San Diego Ship Repair. | Denied. |
| Request No. 11:  Admit that Arthur Engel was SOUTHWEST MARINE's president at the time that it was formed. | BAE Systems did not provide a response. |
| Request No. 12:  Admit that Arthur Engel was one of SOUTHWEST MARINE's owners at the time that it was formed. | BAE Systems did not provide a response. |
| Request No. 13:  Admit that Arthur Engel was SOUTHWEST MARINE's president in 1997. | BAE Systems did not provide a response. |
| Request No. 14: Admit that Arthur Engel was one of SOUTHWEST MARINE's owners in 1997. | BAE Systems did not provide a response. |

Subsequent Meet and Confer Efforts

On October 29, 2020, counsel Claimant mailed a letter to counsel for BAE Systems identifying the deficiencies with BAE Systems's responses to Claimant's discovery.  Sloniker Decl., ¶ 15, Ex. K.  Claimant has yet to receive a written response to that letter.  Id.

On November 17, 2020, counsel for Claimant discussed BAE Systems's responses to Claimant's discovery with BAE Systems'S counsel by telephone.  Sloniker Decl., ¶ 16.  BAE Systems's counsel indicated that he intended to seek approval from his client to produce the documents requested in Claimant's Requests for Production of Documents.  Id.

As of November 30, 2020, counsel for Claimant had not yet received confirmation that BAE Systems was going to produce any documents or further responses to Claimant's discovery.  Sloniker Decl., ¶ 17, Ex. L.  Counsel for Claimant emailed BAE Systems's to determine whether Claimant would receive additional materials.  Id.  BAE Systems's counsel responded that he hoped to have an answer by the end of the week.  Id.  Counsel for Claimant indicated that Claimant would file a motion to compel further responses if BAE Systems did not produce anything by 12:00 p.m. on Friday, December 4, 2020.  Id.

1    At approximately 2:30 p.m. on December 4, 2020, Claimant's counsel spoke to BAE

2  Systems's counsel about the requested information and materials.  Sloniker Decl.¶ 18.  BAE

3  Systems's counsel indicated that the requested information and documents would not be

4  provided and asserted that they are not relevant to this action.  Id.  BAE Systems's counsel

5  asserted his prior position that the documents are not relevant because Marine Group did not

6  exist until after Decedent had worked for Southwest Marine.  Id.  Claimant's counsel restated

7  Claimant's position that Marine Group obtained Southwest Marine's pre-1997 liability under the

8  Longshore & Harbor Worker's Compensation Act.  Id.  BAE Systems's counsel, who represents

9  Marine Group in this matter, was unable to state which party holds that liability.  Id.  There was

10  an agreement to further discuss Claimant's discovery the following week.  Id.

11    During another phone call on December 10, 2020, counsel for BAE Systems indicated

12  that requested information and document would not be forthcoming. Sloniker Decl.¶ 19.

### III.

### ARGUMENT

A.    THE DOCUMENTS AND INFORMATION SOUGHT IN CLAIMANT'S
DISCOVERY ARE RELEVANT

The scope of allowable discovery is broad:

> "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense — including the existence, description, nature, custody,
> condition, and location of any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter."

29 CFR 18.51(a).  Especially pertinent in this instance is that "[r]elevant information need not

be admissible at the hearing if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."  Id.  Relevant evidence means evidence having any tendency

to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence.  29 CFR 18.401.

Claimant seeks information and documents intended to determine which entity holds

Southwest Marine's pre-1997 liability under the Longshore & Harbor Workers' Compensation

Act.  Given that both Marine Group and BAE Systems (formerly Southwest Marine) asserted –

10

1   on the eve of the previously-set hearing –  that neither hold that liability, the sought-after

2   information and documents are especially relevant here.

3       B.      THE COURT SHOULD COMPEL BAE SYSTEMS TO PROVIDE
                SUBSTANTIVE RESPONSES AND THE REQUESTED DOCUMENTS
4

5           1.      Interrogatories and Requests for Production

6       Motions to compel responses to Interrogatories and Requests for Production are

7   appropriate when a party does not respond to the Interrogatories or produce documents for

8   inspection.  29 CFR 18.57 (a)(2)(ii)(C) and (D).

9       Claimant seeks information and documents from BAE Systems, which was formerly

10  known as Southwest Marine, related to the series of transactions by which Southwest Marine

11  created Marine Group.  Southwest Marine's liability under the Longshore & Harbor Workers'

12  Compensation Act may have been transferred as part of those transactions.  BAE Systems

13  "responded" to Claimant's discovery almost entirely with objections that the sought-after

14  information and documents are not relevant.  This discovery is intended to obtain information

15  and documents regarding the identify of the entity that currently holds Southwest Marine's

16  liability under the Longshore & Harbor Workers' Compensation Act.

17      BAE Systems should be required to supplement its responses to Claimant's

18  Interrogatories.  It should be ordered to provide a substantive response to each Interrogatory for

19  which the "response" was limited to an objection that the sought-after information lacked

20  relevance.  BAE Systems should also be required to produce the requested documents, which

21  are relevant to showing which entity currently holds Southwest Marine's pre-1997 liability

22  under the Longshore & Harbor Workers' Compensation Act.

23          2.      Requests for Admission

24      Pursuant to 29 CFR 18.63(a)(2), a matter is deemed admitted if a party fails to respond

25  to respond to a request for admission within 30 days.  In the present case, BAE Systems failed

26  to respond to Requests for Admission numbers 11 through 14.  Claimant requests that those

27  Requests for Admission be deemed admitted.

28  ///

**IV.**

**CONCLUSION**

For the reasons identified above, the Court should require that BAE Systems (1) provide supplemental responses to Claimant's Interrogatories that substantively address the call of each Interrogatory and (2) produce the documents requested in Claimant's Requests for Production of Documents.  Further, the Court should deem Requests for Admission numbers 11 through 14 to be admitted.

Dated:    December 11, 2020              BRAYTON❖PURCELL LLP


                                         By: /s/ Geoff T. Sloniker
                                             Geoff T. Sloniker
                                             Attorneys for Claimant Mary Marion

CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO
CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

<div align="center">

1

PROOF OF SERVICE BY EMAIL

</div>

2

I am employed in the County of Marin, State of California.  I am over the age of 18 years and am not a party to the within action.  My business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California 94948-6169.

3

4

On December 11, 2020, I served the following document(s) described as:

5

CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SHIP REPAIR SAN DIEGO TO PROVIDE FURTHER RESPONSES TO CLAIMANT'S DISCOVERY AND TO PRODUCE DOCUMENTS; DECLARATION OF GEOFF T. SLONIKER IN SUPPORT OF CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SAN DIEGO SHIP REPAIR TO PROVIDE FURTHER RESPONSES TO DISCOVERY AND TO PRODUCE DOCUMENTS

6

7

8

on the interested party(ies) in this action as follows:

9

Frank Hugg - fhugg@hugglaw.onmicrosoft.com

10

David E. Edeli - Edeli.David.L@dol.gov
David Doeling - ddoeling@aleccialaw.com

11

Barry Ponticello - bponticello@eps-law.com

12

13

Executed December 11, 2020, at Novato, California.

14

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

15

_____
Angela Porterfield

16

17

18

19

20

21

<u>Mary C. Marion vs. BAE Systems San Diego Ship Repair, Inc., *et al.*</u>
OALJ Case No. 2019-LHC-01495; OWCP #13-306597

22

23

24

25

26

27

28

<div style="writing-mode: vertical-lr;">

**BRAYTON✦PURCELL LLP**
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

</div>

G:\LHWCA\POS\Marion 121330 email.wpd
PROOF OF SERVICE BY EMAIL

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   GEOFF T. SLONIKER, ESQ., S.B. #268049
2  gsloniker@braytonlaw.com
   BRAYTON❖PURCELL LLP
3  ATTORNEYS AT LAW
   222 Rush Landing Road
4  P.O. Box 6169
   Novato, California 94948-6169
5  Tel: 415-898-1555
   Fax: 415-898-1247
6
   Attorneys for Claimant MARY MARION
7

8              **UNITED STATES DEPARTMENT OF LABOR**

9              **OFFICE OF ADMINISTRATIVE LAW JUDGES**

10

11  MARY MARION (Widow), VERNON          )   OALJ Case No.: 2019-LHC-01475
    MARION (Deceased), Claimant,         )
12                                       )   OWCP Case No.: 13-306597
    vs.                                  )
13                                       )   DECLARATION OF GEOFF T.
    FRASER'S BOILER SERVICE,             )   SLONIKER IN SUPPORT OF
14  Employer,                            )   CLAIMANT'S MOTION TO COMPEL
                                         )   BAE SYSTEMS SAN DIEGO SHIP
15         and                          )   REPAIR TO PROVIDE FURTHER
                                         )   RESPONSES TO DISCOVERY AND TO
16  PACIFIC SHIP REPAIR AND              )   PRODUCE DOCUMENTS
    FABRICATION, Employer                )
17                                       )
           and                          )   Hon. Evan H. Nordby
18                                       )
    THE MARINE GROUP, Employer,          )
19                                       )
           and                          )
20                                       )
    PACIFIC SHIP REPAIR, Employer,       )
21                                       )
           and                          )
22                                       )
    DIRECTOR, OFFICE OF WORKERS'         )
23  COMPENSATION PROGRAMS, Party-        )
    In-Interest.                         )
24  ─────────────────────────────────   )

25         I, Geoff T. Sloniker, declare as follows:

26         1.  I am an attorney at law duly licensed to practice before all courts in the State of

27  California and am an associate with the law firm of Brayton❖Purcell LLP, attorneys of record

28  ///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA  94948-6169
415-898-1555

1    for Claimant herein and as such am fully familiar with the facts of this case and if called as a

2    witness regarding the matters set forth below, I would so testify.

3           2.  Decedent Vernon Marion worked for Southwest Marine from 1979 until 1993.  The

4    parties, including BAE Systems San Diego Ship Repair ("BAE Systems") and Marine Group,

5    stipulated that Decedent was exposed to asbestos between 1979 and 1993 while employed by

6    Southwest Marine.

7           3.  Marine Group served its Initial Disclosures in this matter on November 1, 2019.  In

8    its Initial Disclosures, The Marine Group included the following argument in the section

9    containing its allegations regarding benefits entitlement:  "[The Marine Group] contends that

10   Decedent did not have any injurious exposure during his employment with Southwest Marine,

11   such that there is no compensable injury as against [The Marine Group]."  A true and correct

12   copy of The Marine Group's Initial Disclosures is attached to this Declaration as Exhibit A.

13          4.  During the Informal Conference in another matter, BAE Systems's counsel in this

14   case, Frank Hugg, stated that "any work performed for BAE Systems prior to November 7,

15   1997, is covered under the Marine Group."  A true and correct copy of the Memorandum of

16   Informal Conference from the claim brought on behalf of Mack Brown (OWCP #13-308245) is

17   attached to this Declaration as Exhibit B.

18          5.  Southwest Marine changed its name to "BAE Systems San Diego Ship Repair" in

19   2005.  A true and correct copy of the Certificate of Amendment to the Articles of Incorporation

20   of Southwest Marine, Inc., that amended the name of the corporation to "BAE San Diego Ship

21   Repair" is attached to this Declaration as Exhibit C.

22          6.  Just prior to the previously-set formal hearing, BAE Systems and Marine Group filed

23   separate Motions to Dismiss asserting that neither held Southwest Marine's pre-1997 liability

24   under the Longshore & Harbor Workers' Compensation Act.  In response to those motions and

25   motions that Claimant filed to exclude both parties' witnesses and documents for failure to

26   disclose, the Court scheduled a September 21, 2020 status conference in lieu of the formal

27   hearing.  At the status conference, the parties discussed a new schedule for the proceedings in

28   this matter.  Pursuant to the new schedule, discovery closes on January 22, 2021.

7.  On October 13, 2020, Claimant propounded written discovery on BAE Systems by email.  This discovery sought, among other documents and information, specific documents that had been identified in a January 27, 2012, Order in *Century Indem. Co. v. Marine Group, LLC*, United States District Court for the District of Oregon, Portland Division, Civ. No. 08-1375-AC, which was a case involving insurance coverage.  A section of the Order, titled "Corporate Succession," is relevant to which entity holds Southwest Marine's liability under the Longshore & Harbor Workers' Compensation Act.  The information contained within that section was largely based on at least two declarations and the attached exhibits from Southwest Marine's President's Arthur Engel.  A true and correct copy of the Order is attached to this Declaration as Exhibit D.

8.  A true and correct copy of Claimant Requests for Production of Documents is attached to this Declaration as Exhibit E.

9.  A true and correct copy of Claimant's Interrogatories is attached to this Declaration as Exhibit F.

10.  A true and correct copy of Claimant's Requests for Admissions is attached to this Declaration as Exhibit G.

11.  BAE Systems served responses to Claimant's discovery on October 26, 2020.

12.  A true and correct copy of BAE Systems's Requests for Production is attached to this Declaration as Exhibit H.

13.  A true and correct copy of BAE Systems's Responses to Claimant's Interrogatories is attached to this Declaration as Exhibit I.

14.  A true and correct copy of BAE Systems's Responses to Claimant's Requests for Admission is attached to this Declaration as Exhibit J.

15.  Claimant sent a meet and confer letter to BAE Systems on October 29, 2020, to address numerous concerns regarding the lack of substantive responses and the failure to produce any documents.  I have not received a response to this letter.  A true and correct copy of Claimant's meet and confer letter is attached to this Declaration as Exhibit K.

///

DECLARATION OF GEOFF T. SLONIKER IN SUPPORT OF CLAIMANT'S MOTION TO COMPEL BAE SYSTEMS SAN DIEGO SHIP REPAIR TO PROVIDE FURTHER RESPONSES TO DISCOVERY AND TO PRODUCE DOCUMENTS; OWCP NO. 05-310766; OALJ NO. 2019-LHC-01200

16.  I discussed these responses with Frank Hugg, counsel for BAE Systems, by telephone on November 17, 2020.  Mr. Hugg indicated that he was going to seek approval from his client to produce the documents requested in Claimant's Requests for Production of Documents.

17.  As of November 30, 2020, I had not yet received confirmation that BAE Systems was going to produce the documents.  I emailed Mr. Hugg to determine whether BAE Systems was going to produce the documents.  Mr. Hugg responded that he hoped to have an answer by the end of the week.  I indicated to Mr. Hugg that Claimant would file a motion to compel further responses if the materials were not received by 12:00 p.m. on Friday, December 4, 2020.  A true and correct copy of the email exchange is attached to this Declaration as Exhibit L.

18.  At approximately 2:30 p.m. on December 4, 2020, I spoke to Mr. Hugg about the requested information and materials.  Mr. Hugg indicated that the requested information and documents would not be provided and asserted that they are not relevant to this action.  Mr. Hugg asserted his prior position that the documents are not relevant because Marine Group did not exist until after Decedent had worked for Southwest Marine.  I restated Claimant's position that Marine Group obtained Southwest Marine's pre-1997 liability under the Longshore & Harbor Worker's Compensation Act.  Mr. Hugg, who represents both BAE Systems and Marine Group in this matter, was unable to state which party holds that liability.  We agreed to discuss the matter further the next week.

19.  During another phone call on December 10, 2020, Mr. Hugg indicated that BAE Systems was not going to produce the requested documents.

20.  I have meet and conferred with counsel for BAE Systems in good faith to resolve this discovery dispute without requiring judicial intervention.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 11, 2020, at Hercules, California.

/s/ Geoff T. Sloniker
_____
Geoff T. Sloniker

# EXHIBIT A

#121330

.006 _EAS_ PARA_____OTHER
JZ G-ATTY____CLASS____FILE

RECEIVED

NOV 2 2 2019

BRAYTON & PURCELL

HAND___OVERNIGHT___MAIL ✓

1   WILLIAM N. BROOKS II, ESQ.
    SBN: 183433
2   LAW OFFICES OF WILLIAM N. BROOKS
    100 WEST BROADWAY, SUITE 675
3   LONG BEACH, CA 90802
    (562) 437-2081; (562) 437-2091 (fax)
4   wbrooks@wnblaw.com

5   ATTORNEY FOR RESPONDENT,
    The Marine Group, LLC
6

7

8            UNITED STATES DEPARTMENT OF LABOR

9            OFFICE ADMINISTRATIVE LAW JUDGES

10                  SAN FRANCISCO OFFICE

11

12  MARY C. MARION, widow of          )   OALJ No.:   2019-LHC-01475
    VERNON J. MARION, Decedent,       )
13                                    )   OWCP No.:   13-306597
             Claimant,                )
14                                    )
    vs.                               )
15                                    )
    PACIFIC SHIP REPAIR, Employer,    )   INITIAL DISCLOSURES OF
16  and AMERICAN LONGSHORE            )   THE MARINE GROUP, LLC
    MUTUAL ASSOCIATION,               )
17  Insurance Carrier,                )
                                      )
18  FAIRLEAD BOATWORKS, INC.,         )
    Employer, and SIGNAL MUTUAL       )
19  INDEMNITY ASSOCIATION,            )
    Group Self-Insurer,               )
20                                    )
    FRASIER'S BOILER SERVICE, INC.,   )
21  Employer, and SIGNAL MUTUAL       )
    INDEMNITY ASSOCIATION,            )
22  Group Self-Insurer,               )
                                      )
23  BAE SYSTEMS SAN DIEGO SHIP        )
    REPAIR, INC., Permissibly Self-Insured )
24  Employer                         )
                                      )
25           and                      )
                                      )
26  THE MARINE GROUP, LLC             )
    Permissibly Self-Insured Employer, )
27                                    )
             Respondents.             )
28

                                1

1  **TO ALL PARTIES OR THEIR ATTORNEYS OF RECORD:**

2      COMES NOW, Respondent, The Marine Group, LLC (hereinafter "TMG"), Permissibly Self-

3  Insured Employer, by counsel, the Law Offices of William N. Brooks, and serves its Initial

4  Disclosures in accordance with 29 C.F.R. § 18.50©.

5  **A.    POTENTIAL WITNESSES** - At the present time, TMG is unaware of what individuals may

6  have information that TMG may use to support its defenses in this case. TMG will supplement these

7  disclosures as the discovery process reveals more information. TMG does identify all individuals who

8  might be identified by the other parties as part of their Initial Disclosures.

9  **B.    POTENTIAL EXHIBITS** - At the present time, TMG has the following documents,

10  electronically stored information, and tangible things, which may be used to support their defenses

11  (impeachment evidence omitted):

12      1.    *All USDOL Procedural Forms* - various dates; believed to be in the possession of all

13  parties; and

14      2.    *All Documents Served by the Other Parties in Their Initial Disclosures*.

15  **C.    TMG'S ALLEGATIONS RE: BENEFIT ENTITLEMENT** - At the present time, TMG

16  presents the following arguments:

17      1.    As of this date, TMG believes that the applicable average weekly wage would be

18  S718.24, per Section 10(d) of the Longshore Act. Discovery continues, and TMG reserves the right

19  to amend this position as necessary;

20      2.    TMG contends that Decedent did not have any injurious exposure during his

21  employment with Southwest Marine, such that there is no compensable injury as against TMG;

22      3.    TMG contends that if Decedent's death was in any way related to his employment,

23  TMG would not be the last responsible employer for death benefits; and

24      4.    TMG also raises potential Section 12 and Section 13 defenses.

25  //

26  //

27  //

28  //

Vernon J. Marion (Dec'd)
Initial Disclosures of The Marine Group, LLC

1   **D.**    **PRODUCTION OF DOCUMENTS** - TMG will produce all responsive documents as they

2   become available during the discovery process.

3

4   Dated: November 18, 2019            Respectfully submitted,

5                                       **LAW OFFICES OF WILLIAM N. BROOKS**

6

7                                    By:_____

8                                        WILLIAM N. BROOKS II, ESQ.
                                          Attorney for The Marine Group, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Vernon J. Marion (Dec'd)
Initial Disclosures of The Marine Group, LLC

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is Law Offices of William N. Brooks, 100 West Broadway, Suite 675, Long Beach, California 90802.

On November 18, 2019, I served the within **INITIAL DISCLOSURES OF THE MARINE GROUP, LLC,** on the named parties in said action by placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Long Beach, California addressed as follows:

John Wallace, Esq.
Brayton Purcell
P.O. Box 6169
Novato, California 94945

Daniel Valenzuela, Esq.
Samuelsen, Gonzalez, Valenzuela & Brown
211 East Ocean Boulevard, Suite 500
Long Beach, California 90802

Barry W. Ponticello, Esq.
England, Ponticello & St Clair
701 B Street, Suite 1790
San Diego, California 92101

Nicholas C. Sabatella, Esq.
Aleccia & Mitani
One World Trade Center, Suite 1840
Long Beach, California 90831

Frank B. Hugg, Esq.
5810 Telegraph Avenue
Oakland, California 94609

//

//

//

//

//

4

1
2

Ms. Laura Machado
The Marine Group
1311 First Street
Coronado, California 92118

3

4
I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2019 at Long Beach, California.

5

6

7
JENNIFER NIELSEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

**U.S. Department of Labor**

**MEMORANDUM OF
INFORMAL CONFERENCE**

Office of Workers' Compensation Programs
Division of Longshore and Harbor
Workers' Compensation
400 West Bay Street, Suite 63A, Box 28
Jacksonville, FL 32202



| **Claimant** | **OWCP File Number** |
|---|---|
| Mack C Brown | 13-308245 |

**Employers**
BAE Systems San Francisco Ship Repair, Inc.; Crowley Maritime Corporation; San Francisco Welding & Fabrication; Todd Shipyard; Service Engineering Company Inc.; Bethlehem Steel

**Insurance Carriers**
Sage Adjusting, LLC; Signal Mutual; Technology Ins. Co. c/o AmTrust North America; Travelers Casualty and Surety Co.; California Insurance Guarantee Association (CIGA); Travelers/Abromcrombie, Simmons & Gillette of FL Jax

| **Date of Conference (Mo/Day/Yr)** | **Date of Injury** |
|---|---|
| 03/25/2019 | 11/30/2016 |

**Appearances**:

☐ Claimant - Telephone   ☐ Claimant – In Person   ☒ Claimant not present

For Claimant: James Ghilotti    ☒ Telephone    ☐ In Person
For Employer/Carrier: Frank Hugg    ☒ Telephone    ☐ In Person
For Employer/Carrier: Robyn Leonard    ☒ Telephone    ☐ In Person
For Employer/Carrier: Katherine Theofel    ☒ Telephone    ☐ In Person
For Employer/Carrier: Patricia Clotiau    ☒ Telephone    ☐ In Person

**The claimant sustained/alleges the following injury(ies):** Trunk Internal

**Issues:**
1. Last responsible Employer/Carrier
2. Section 20(a) presumption

*#116165
.006*

PARA_____ OTHER
ATTY____ CLASS____ FILE
**RECEIVED**
MAR 2 7 2019
BRAYTON & PURCELL
HAND___OVERNIGHT___MAIL__✓



| AWW: | N/A | **Compensation Rate:** | N/A |
|---|---|---|---|

**Claimant's Position:**

- **Mr. James Ghilotti represents Geraldine Brown who has filed for death benefits based upon the decedent, Mack Brown.**
- **Claimant alleges that asbestos exposure during employment caused or contributed to Mr. Brown's stomach cancer and eventual death.**
- **The Claimant argues that deposition testimony and social security records show that BAE Systems is the last responsible employer.**
- **The Claimant states that she is entitled to the Section 20(a) presumption in this case.**
- **The Claimant stated that there are no previous wrongful death claims or settlements that would involve the Section 33 bar.**

**Carrier's Position (BAE Systems/Sage Adjusting):**

- **The Carrier stated that employment with BAE systems spanned from 1990-1992.**
- **The Carrier asserts that the injury did not arise out of employment or in the course and scope of employment.**
- **The Carrier argues that there is no evidence of asbestos exposure when the Claimant worked for BAE Systems.**
- **BAE is not the last responsible employer.**
- **If there are any previous cases that have settled, the Carrier asserts the Section 33 defense.**
- **The Carrier is asking for Section 8(f) relief.**
- **Frank Hugg was listed as the representative for Bethlehem Steel but stated he is not the representative.** [1]

**Carrier's Position (Crowley Maritime Corp./Signal Mutual):**

- **The Carrier takes the position that they are not the last responsible employer.**
- **The Carrier asserts that the injury did not arise out of employment or in the course and scope of employment.**

---

[1] In a June 29, 2018 letter to the Department of Labor, the Law Office of Bill Parish claimed to represent Bethlehem Steel & Abercrombie Simmons & Gillette of Florida. In a subsequent November 12, 2018, the Law Office of Bill Parrish stated that matter has been transferred to the Law Office of Frank Hugg and all correspondence directed to him. The Department of Labor assumed this meant that the Law Office of Frank Hugg now represented Bethlehem Steel / ASG of Florida which has turned out to be incorrect.

- The Carrier argues that there is no evidence of asbestos exposure when the Claimant worked for Crowley Maritime.
- The Carrier notes that deposition and testimony evidence shows that the Claimant worked on tugboats and not in vale repair or as a boilermaker. In fact, some of the deposition evidence shows that Claimant doesn't even remember working for Crowley.
- If there are any previous cases that have settled, the Carrier asserts the Section 33 defense.

Carrier's Position (SF Welding & Fabrication/AMTrust North America):

- The Carrier states it is not the last responsible employer and that the Claimant last worked for SF Welding & Fabrication in 1987.
- The Carrier asserts that the injury did not arise out of employment or in the course and scope of employment.
- The Carrier argues that there is no evidence of asbestos exposure when the Claimant worked for SF Welding and Fabrication.
- If there are any previous cases that have settled, the Carrier asserts the Section 33 defense.

Carrier's Position (Todd Shipyard/Travelers Insurance):

- The Carrier states it is not the last responsible employer and that the Claimant last worked for Todd Shipyard from 1968 to 1987.
- The Carrier asserts that the injury did not arise out of employment or in the course and scope of employment.
- The Carrier argues that there is no evidence of asbestos exposure when the Claimant worked for Todd Shipyards.
- If there are any previous cases that have settled, the Carrier asserts the Section 33 defense.

Carrier's Position (Fremont Indemnity in Liquidation/CIGA):

- Party did not appear.

Carrier's Position (Bethlehem Steel/Travelers c/o Abercrombie):

- Party did not appear.

## AGREEMENT BY THE PARTIES

During the conference, Frank Hugg raised the issue that any work performed for BAE Systems prior to November 7, 1997 is covered under the Marine Group. Mr. Hugg also stated that there is an administrative error in the social security records showing that any work for BAE in San Francisco shows up as work in San Diego. No parties had any objections to what Mr. Hugg proposed and thus these issues should be judicially noted by the appropriate authority.

## RECOMMENDATION

The District Office cannot, at this time, make a recommendation on the issues in this conference. There is no clear evidence as to which employer last exposed the Decedent to injurious stimuli prior to the date the claim accrued. See *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137 (2d Cir.), *cert. denied*, 350 U.S. 913 (1955); *Ranks v. Bath Iron Works Corp.*, 22 BRBS 302 (1989), *Ramey v. Stevedoring Services of America*, 134 F.3d 954 (9th Cir. 1998). Based on the foregoing, the parties should have this matter referred for a formal hearing in order to conduct discovery, narrow down the parties, and find the last employer to expose the Decedent to asbestos.

### Action By The Parties

**The carrier and claimant shall notify this office in writing within 14 days whether they accept or reject this recommendation.** (See 20 CFR 702.316.)  Within the next 14 days, the parties are requested to:  (1)  review the above to ensure all issues presented were addressed;  (2)  engage in open discussions to reach an agreement to resolve the issues;  (3)  consider the recommendation(s) made and indicate whether you accept or decline the proposed resolutions;  (4)  submit a settlement application resolving the issues;  or (5) alternatively, request the matter be referred to the Office of Administrative Law Judges for a formal hearing by submitting an LS-18 pre-hearing statement to effect a referral to the Office of the Administrative Law Judges for the scheduling of a formal hearing. The LS-18 can be found on our website under "forms" http://www.dol.gov/owcp/dlhwc/index.htm

The self-insured employer or insurance carrier is to submit Form LS-208, showing compliance with the above recommendation. Upon completion of payment, a final Form LS-208 is to be submitted.

In the event of controversion, Form LS-207 is to be submitted.

To avoid statutory penalties, all required forms should be sent to this office promptly and within the time requirements of the Act.

**An Application for Relief under Section 8(f) must be received in this office no later than April 25, 2019 or the absolute bar will be asserted.**

### Routine Information

*Document Submission*:  You can electronically submit documents in response to this directly into the OWCP case through the Secure Electronic Access Portal (SEAPortal). You can access SEAPortal at: https://seaportal.dol-esa.gov.  When you access the website, you will be asked to provide the OWCP number along with the injured worker's last name, date of birth and date of injury.  The SEAPortal will then provide a Tracking Number, so you can verify when OWCP received your document. Alternatively, you can mail documents to the address at: U.S. Department of Labor, OWCP/DLHWC, 400 West Bay Street, Suite 63A, Box 28, Jacksonville, FL 32202.  Please DO NOT submit documents by SEAPortal and mail.  Only one copy is necessary.

*Penalties:*  An additional 10% of compensation pursuant to Section 14(e) is due on the untimely payment of compensation installments that accrued before the notice of controversion was filed.

*Interest:*  Interest is due on all compensation not timely paid, regardless of whether a notice of controversion was filed.

*Attorney's fees and costs:*  An award for fees and costs is deferred pending resolution of all issues and submission of an itemized time and expenses statement.

*Vocational rehabilitation services:*  The Department of Labor offers vocational rehabilitation services to help injured employees return to suitable work when the residuals from the injury permanently prevents an employee from returning to the pre-injury position.  If eligible, the employee is encouraged to take advantage of the services available and may contact the Claims Examiner at the number below.

March 25, 2019

Steven L. Aronson
San Francisco District Office
(Claims Examiner)                              (Date this memorandum issued)

A copy of this memorandum was mailed to the parties on March 25, 2019:

Mack C Brown
c/o Brayton Purcell., LLP
222 Rush Landing Rd
Novato, CA 94948

James Ghilotti (Representing Claimant)
Brayton * Purcell, LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

Frank Hugg (Representing Sage Adjusting/BAE Systems)
Attorney at Law
5810 Telegraph Avenue
Oakland, CA 94609-1522

BAE Systems San Francisco Ship Repair, Inc.
Foot of 20th Street Pier 70
San Francisco, CA 94107

Sage Adjusting, LLC
9820 Willow Creek Road, Suite 430
San Diego, CA 92131

Robyn Leonard (Representing Crowley Marine & Signal Mutual)
Gordon & Rees Scully Mansukhani
275 Battery Street
Suite 2000
San Francisco, CA 94111

Crowley Maritime Corporation
155 Grand Avenue
Oakland, CA 94612

Signal Mutual
c/o Lamorte Burns & Co. Inc.
1511 Third Ave., Suite 800
Seattle, WA 98101

Katherine Theofel (Representing SF Welding & Fabrication/Technology Ins. Co. c/o
AmTrust North America)
Finnegan, Marks, Theofel & Desmond
2001 Junipero Serra Blvd., Suite 610
Daly City, CA 94014

San Francisco Welding & Fabrication
c/o AmTrust North America
PO Box 89404
Cleveland, OH 44104

Technology Ins. Co.
c/o AmTrust North America
PO Box 89404
Cleveland, OH 44104

Patricia Mckay Clotiau (Representing Todd Shipyard / Travelers Casualty and Surety Co.)
Waller & Associates
3838 N Causeway Blvd., Suite 3160
Metairie, LA 70002

Todd Shipyard
PO Box 3806
Seattle, WA 98124

Travelers Casualty and Surety Co.
PO Box 660456
Dallas, TX 75266

CIGA (Representing Service Engineering Inc. / Industrial Indemnity Insurance)
Steve A. Block, Senor Claims Adj.
PO Box 29066
Glendale, CA 91209

Service Engineering Company Inc.
c/o Industrial Indemnity Insurance
c/o CIGA
PO Box 29066
Glendale, CA 91209

Bethlehem Steel
5801 Centennial Way MC 41
Baltimore, MD 21209

Travelers/Abromcrombie, Simmons & Gillette of FL Jax
Attn: Jay Welch
3390 Kori Rd. Suite 10
Jacksonville, FL 32257-2417

# EXHIBIT C

# State of California
## Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:

BAE SYSTEMS SAN DIEGO SHIP REPAIR INC.

FILE NUMBER:        C0777319
FORMATION DATE:     08/27/1976
TYPE:               DOMESTIC CORPORATION
JURISDICTION:       CALIFORNIA
STATUS:             ACTIVE (GOOD STANDING)

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is authorized to exercise all of its powers, rights and privileges in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of July 18, 2019.

**ALEX PADILLA**
**Secretary of State**

06/28/2005 TUE 13:58 FAX                                              ☑002/003

A0630354

0777319

*NCTD*

FILED *JMS*
In the office of the Secretary of State
of the State of California

JUN 28 2005

Certificate of Amendment to the

Articles of Incorporation

of

SOUTHWEST MARINE, INC.

Robert A. Kilpatrick and Lloyd A. Schwartz hereby certify that:

1.      They are President and Assistant Secretary, respectively, of Southwest Marine, Inc., a California corporation (the "Corporation").

2.      Article I of the Articles of Incorporation of the Corporation is hereby amended to read as follows:

"I

The name of this corporation is BAE Systems San Diego Ship Repair Inc."

3.      The foregoing amendment to the Articles of Incorporation of the Corporation has been duly approved by the Board of Directors of the Corporation.

4.      The foregoing amendment to the Articles of Incorporation of the Corporation has been duly approved by the required vote of shareholders of the Corporation in accordance with Section 902 of the General Corporation Law of the State of California.  The total number of outstanding shares of the Corporation is 767,000.  The number of shares voting in favor of the amendment equaled or exceeded the vote required.  The percentage vote required was more than 50%.

The undersigned declare under penalty of perjury that the matters set forth in the foregoing Certificate are true of their own knowledge.  Executed at San Diego, California on June 28, 2005.

Name: ROBERT A. KILPATRICK
Title:   President

Name: LLOYD A. SCHWARTZ
Title:   Assistant Secretary

[[NYCORP:2513690v5:4572W:06/17/05—09:39 p]]

# EXHIBIT D



⚠️ Caution
As of: June 28, 2019 11:43 PM Z

# Century Indem. Co. v. Marine Group, LLC

United States District Court for the District of Oregon, Portland Division

January 27, 2012, Decided; January 27, 2012, Filed

Civ. No. 08-1375-AC

**Reporter**
848 F. Supp. 2d 1238 *; 2012 U.S. Dist. LEXIS 9822 **

CENTURY INDEMNITY COMPANY, a Pennsylvania Corporation, Plaintiff, v. THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive Oregon corporation, Defendants.THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive Oregon corporation; and BAE SAN DIEGO SHIP REPAIR, INC., a California corporation, Third-Party Plaintiffs, v. AGRICULTURAL INSURANCE COMPANY, an Ohio corporation; AMERICAN CENTENNIAL INSURANCE COMPANY, a Delaware corporation; CHICAGO INSURANCE COMPANY, an Illinois corporation; CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation; EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; GRANITE STATE INSURANCE COMPANY, a Pennsylvania corporation; HARTFORD INSURANCE COMPANY, a Connecticut corporation; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a New Jersey corporation; INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and CERTAIN LONDON MARKET INSURANCE COMPANIES, each a foreign corporation; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, a Pennsylvania corporation; NEW ENGLAND REINSURANCE COMPANY, a Connecticut corporation; OLD REPUBLIC INSURANCE COMPANY, an Illinois corporation; PACIFIC MUTUAL MARINE OFFICE INC., a New York corporation; RELIANCE INSURANCE COMPANY, a Pennsylvania corporation; ROYAL INDEMNITY COMPANY, a Delaware corporation; ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation; TWIN CITY FIRE INSURANCE COMPANY, an Indiana corporation; WATER QUALITY INSURANCE SYNDICATE, a syndicate of foreign corporations; WEST COAST MARINE MANAGERS, INC., a New York corporation; and JOHN DOE INSURANCE COMPANIES, Third-Party Defendants.

**Subsequent History:** Motion denied by, in part, Claim dismissed by, Without prejudice Century Indem. Co. v. Marine Group, LLC, 848 F. Supp. 2d 1229, 2012 U.S. Dist. LEXIS 65891 (D. Or., 2012)

Reconsideration granted by Century Indem. Co. v. Marine Group, LLC, 2012 U.S. Dist. LEXIS 191122 (D. Or., Dec. 26, 2012)

**Prior History:** Century Indem. Co. v. Marine Group, LLC, 2010 U.S. Dist. LEXIS 107613 (D. Or., Oct. 6, 2010)

## Core Terms

insured, duty to defend, deductible, insurance policy, contamination, coverage, endorsement, policies, parties, succession, letters, trigger, Site, argues, servicing, communications, ambiguous, notice, liabilities, transferred, provides, allegations, cleanup, damages, terms, information request, insurance company, occurrence, documents, entity

**Counsel:** [**1] For Century Indemnity Company, a Pennsylvania Corporation, Plaintiff, Counter Defendant, Cross Defendant: R. Lind Stapley, LEAD ATTORNEY, Soha & Lang, P.S., Seattle, WA; William G. Earle, LEAD ATTORNEY, Jonathan Henderson, Davis Rothwell Earle & Xochihua, PC, Portland, OR; Misty A. Edmundson, Soha & Lang, PS, Seattle, WA.

For The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, Defendant, ThirdParty Plaintiff, Counter Claimant, Counter Defendant: Christopher A Rycewicz, Hong N. Huynh, LEAD ATTORNEYS, Miller Nash LLP, Portland, OR.

For BAE San Diego Repair, Inc., ThirdParty Plaintiff, Counter Claimant, Counter Defendant: Hong N. Huynh, LEAD ATTORNEY, Christopher A Rycewicz, Miller Nash LLP, Portland, OR.

For American Manufacturer's Mutal Insurance Company, ThirdParty Plaintiff: Michael R. Seidl, LEAD ATTORNEY, Seidl Law Office, PC, Portland, OR; Ira Revich, PRO HAC VICE, Charlston, Revich & Wollitz LLP, Los Angeles, CA.

For Chicago Insurance Company, ThirdParty Defendant, [**2] Counter Claimant, ThirdParty Defendant, Cross Defendant: Francis Douglas Tuffley, Jodi A. McDougall, Molly K.S. Eckman, LEAD ATTORNEYS, Cozen O'Connor, Seattle, Wa.

For Continental Insurance Company, ThirdParty Defendant, Cross Defendant: Troy A. Biddle, Bett Patterson & Mines, PS, Seattle, WA.

For Employers Mutual Casualty Company, Pacific Mutual Marine Office, Inc., West Coast Marine Managers, Inc., Employers Mutual Casualty Company, Pacific Mutual Marine Office, Inc., ThirdParty Defendants: Margaret M. Van Valkenburg, LEAD ATTORNEY, Bullivant Houser Bailey, PC, Portland, OR.

For Federal Insurance Company, Federal Insurance Company, ThirdParty Defendants: Peter J. Mintzer, LEAD ATTORNEY, Chamberlin Keaster & Brockman, LLP, Seattle, WA; Molly K.S. Eckman, Cozen O'Connor, Seattle, Wa.

For Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, ThirdParty Defendants: Kenneth H. Sumner, LEAD ATTORNEY, PRO HAC VICE, Sinnott Puebla Campagne & Curet, APLC, San

Francisco, CA; Thomas W. Brown, LEAD ATTORNEY, Cosgrave Vergeer Kester, LLP, Portland, OR.

For Hartford Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company, [**3] Twin City Fire Insurance Company, ThirdParty Defendants: Alan M. Posner, LEAD ATTORNEY, PRO HAC VICE, Wayne S. Karbal, LEAD ATTORNEY, PRO HAC VICE, Karbal Cohen Economou Silk & Dunne, LLC, Chicago, IL; Christopher T. Carson, Kilmer Voorhees & Laurick, PC, Portland, OR.

For Insurance Company of North America, Insurance Company of North America, ThirdParty Defendant: R. Lind Stapley, LEAD ATTORNEY, Soha & Lang, P.S., Seattle, WA; William G. Earle, LEAD ATTORNEY, Jonathan Henderson, Davis Rothwell Earle & Xochihua, PC, Portland, OR; Misty A. Edmundson, Soha & Lang, PS, Seattle, WA.

For Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, ThirdParty Defendants: Carl E. Forsberg, PRO HAC VICE, Charles E. Albertson, PRO HAC VICE, John P. Hayes, Forsberg & Umlauf, P.S., Seattle, WA; John B. Hayes, Forsberg & Umlauf, P.S.

For National Union Fire Insurance Company of Pittsburgh, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Granite State Insurance Company, ThirdParty Defendants: Kenneth H. Sumner, LEAD ATTORNEY, PRO HAC VICE, [**4] Sinnott Puebla Campagne & Curet, APLC, San Francisco, CA; Thomas W. Brown, LEAD ATTORNEY, Cosgrave Vergeer Kester, LLP, Portland, OR.

For New England Reinsurance Company, New England Reinsurance Company, ThirdParty Defendants: Alan M. Posner, LEAD ATTORNEY, PRO HAC VICE, Wayne S. Karbal, LEAD ATTORNEY, PRO HAC VICE, Karbal Cohen Economou Silk & Dunne, LLC, Chicago, IL; Christopher T. Carson, Kilmer Voorhees & Laurick, PC, Portland, OR.

For Old Republic Insurance Company, Old Republic Insurance Company, ThirdParty Defendants: Amy Rich Paulus, Mark D. Paulson, LEAD ATTORNEYS, PRO HAC VICE, Clausen Miller PC, Chicago, IL; Rebecca A Lindemann, Schwabe Williamson & Wyatt, PC, Portland, OR.

For Royal Indemnity Company, Royal Indemnity Company, ThirdParty Defendants: Francis Douglas Tuffley, LEAD ATTORNEY, Thomas M. Jones, LEAD ATTORNEY, PRO HAC VICE, Cozen O'Connor,

Seattle, Wa.

For St. Paul Fire & Marine Insurance Company, St. Paul Fire & Marine Insurance Company, ThirdParty Defendants: Thomas A. Gordon, LEAD ATTORNEY, Gordon & Polscer, LLP, Portland, OR; Andrew S. Moses, Gordon & Polscer, LLC, Portland, OR.

For Water Quality Insurance Syndicate, Water Quality Insurance Syndicate, ThirdParty [**5] Defendants: C. Kent Roberts, LEAD ATTORNEY, Schwabe Williamson & Wyatt, PC, Portland, OR; John Woods, Mary H. Mulhearn, LEAD ATTORNEYS, John R. Stevenson, PRO HAC VICE, Clyde & Co US LLP, New York, NY.

For Agricultural Surplus and Excess Insurance Company, Agricultural Insurance Company, Agricultural Surplus and Excess Insurance Company, ThirdParty Defendants: David E. Prange, Aaron C. Denton, Prange Law Group, LLC, Portland, OR; Alexander J. Williamson, Prange Law Group, LLC.

For American Manufacturer's Mutual Insurance Company, ThirdParty Defendant: Michael R. Seidl, LEAD ATTORNEY, Seidl Law Office, PC, Portland, OR.

For Argonaut Insurance Company, Amicus: Jeffrey V. Hill, LEAD ATTORNEY, Bodyfelt Mount LLP, Portland, OR; Jay W. Beattie, Lindsay Hart Neil & Weigler, LLP, Portland, OR.

For State of Oregon/Attorney General, State of Oregon/Attorney General, Intervenors: Stephanie M. Parent, Oregon Department of Justice, Portland, OR.

For BAE San Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine, Iron Works, Northwest Marine [**6] Iron Works, an inactive Oregon corporation, The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, BAE San Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine, Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine, Iron Works, Northwest Marine Iron

Works, an inactive Oregon corporation, BAE San Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest [**7] Marine Iron Works, Northwest Marine Iron Works, Northwest Marine Iron Works, BAE San Diego Repair, Inc., Counter Claimants: Christopher A Rycewicz, LEAD ATTORNEY, Hong N. Huynh, LEAD ATTORNEY, Miller Nash LLP, Portland, OR.

For Century Indemnity Company, a Pennsylvania Corporation, Century Indemnity Company, a Pennsylvania Corporation, Century Indemnity Company, a Pennsylvania Corporation, Counter Defendants: R. Lind Stapley, LEAD ATTORNEY, Soha & Lang, P.S., Seattle, WA; William G. Earle, LEAD ATTORNEY, Jonathan Henderson, Davis Rothwell Earle & Xochihua, PC, Portland, OR; Misty A. Edmundson, Soha & Lang, PS, Seattle, WA.

For Agricultural Insurance Company, ThirdParty Defendant: Alexander J. Williamson, Prange Law Group, LLC.

For American Centennial Insurance Company, American Centennial Insurance Company, ThirdParty Defendant: Gary V. Abbott, Abbott & Paris, PC, Portland, OR.

For St. Paul Fire & Marine Insurance Company, Counter Claimant: Thomas A. Gordon, LEAD ATTORNEY, Gordon & Polscer, LLP, Portland, OR.

For BAE San Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon [**8] corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, The Marine Group, LLC, a California limited liability company, as affiliated with Northwest, Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, BAE San

Century Indem. Co. v. Marine Group, LLC

Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works,  [**9] an inactive Oregon corporation, BAE San Diego Repair, Inc., BAE San Diego Repair, Inc., The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, Northwest Marine Iron Works, an inactive Oregon corporation, BAE San Diego Repair, Inc., Northwest Marine Iron Works, an inactive Oregon corporation, Northwest Marine, Inc., in inactive Oregon corporation, as affiliated with Northwest Marine Iron Works, The Marine Group, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc., Counter Defendant: Christopher A Rycewicz, LEAD ATTORNEY, Hong N. Huynh, LEAD ATTORNEY, Miller Nash LLP, Portland, OR.

For Royal Indemnity Company, Chicago Insurance Company, Royal Indemnity Company, Chicago Insurance Company, Counter Claimant: Francis Douglas Tuffely, LEAD ATTORNEY, Thomas M. Jones, LEAD ATTORNEY, PRO HAC VICE, Cozen O'Connor, Seattle, Wa.

For Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Counter Claimants: Carl E. Forsberg, PRO HAC VICE, Charles E. Albertson, PRO HAC VICE, John P. Hayes,  [**10] Forsberg & Umlauf, P.S., Seattle, WA; John B. Hayes, Forsberg & Umlauf, P.S.

For Argonaut Insurance Company, Cross Claimant: Jeffrey V. Hill, LEAD ATTORNEY, Bodyfelt Mount LLP, Portland, OR; Jay W. Beattie, Lindsay Hart Neil & Weigler, LLP, Portland, OR; Aaron C. Denton, Prange Law Group, LLC, Portland, OR; Alexander J. Williamson, Prange Law Group, LLC.

For Agricultural Surplus and Excess Insurance Company, Cross Defendant: Aaron C. Denton, Prange Law Group, LLC, Portland, OR; Alexander J. Williamson, Prange Law Group, LLC.

For American Centennial Insurance Company, Cross Defendant: Gary V. Abbott, Abbott & Paris, PC, Portland, OR.

For American Manufacturer's Mutal Insurance Company, Cross Defendant: Michael R. Seidl, PRO HAC VICE, Seidl Law Office, PC, Portland, OR; Ira Revich, Charlston, Revich & Wollitz LLP, Los Angeles, CA.

For Century Indemnity Company, a Pennsylvania Corporation, Insurance Company of North America, Cross Defendant: R. Lind Stapley, LEAD ATTORNEY, Soha & Lang, P.S., Seattle, WA; William G. Earle, LEAD ATTORNEY, Jonathan Henderson, Davis Rothwell Earle & Xochihua, PC, Portland, OR; Misty A. Edmundson, Soha & Lang, PS, Seattle, WA.

For Certain London Market Insurance
 [**11] Companies, Certain Underwriters at Lloyd's, London, Cross Defendants, Carl E. Forsberg, PRO HAC VICE, Charles E. Albertson, PRO HAC VICE, John P. Hayes, Forsberg & Umlauf, P.S., Seattle, WA; John B. Hayes, Forsberg & Umlauf, P.S.

For Chicago Insurance Company, Royal Indemnity Company, Cross Defendant: Francis Douglas Tuffley, LEAD ATTORNEY, Jodi A. McDougall, LEAD ATTORNEY, Molly K.S. Eckman, LEAD ATTORNEY, Cozen O'Connor, Seattle, Wa.

For Continental Insurance Company, Cross Defendant: Troy A. Biddle, Bett Patterson & Mines, PS, Seattle, WA.

For Employers Mutual Casualty Company, Twin City Fire Insurance Company, Margaret M. Van Valkenburg, Cross Defendant: Margaret M. Van Valkenburg, LEAD ATTORNEY, Bullivant Houser Bailey, PC, Portland, OR.

For Federal Insurance Company, Cross Defendant: Peter J. Mintzer, LEAD ATTORNEY, Chamberlin Keaster & Brockman, LLP, Seattle, WA.

For Granite State Insurance Company, Hartford Insurance Company, New England Reinsurance Company, Twin City Fire Insurance Company, Cross Defendant: Alan M. Posner, LEAD ATTORNEY, PRO HAC VICE, Wayne S. Karbal, LEAD ATTORNEY, PRO HAC VICE, Karbal Cohen Economou Silk & Dunne, LLC, Chicago, IL; Christopher T. Carson, Kilmer
 [**12] Voorhees & Laurick, PC, Portland, OR.

For Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Cross Defendant: Kenneth H. Sumner, LEAD ATTORNEY, PRO HAC VICE, Sinnott Puebla Campagne & Curet, APLC, San Francisco, CA; Thomas W. Brown, LEAD ATTORNEY, Cosgrave Vergeer Kester, LLP, Portland, OR.

For Old Republic Insurance Company, Cross Defendant: Amy Rich Paulus, LEAD ATTORNEY, PRO HAC VICE, Mark D. Paulson, LEAD ATTORNEY, PRO HAC VICE, Clausen Miller PC, Chicago, IL; Rebecca A Lindemann, Schwabe Williamson & Wyatt, PC, Portland, OR.

Case 3:21-cv-10081-JCS   Document 1   Filed 12/30/21   Page 46 of 218

Page 5 of 20
Century Indem. Co. v. Marine Group, LLC

For Pacific Mutual Marine Office, Inc., Cross Defendant: Margaret M. Van Valkenburg, LEAD ATTORNEY, Bullivant Houser Bailey, PC.

For St. Paul Fire & Marine Insurance Company, Cross Defendant: Thomas A. Gordon, LEAD ATTORNEY, Gordon & Polscer, LLP, Portland, OR; Andrew S. Moses, Gordon & Polscer, LLC, Portland, OR.

For Water Quality Insurance Syndicate, Water Quality Insurance Syndicate, Cross Defendants: C. Kent Roberts, LEAD ATTORNEY, Schwabe Williamson & Wyatt, PC, Portland, OR; John Woods, LEAD ATTORNEY, Mary H. Mulhearn, LEAD ATTORNEY, John R. Stevenson, PRO HAC VICE, Clyde & Co US LLP, New York, NY.

For Argonaut [**13] Insurance Company, Counter Claimant: Jeffrey V. Hill, LEAD ATTORNEY, Bodyfelt Mount LLP, Portland, OR; Jay W. Beattie, Lindsay Hart Neil & Weigler, LLP, Portland, OR.

**Judges:** JOHN V. ACOSTA, United States Magistrate Judge.

**Opinion by:** JOHN V. ACOSTA

# Opinion

OPINION AND ORDER

[*1241]  ACOSTA, Magistrate Judge:

*Introduction*

Third-party plaintiffs bring the current motion against third-party defendants in this lawsuit. Third-party plaintiffs (hereinafter "TPPs") are The Marine Group ("TMG"), Northwest Marine, Inc. ("NWM"), Northwest Marine Iron Works ("NWMIW"), and BAE Systems San Diego Ship Repair, Inc. ("BAE"). Century Indemnity Company ("Century"), an insurance company, filed this lawsuit against TPPs seeking a declaratory judgment that it owes neither a duty to defend nor a duty to indemnify them.

TPPs' claims are against other insurance companies that they contend potentially owed duties to defend and indemnify them. Four of these insurance companies are the subject of this motion: Agricultural Insurance Company and Agricultural Excess and Surplus Insurance Company, which now collectively are known as Great American Insurance Company (hereinafter referred to collectively as "Great American"); Insurance

Company of North American [**14] ("INA"); and St. Paul Mercury Indemnity Company ("St. Paul"). (Collectively, all four insurance companies are referred to as "Defendants".) Specifically, TPPs seek summary judgment that each of these four insurance companies breached its duty to defend TPPs in a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") action against them for environmental contamination at the Portland Harbor. St. Paul opposes the motion, and both Great American and INA have joined in that opposition. In addition, Great American and INA submitted supplementary materials on specific issues. The court will address these specific issues where appropriate and to the extent they materially differ, if at all, from St. Paul's opposition arguments.

The motion raises three issues: (1) whether there is a suit that triggers the duty to defend; (2) whether any policy exclusions apply that avoid the duty to [*1242] defend; and (3) whether the insurance policy benefits have followed, by way of corporate succession, from the original named insured to the particular parties to the CERCLA action. Defendants have also raised a collateral issue regarding the constitutionality of the Oregon Environmental [**15] Cleanup Assistance Act ("OECAA") as applied to the facts of this case.

On the record before it, the court concludes as a matter of law that there is a suit sufficient to trigger the duty to defend and that the deductible endorsement does not excuse certain insurers from their duty to defend. The court further finds that there are genuine issues of material fact as to whether corporate succession occurred such that the policies transferred from the named insured to the potentially responsible parties. The court also finds that OECAA is constitutional as applied.[1]

*Factual Background*

TPPs claim coverage under insurance policies issued for discontinued policy periods beginning in 1954 and ending in 1982. The policies provide comprehensive coverage for general liability and refer to a location in the Portland Harbor Superfund site ("the Site"). Over the years, the corporate form of the named insured, NWMIW, changed and the parties seeking defense coverage under the insurance policies at issue, TMG and BAE, were not named on the original policies. In the

---

[1] All parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636 (c)(1).

recent past, federal and state [**16] agencies have contacted both TMG and BAE regarding their possible liability for contamination at the Site. TMG and BAE seek a defense of and indemnification for these claims, and each has tendered requests for such coverage to numerous insurance companies.

I. Insurance Policies

A. INA Policies

INA issued two policies to NWMIW, the sole named insured, which policies are identical in relevant part for purposes of this motion. (INA's Opposition ("Opp.") 2.) The policies were effective July 1, 1978, to July 1, 1980. (Stapley Declaration ("Decl.") Exhibit ("Ex.") 1 at 6; Ex. 2 at 67.) The policies provide for Comprehensive General Liability ("CGL") insurance. The policies cover "all sums which the Insured shall become legally obligated to pay as damages because of . . . property damage[.]" (Rycewicz Decl., Ex. 1 at 3.) Under the policies, "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage[.]" (Id.) The policies are explicitly limited by Endorsements #7 and #8, respectively (the endorsements are identical and thus collectively hereinafter referred to as "the deductible endorsement"). The deductible endorsement [**17] limits the insurer's payment to amounts in excess of the deductible. It also provides:

> However, if the named insured, or a claims servicing organization acting on behalf of the named insured, fails to pay any damages within the deductible amounts after the legal obligation of the insured becomes definitely determined, the company shall pay such damages and the named insured shall reimburse the company promptly for any part of the deductible amount that has been paid by the company.

(Stapley Decl., Ex. 1 at 28.)

B. Great American Policies

Great American issued CGL policies to NWMIW for the policy period from July 1, [*1243] 1980, to July 1, 1982. (Rycewicz Decl., Ex.3 at 11, 65.) Great American states that their terms are essentially identical to those terms in INA's policies, and this is not otherwise disputed. (Great American Opp. (#336) 4.)

C. St. Paul Policy

St. Paul issued a policy to NWMIW for the period of February 11, 1954, to February 11, 1957. (Rycewicz Decl., Ex. 15 at 22.) The sole named insured under this policy is NWMIW. It provides that the St. Paul will pay "on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him [**18] by law or contract for damages because of injury to or destruction of property . . . ." (Id. at 23.) The policy provides further that "the company shall . . . defend in his name and behalf any suit against the Insured alleging such . . . damage or destruction and seeking damages on account thereof . . . ." Id. Unlike the other policies at issue, this policy does not contain a deductible endorsement.

II. Corporate Succession

NWMIW originally incorporated in the State of Oregon on May 28, 1943. (Moses Decl., Ex. 1.) Its stock was purchased by a separate corporate entity, Southwest Marine, Inc. ("SWM"). (Engel Decl ¶ 5.) NWMIW changed its name to Northwest Marine, Inc. ("NWM") on January 25, 1990. (Engel Decl. ¶ 6.) At that time, NWM also merged with SWM, "with SWM as the surviving corporation." (Id.)

In 1997, Southwest Marine Holdings, Inc. ("SWM Holdings"), purchased the stock of SWM, and TMG was formed as a "repository of certain assets, including some assets and liabilities of NWMIW, that were spun out of the sale of the SWM shipyard to SWM Holdings." (Engel Decl. ¶¶ 7-8.) A Stock Purchase Agreement ("1997 SPA") governed this transaction. The 1997 SPA stated that the sellers, stockholders [**19] of SWM, would retain certain liabilities, which the 1997 SPA referred to as the "Excluded Liabilities": "[T]he Excluded Liabilities shall specifically include all of the liabilities associated with the businesses conducted or formerly conducted by any of the Companies or their predecessors under the names 'Northwest Marine' . . . ." (Engel Reply Decl., Ex. 5 at 12, Ex. 6 at 1.) SWM assigned these liabilities to TMG in an agreement entitled "Assignment and Assumption Agreement." That agreement provided for assignment of the liabilities described in the 1997 SPA, "[a]rising from, relating to or in connection with any business or activity conducted or formerly conducted by any of the Companies (as defined in the Stock Purchase Agreement) or any of their respective predecessors" with specific reference to

"Northwest Marine." (Engel Decl., Ex. 12 at 1-2.)

In 2005, SWM was renamed BAE. (Vinck Decl. Ex. 2.)

### III. Agency Communications

In a confidential letter dated January 11, 2008, David C. Batson ("Batson"), as the convening neutral of a group "brought together by the [EPA] for the purpose of exploring the creation of a PRP group[,]" invited BAE to participate in an informational meeting regarding [**20] cleanup at the Site. The letter stated that "one or more participants in the Convening Group believe that you or your company are potentially responsible for response costs incurred and being incurred at the Site under Section 107(a) of CERCLA and ORS 465.255." (Huynh Decl. Ex. 1 at 2.)

On January 18, 2008, the United States Environmental Protection Agency ("EPA") sent a letter to BAE via its Secretary and General Counsel, Lloyd A. Schwartz, Esq. (Rycewicz Decl. Ex. 5.) That same day, an [*1244] identical letter was sent to NWM and TMG (collectively referred to as "the January 2008 letters"). (Rycewicz Decl. Ex. 6.) The January 2008 letters informed TPPs that it was investigating contamination at the Site by way of a Remedial Investigation and Feasibility Study (the "RI/FS"). The RI/FS was expected to conclude in 2009, after which, the January 2008 letters stated, the "EPA will select a cleanup plan for the Site through a Record of Decision, which is likely to be issued in 2010." The January 2008 letters stated that EPA was "seeking information from current and past landowners, tenants, and other entities believed to have information about activities that may have resulted in releases or potential [**21] threats of releases of hazardous substances to the Site." (Rycewicz Decl., Ex. 5 at 1.) The information would be used to identify potentially responsible parties ("PRPs") who would be liable for the costs of cleanup. The January 2008 letters also stated:

> Pursuant to the authority of Section 104(e) of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9604(e), you are hereby requested to respond to the Information Request attached to this letter. While EPA seeks your voluntary cooperation with this investigation, compliance with the Information Request is required by law. Failure to respond fully and truthfully to the Information Request by the due date provided below may result in an enforcement action by EPA. Under Section

104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1996, 31 U.S.C. § 3701, EPA is authorized to commence an action to assess civil penalties of not more than $32,500 per day for each day of noncompliance against any person who unreasonably fails to comply with an Information Request.

(*Id.* at 2.) The Information Request accompanied the January 2008 letters [**22] and sought a vast array of information with respect to the Site and affiliated entities from 1937 to the present. At the time, the EPA also issued a fact sheet in which it explained that the January 2008 letters "d[id] not designate an entity as a potentially responsible party[,]" though the letters did request additional information to use in identifying PRPs. (Moses Decl. Ex. 4.)

On January 3, 2008, the Portland Harbor Natural Resource Trustee Council ("PHTC") sent a letter to "Interested Party,"[2] notifying TPPs of its intention to perform a natural resource damage assessment ("NRDA") for the site in question. The letter states: "This notice is to invite you to participate in funding and implementing this assessment. The notice requests that you respond in writing within 30 days of this letter to express your preliminary interest in participating." (Rycewicz Decl., Ex. 7 at 2.) On January 30, 2008, the PHTC sent another letter to Interested Party, stating that since the previous letter, they had been identified as an "entity that may potentially be liable for response costs under Section 107 of the CERCLA." (*Id.* at 1.) The letter also pointed out that this notice was separate from [**23] the EPA's PRP notice. (*Id.*)

In a March 26, 2008, letter, Batson informed NWM that it was a PRP: "Based on issuance of the 104(e) information requests and information obtained from the RI/FS currently being performed for the Site, it is believed that you or your company [*1245] are potentially responsible for response costs incurred and being incurred at the Site under Section 107(a) of CERCLA and ORS 465.255." (Huynh Decl., Ex. 2 at 2.)

In a letter dated May 7, 2008, TMG and BAE were granted an extension of time to respond to the first request for information. The letter stated: "Failure to respond fully and truthfully to the Information Request by the due date provided in this letter may result in an

---

[2] The identity of "Interested Party" is ambiguous and the Rycewicz Declaration does not resolve this ambiguity.

enforcement action by EPA." (Rycewicz Decl., Ex. 8 at 1.) On July 9, 2008, TPPs requested defense and indemnification from INA with respect to their involvement with the Site. (Rycewicz Decl., Ex. 16 at 1.)

The EPA sent a General Notice Letters to TMG and BAE on March 12, 2010. The letters stated that "[b]ased on information presently available to EPA, EPA has determined that The Marine [**24] Group [and BAE] may be responsible under CERCLA for cleanup of the Site or costs EPA and others have incurred in cleaning up the Site." (Rycewicz, Ex. 8 at 3; Stapley Decl., Ex. 7 at 1.) Subsequently, on March 22, 2010, and again on April 20, 2010, TPPs sent a letter to counsel for St. Paul, INA, and Great American "tender[ing] EPA's claims for defense and indemnity coverage" in response to the EPA's General Notice Letter dated March 12, 2010. (Rycewicz Decl., Ex. 9 at 1; Ex. 10 at 1.)

In a September 27, 2010, letter, the PHTC sent a letter to TMG and BAE informing them that they had been identified by the EPA as PRPs, but that this "notice [was] separate from the EPA General Notice Letter and [was] connected with the Natural Resource Damage Assessment portion of the CERCLA cleanup action at Portland Harbor." (Rycewicz Decl., Ex. 11 at 3.) On September 28, 2010, TPPs sent a letter to all insurers stating in relevant part:

> On September 23, 2010, we provided notice and demand to your counsel of my Clients' participation in discussion with the NRD Trustees about potentially participating in a Phase 2 Funding and Participation Agreement ("FPA"). A copy of that communication, with its enclosures, [**25] is attached. As we advised counsel, the NRD Trustees have identified my Clients as entities which are potentially liable for NRD. Funding the FPA is presently due on October 4, 2010. We hereby demand that you agree to fund participation in activities pursuant to the FPA, and we hereby tender this matter to you for a defense and indemnity.

(Rycewicz Decl., Ex. 12 at 1.)

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory [**26] statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential [*1246] to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Where disputed issues of material fact exist, the evidence is viewed in the light most favorable to the non-moving party. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1220 (9th Cir. 2010). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Therefore, where "the [**27] record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal quotation marks omitted).

### Discussion

### I. Duty to Defend

TPPs seek summary judgment that Defendants owe them a duty to defend. Generally, "[i]n a contract dispute, a party will be entitled to summary judgment only if the governing terms of the contract are unambiguous." *Milne v. Milne Construction Co.*, 207 Ore. App. 382, 388, 142 P.3d 475 (2006) (citing *Hauge*

*v. Vanderhave*, 121 Ore. App. 221, 225, 854 P.2d 1002, *rev den*, 317 Ore. 583, 859 P.2d 540 (1993)). A contract provision is ambiguous where it is susceptible to "more than one plausible - that is, sensible and reasonable - interpretation." *Id.* (citing *Deerfield Commodities v. Nerco, Inc.*, 72 Ore. App. 305, 317, 696 P.2d 1096, *rev den*, 299 Ore. 314, 702 P.2d 1111 (1985)). A court may refer to parol evidence to evaluate the ambiguity of a contract term. *Id.* (citing *Deerfield Commodities*, 72 Ore. at 317). If the court finds that the contract term is genuinely ambiguous, the meaning of that term is a question of fact. *Id.* at 389 [**28] (citing *Hauge*, 121 Ore. App. at 224).

In *Ledford v. Gutoski*, 319 Ore. 397, 400, 877 P.2d 80 (1994), the Supreme Court of Oregon wrote: "Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." Thus, "[a]n insurer should be able to determine from the face of the complaint whether to accept or reject the tender of the defense of the action." *Id.* (citing *Ferguson v. Birmingham Fire Ins.*, 254 Ore. 496, 505-506, 460 P.2d 342 (1969)).

The duty to defend arises if:

> the complaint provides *any basis* for which the insurer provides coverage. Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.

*Id.* (internal citations omitted) [**29] (emphasis in original). To be clear: "[i]f some of the allegations pertain to conduct that could be covered by the insurance policy, and some that could not, the insurer must defend the entire action." *Klamath Pacific Corporation v. Reliance Insurance Co.*, 151 Ore. App. 405, 413, [*1247] 950 P.2d 909 (1997) (citing *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Ore. 639, 645, 576 P.2d 1244 (1978)).

Although the court focuses on the complaint and the policy language when considering the duty to defend, where a dispute arises as to whether the party seeking a defense is an insured under the policy, the court may

consider extrinsic evidence. *Fred Shearer & Sons, Inc. v. Gemini Insurance Co.*, 237 Ore. App. 468, 477-478 , 240 P.3d 67 (2010).

### A. Existence of Duty to Defend in Policy

INA and Great American argue that their policies do not contain a valid duty to defend clause in light of subsequent endorsements which extinguish their duty to defend.[3] In particular, INA and Great American argue that the endorsement establishing a "deductible per occurrence" and which requires an agreement with a "claims servicing organization" extinguishes their duty to defend. INA briefed this issue extensively, [**30] which briefing Great American joins. For clarity, the court refers solely to INA, but its analysis and conclusion applies equally to Great American.

The Oregon Court of Appeals described the method for interpreting a policy exclusion:

> In determining whether a policy exclusion applies to the conduct at issue, we look "only at the facts alleged in the complaint to determine whether they provide a basis for a recovery that could be covered by the policy." If the allegations in the complaint are ambiguous, but a reasonable interpretation would bring them within coverage, there is a duty to defend. Moreover, if some allegations reasonably can be interpreted as falling within the coverage, the insurer owes a duty to defend - even if other allegations of conduct or damage are excluded.

*Fred Shearer & Sons*, 237 Ore. App. at 478 (quoting *Ledford*, 319 Ore. at 400) (internal citations omitted). Notably, it is the insurer's burden to prove that an exclusion applies. *ZRZ Realty Co. v. Beneficial Fire and Casualty Insurance Co.*, 349 Ore. 117, 127, 241 P.3d 710 (2010). Furthermore, this is a question of law which seeks to determine the parties' intent. [**31] *Id.* at 480.

INA argues that the duty to defend language in its original policy was invalidated by the deductible endorsement which imposed a "deductible per occurrence" and created a system whereby defense costs were borne jointly by the insurer and insured. TPPs argue that the deductible endorsement does not alter the duty to defend as it clearly contemplates an allocation of costs after a claim reaches a settlement or final judgment.

---

[3] St. Paul's policy does not contain such an endorsement.

Century Indem. Co. v. Marine Group, LLC

INA issued to NWMIW two policies relevant to this motion. The relevant policy language is identical unless otherwise noted. The deductible endorsement provides:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of [bodily injury or property damage] to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage . . . .

(Rycewicz Decl., Ex. 1 at 3; Ex. 2 at 2.) The relevant portions of the deductible endorsement states that INA has an obligation to pay damages only in excess of the stated deductible; that if the insured [*1248] does not pay [**32] damages up to the deductible, INA will pay those damages but will be entitled to reimbursement by the insured; and that the insured must pay the deductible for each separate occurrence, though that amount is limited by a maximum annual obligation, referred to in the policy as the "deductible-annual aggregate." (Rycewicz Decl. Ex. 1, 20-23; Ex. 2, 17-20.) The deductible endorsement also states: "Whereas the named insured has entered into a written agreement with a qualified claims servicing organization . . . it is understood and agreed that [INA] has no duty or obligation to provide investigation, defense or settlement services with respect to such claims or suits so long as such agreement with the claims service [sic] organization remains in effect." (Rycewicz Decl., Ex. 1 at 21; Ex. 2 at 18.)

INA also points to sections of the deductible endorsement which provide that INA has the right to control and associate with the insured with respect to claims where the claim is within the policy's coverage and is "reasonably likely to exceed the 'deductible per occurrence.'" (Rycewicz Decl., Ex. 1, 21-22; Ex. 2, 18-19.) INA further points to a section of the deductible endorsement which provides [**33] for payment of loss-adjustment expenses, which generally refers to attorney fees and costs. Essentially, such expenses are paid by INA to the extent that their amount, plus the amount of any settlement or judgment, exceeds the deductible per occurrence. (Rycewicz Decl. Ex. 1 at 22; Ex. 2 at 19.)

INA argues that the provisions of the deductible endorsement create a relationship between the insurer and insured that departs from the traditional model found under a duty to defend. Instead, the deductible endorsement creates "a mutual system wherein the

insured with the insurer agree to pay certain amounts at certain times based upon certain contingencies," and where the insured pays a fixed deductible amount for each occurrence giving rise to insurance coverage. (INA's Opp. 14.) INA also argues that the condition precedent to operation of the deductible endorsements has not occurred, namely a settlement or judgment, from which to apportion lost adjustment expenses and, therefore, TPPs motion on this point is premature and not justiciable. Finally, INA argues that there are questions of fact regarding whether there has been an "occurrence" or there is "property damage" sufficient to satisfy [**34] the policy terms in this case.

TPPs acknowledge the existence and applicability of the deductible endorsement but argue that, under the facts before the court, it does not relieve INA of liability as a matter of law. First, TPPs argue that where there is no agreement between the insured and a claims processing service, the endorsement does not relieve INA of its duty to defend. TPPs cite the language of the endorsement that provides for this exclusion from coverage, "so long as such agreement with the claims servicing organization remains in effect." (Rycewicz Decl., Ex. 1 at 21; Ex. 2 at 18.) Second, TPPs submitted the declaration of Resa Boxell, who testified that she served a subpeona on the purported claims servicer, ESIS, and that ESIS responded that its "internal search had discovered no relevant records." (Boxell Decl. ¶ 3-4.) Boxell later followed up on the inquiry and was again "advised via email that [the] further search efforts had found no responsive documents and that there was no evidence of a claims servicing agreement between ESIS and Northwest Marine Iron Works." (Boxell Decl. ¶¶ 5-6.) TPPs observe that, as the moving party, they need only point to the absence of evidence [**35] that such an agreement was in place, citing the analysis set forth by the Ninth Circuit in *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001): "When the nonmoving party [*1249] has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). TPPs argue that because there is no evidence of such an agreement, INA has failed to establish this necessary fact and thus cannot rely on the exclusion.[4]

---

[4] Century, the plaintiff here but not a party to the current motion, moved to strike Boxell's declaration based on lack of personal knowledge, as inadmissible hearsay, as unsupported by evidence in the summary judgment record, and for failure to

Century Indem. Co. v. Marine Group, LLC

The court concludes that, to the extent the deductible endorsement modifies the relationship between the insurer and the insured by establishing a deductible and creating a system of payment based on that deductible, the deductible endorsement does not interfere with the duty to defend set forth under the original policy. The provision regarding the claims processing service is another matter, however, because it potentially extinguishes INA's duty to defend. Under the provision, where a claims processing agreement is in place, INA has no duty to defend "so long as such agreement with the claims servicing organization remains in effect." (Rycewicz Decl., Ex. 1 at 21; Ex. 2 at 18.) Although this produces a somewhat unusual result, with the duty to defend premised on the insured's continued maintenance of a claims servicing agreement, the provision's language is clear: if no agreement with a claims servicing organization is in place, the duty to defend is placed on INA. Thus, in the absence of a claims servicing agreement, the insurer's duty to defend claims against the insured remains in place.

INA contends that [**37] the recital itself confirms the existence of the claims servicing agreement, or at least the intent of the parties that NWMIW would enter into one. INA reads the subject clause to mean that the parties left open the possibility of the relationship changing but did not require INA to assume a duty to defend in the absence of such agreement. TPPs respond that INA has failed in its burden to establish the exclusion and that the exclusion is properly read to make the duty to defend contingent on the existence of a claims servicing agreement. TPPs also submit evidence of a search on their part to come up with just such a document, and the failure of that search. They emphasize that the burden is on INA to produce evidence of the agreement and, INA having failed to do so, TPPs are entitled to summary judgment on this particular issue.

On the record before it, the court agrees that TPPs are entitled to summary judgment that INA failed to create a genuine issue of material fact as to the existence of a claims servicing agreement. As such, TPPs are entitled

to summary judgment that INA's duty to defend is not extinguished by a claims servicing agreement. Although the recital in the insurance [**38] policy represents evidence that the parties contemplated the inclusion of a claims servicing agreement, it is not evidence that such agreement existed. Here, the absence of evidence of a claims servicing agreement, the existence of which would be INA's to prove at trial, supports summary judgment [*1250] that the claims servicing agreement exclusion does not apply.

TPPs next argue that the provisions in the deductible endorsement that allocate loss adjustment expenses do not limit or eliminate the duty to defend found in INA's policies. TPPs point out that the allocation of defense costs does not modify the duty to defend, but rather that it presumes a defense was tendered as it "anticipated the allocation of deductible amounts after the claim has been defended to conclusion, either by settlement or judgment." (TPPs' Reply 37 (emphasis omitted).) Instead, TPPs argue, the question of whether a duty to defend exists under the policy hinges on the claims servicing organization provision. Finally, TPPs refute INA's argument that there are questions of fact as to whether defense costs in this case will exceed the deductible amount and trigger INA's duty to defend, arguing that it is exceptionally [**39] unlikely that defense costs in this substantial environmental cleanup action will be less than the deductible.[5]

The court agrees that the sharing and allocation of loss adjustment expenses via the deductible endorsement do not extinguish the duty to defend. With respect to whether the issue is premature because the amount of defense costs has not been established and, therefore, the threshold to trigger payment of defense costs has not been reached, the court is unpersuaded. The duty to defend does not depend on the ultimate amount expended in defense of a claim. The language of the deductible endorsement itself contemplates that the insurer will pay defense costs up front and, if appropriate, be entitled to seek reimbursement up to the deductible amount. Furthermore, premising the duty to defend on the amount ultimately spent in defense would nullify the policy language that establishes a duty to defend in the first place.

In conclusion, the court concludes that there are no genuine issue of material fact as to whether the deductible endorsement exempts INA from its duty to defend under the policy and that TPPs are entitled to

---

establish that ACE and ESIS were the proper sources of the information allegedly sought. TPPs respond that the declaration was submitted to demonstrate the diligence of Boxell's attempts to locate a claims servicing agreement and, as such, does not suffer from the defects asserted by Defendants. The court accepts the declaration as admissible for the purpose of establishing the diligence of Boxell's search efforts, [**36] and nothing more. Accordingly, Century's motion to strike (#334) is denied.

[5] The deductible amount at issue is $100,000.

Case 3:21-cv-10081-JCS   Document 1   Filed 12/30/21   Page 53 of 218

Page 12 of 20
Century Indem. Co. v. Marine Group, LLC

summary judgment [**40] on this issue.

### B. Existence of a Suit

TPPs argue that the claims made under CERCLA against the insureds comprise a "suit" which triggers INA's duty to defend. Specifically, TPPs cite the Batson letters, the 104(e) information requests, the General Notice Letters, and the NRDA letters from January 2008 and September 2010, and assert that these documents are the functional equivalent of a complaint that triggers a duty to defend. TPPs also cite the OECAA to support its position that such communications amount to a suit sufficient to trigger an insurer's duty to defend. Defendants do not dispute their duty to defend a suit against an insured, but argue that there is no suit to trigger this duty in the present matter.

The OECAA provides that a "suit" or "lawsuit" includes, "but is not limited to formal judicial proceedings, administrative proceedings and actions taken under Oregon or federal law, including action taken under administrative oversight of the Department of Environmental Quality or the United States Environmental Protection Agency pursuant to written voluntary agreements, consent decrees and consent orders." OR. REV. STAT. 465.480(1)(a) (2009). The OECAA sets forth several rules [**41] of construction that govern actions between insureds and insurers for coverage of an environmental claim, "whether in response to governmental demand or pursuant to a written voluntary agreement, consent decree [*1251] or consent order," for which the insured seeks coverage under a general liability insurance policy. OR. REV. STAT. 465.480(2) (2009). One such rule states that an "action or agreement" of DEQ or the EPA "against or with an insured" wherein the agency "directs, requests or agrees that an insured take action with respect to contamination with the State of Oregon is equivalent to a suit or lawsuit as those terms are used in any general liability insurance policy." OR. REV. STAT. 465.480(2)(b) (2009). The OECAA is explicit, however, that the rules of construction, which include this definition of suit or lawsuit, "do not apply if the application of the rule results in an interpretation contrary to the intent of the parties to the general liability insurance policy." OR. REV. STAT. 465.480(7) (2009).

This same question arose in *Ash Grove Cement Co. v. Liberty Mutual Ins. Co.*, No. 09-239-KI, 2010 U.S. Dist. LEXIS 103763, 2010 WL 3894119 (D. Or. Sept. 30, 2010), a recent decision from this district, specifically [**42] "whether a request for information from the United States Environmental Protection Agency ("EPA") to Ash Grove, pursuant to section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e), constitutes a 'suit' under the terms of the insurance policies, triggering the insurers' duty to defend Ash Grove." *Ash Grove*, 2010 U.S. Dist. LEXIS 103763, 2010 WL 3894119, at *1. The court cited OR. REV. STAT. 465.480, as well as *Schnitzer Investment Corp. v. Certain Underwriters*, 197 Ore. App. 147, 155, 104 P.3d 1162, 1168 (2005), *aff'd*, 341 Ore. 128, 137 P.3d 1282 (2006), for its holding that "[a]n administrative agency's requirement that a property owner clean up environmental contamination constitutes a 'suit' within the terms of an insurer's duty to defend." *Ash Grove*, 2010 U.S. Dist. LEXIS 103763, 2010 WL 3894119, at *4. The court rejected the insurers' arguments that the letter Ash Grove received from the EPA constituted only a "voluntary" request that was "not adversarial" and that imposed no obligations on Ash Grove to do anything in response. *Id.* The court observed that Ash Grove's compliance with the letter requests "'is required by law,'" and that "[t]he letter is not merely a request [**43] that Ash Grove provide information; it contains a threat of legal action and substantial penalties for failure to comply with the request under penalty of civil action and possible monetary penalties." *Id.* The court concluded that the 104(e) letter imposed an obligation on the plaintiff sufficient to trigger the duty to defend set forth in the policy, as a matter of law.

A similar conclusion resulted in *Certain Underwriters at Lloyd's London and Excess Ins. Co., Ltd. v. Massachusetts Bonding and Ins. Co. ("Massachusetts Bonding")*, 235 Ore. App. 99, 230 P.3d 103 (2010), a recent Oregon Court of Appeals decision, where the duty to defend was premised on a letter and accompanying documents sent by DEQ to the common insured, Zidell. The court outlined its analysis with respect to whether the DEQ letter was sufficient to trigger the duty to defend, posing two questions: "(1) Did the letter and accompanying documents demonstrate the existence of a 'suit' within the meaning of the insurance policies? (2) Did the letter and accompanying documents contain allegations that, without amendment, could impose liability for conduct covered by the policy?" *Id.* at 120. The court also noted that where [**44] there were doubts on the second question, such doubts would be resolved in favor of the insured. *Id.*

The court found, first, that the DEQ letter gave rise to a "suit" within the meaning of the policies. The letter

Century Indem. Co. v. Marine Group, LLC

stated that DEQ had performed a preliminary assessment, that further action was required, that samples would be taken to determine the extent of contamination, and [*1252] that site owners would be held strictly liable. The letter directed Zidell to inform DEQ as to how it planned to proceed and informed Zidell that, regardless, DEQ would seek to recover its costs. The court characterized the letter: "In effect, DEQ told Zidell to investigate and remediate contamination at the site or pay DEQ to do it - the type of agency ultimatum that we have previously held to constitute a 'suit' for purposes of the duty to defend." *Id.* at 121 (citing *Schnitzer Investment Corp.*, 197 Ore. App. at 155). The court noted that the insurance policies in question did not themselves define the term "suit" and it thus "[saw] no reason to reach a different interpretation of the term 'suit' than [it] reached in [its] previous cases." *Id.*

As to the second question, whether the allegations in the letter could [**45] alone impose liability under the policies, the court reasoned:

> The facts alleged in the letter and attached document could be read narrowly as Beneficial and U.S. Fire contend - as merely recommending further investigation. But it is reasonable to read them as more than that. In light of the facts in the "Site Assessment Program-Strategy Recommendation," including the long history of Zidell's waste disposal activities and the fact that adjacent property "is known to have soil and groundwater contamination," it is reasonable to read the DEQ letter as requiring further samples to determine the *extent* of groundwater contamination-that is, not *whether* there is groundwater contamination, but *how much.* That is sufficient to trigger the duty to defend.

*Id.* at 122 (emphasis in original) (citing *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Ore. App. 560, 584, 188 P.3d 332 (2008)). Thus, the Oregon Court of Appeals found a duty to defend where, although further tests were needed to determine the extent of the contamination, there were sufficient factual allegations establishing that there was contamination at the site and of the insured's history with respect to the waste disposal at the [**46] site.

Based on these precedents, TPPs argue that INA's duty to defend was triggered by the relevant agency communications because the communications allege TPPs' liability under CERCLA, TPPs were directed to participate in the process to allocate liability for

contamination and damage, and TPPs were directed to respond to the EPA's 104(e) Information Request. Thus, TPPs argue, the claims amount to a "suit" under the policy and Defendants are required to tender a defense on their behalf. Defendants respond that there is no "suit" by which a duty to defend is triggered. They characterize Oregon law on this point: "The common thread of the foregoing Oregon decisions is that in order for administrative action to serve as the functional equivalent of a lawsuit, it must be adversarial in nature; it must recite facts supporting the agency's intent to assess liability against the insured; and it must charge the insured with undertaking remedial measures and/or paying the costs of clean up." (St. Paul's Response Memo at 24.)

Defendants cite *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 126 Ore. App 689, 870 P.2d 260 (1994), wherein the Oregon Court of Appeals held [**47] generally that administrative proceedings may qualify as a suit sufficient to invoke coverage under an insurance policy. The court described its analysis: "We sought to ascertain the intent of the parties, and we considered that 'suit' was subject to more than one interpretation. After doing so, we arrived at the conclusion that 'suit' was sufficiently broad to cover [*1253] administrative proceedings." *Id.* at 701. The court assumed that not all administrative actions would trigger a duty to defend, but concluded that the case before it did in fact trigger such a duty:

> Assuming there are administrative actions that do not obligate the insurers to respond, we agree with M & B that this is not such an instance. Under the statutes governing cleanup of environmental damage, M & B was going to have to pay. The fact that it chose to try to gain a more favorable resolution by cooperation instead of litigation does not mean that the agency was not making a claim that M & B was responsible for damages.

*Id.*

According to Defendants, the administrative action must *require* that the insured act in a particular manner in order to give rise to a suit and thus trigger a duty to defend. They also cite *Schnitzer Investment Corp.*, 197 Ore. App. 147, 104 P.3d 1162. [**48] In *Schnitzer*, the Oregon Court of Appeals wrote in its introductory paragraph that "[t]he Department of Environmental Quality (DEQ) required plaintiff to remedy the contamination at significant expense to the plaintiff." *Id.* at 150. The court, however, went on to describe the facts which gave rise to the insurers duty to defend. The

Century Indem. Co. v. Marine Group, LLC

plaintiff, having discovered contamination on its own, informed DEQ of the contamination. The plaintiff agreed to investigate the contamination further, which investigation recommended remedial action on contamination of the soil, and continued monitoring of groundwater contamination. In a letter dated June 7, 1991, DEQ informed the plaintiff of its intent to list the plaintiff's property as contaminated and requiring cleanup. DEQ would remove the property from the list when the remedial action was complete. At this point, the plaintiff requested the insurer provide a defense, but the insurer denied the request. In evaluating whether and when the duty to defend arose between the plaintiff and the insurer, the court concluded that the communications between the plaintiff and DEQ up to and including the June 7, 1991, amounted to the functional equivalent [**49] of a judicial complaint and, thus, a "suit." *Id.* at 157. The Court of Appeals characterized those communications: "When read together, they described the factual basis on which DEQ sought to hold plaintiff liable for the cost of the environmental cleanup on its property." *Id.* Defendants distinguish this case on the ground that the documents cited in this case, read together, do not describe the factual basis upon which the agencies sought to base liability.

In *GE Property & Casualty Inc. Co. v. St. Paul Fire & Marine Ins. Co.*, No. CV 04-727-HU, 2005 U.S. Dist. LEXIS 40189 (D. Or. Nov. 17, 2005), the plaintiff and DEQ entered into a voluntary cleanup agreement, which agreement stated explicitly that it was neither an admission of liability by plaintiff nor a waiver of future claims by DEQ. It was not disputed that this voluntary agreement was the functional equivalent of a suit and the court concluded that it was "analogous to a complaint in court or charges in an administrative contested case proceeding, and therefore a 'suit' within the terms of an insurer's duty to defend." *Id.* at *11. Defendants argue that *GE Property* is distinct from the current case because, in *GE Property*, the [**50] parties entered into a voluntary agreement regarding the possible contamination whereby liability was presumed. Here, according to Defendants, no presumption of liability is present and so *GE Property's* holding is inapposite.

For these reasons, Defendants contend that the documents TPPs have submitted do not amount to the functional equivalent of a judicial complaint and, thus, there is [*1254] no "suit" giving rise to the insurers' duty to defend. In particular, Defendants argue that the communications do not attribute contamination to TPPs;

that TPPs have not been ordered to remediate the areas in question; that the 104(e) letters explicitly state that they are not designating any entity as a potentially responsible party; and that the letters from the Trustee Council are explicit in that they do not amount to a determination of liability. In sum, the communications "do not articulate any demands, and do not describe any potential loss of right by [TPPs]." (Defendants' Memo. 26.) Defendants also maintain that *Ash Grove* was wrongly decided and its conclusion is inconsistent with the conclusions other courts have reached.

TPPs contend, in their reply, that the administrative actions and communications [**51] amounted to a threat of liability that would ultimately be judicially enforceable. According to TPPs, the Batson letters alleged that they were potentially responsible for contamination at the site, requested their participation in the ADR process, threatened to initiate enforcement actions against those who did not participate in ADR, and further demanded the submission of information, under threat of a fine of upwards of $30,000 per day. TPPs also assert that they were invited to participate in an NRDA proceeding having been identified as potentially liable under CERCLA, and that the GNLs also identified TPPs as potentially liable.

Furthermore, TPPs contend that although couched as voluntary in nature, the agency requests for action and participation were anything but: "Nonparticipation would have severely compromised their ability to protect themselves from CERCLA liability." (TPP Reply Memo. 25.) They argue that, were TPPs unable to participate in the voluntary process and unable to negotiate an agreement through that process, "the [**52] EPA could issue a unilateral administrative order to perform remediation with joint and several liability, subject only to arbitrary and capricious review." *Id.* This, TPPs note, would present an undue risk in light of the extremely high stakes involved, with cleanup likely to cost upwards of $1 billion. TPPs point out that the 104(e) letters clearly threaten substantial fines, and the Batson letters clearly threaten enforcement for failure to participate. According to TPPs, although the letters purport to "invite" participation, they actually impose serious consequences for a failure to participate and, as such, are only reasonably read as threatening liability and giving rise to a suit.

The court agrees with TPPs that the relevant agency communications give rise to a suit such that the's insurers duty to defend is triggered, and finds on point and persuasive the decisions in *Ash Grove and Aetna*

*Casualty and Surety Co., Inc. v. Pintlar Corp.*, 948 F.2d 1507 (9th Cir. 1991). In *Ash Grove*, the court specifically held that a 104(e) letter imposed an obligation sufficient to trigger an insurer's duty to defend. It stated:

> The § 104(e) letter says that while EPA seeks Ash Grove's "voluntary [**53] cooperation," compliance with the request is "required by law," and that if Ash Grove fails to respond fully within a certain time, EPA can commence an action for civil penalties of up to $32,500 per day for noncompliance. The letter is not merely a request that Ash Grove provide information; it contains a threat of legal action and substantial penalties for failure to comply with the request.

*Ash Grove*, 2010 U.S. Dist. LEXIS 103763, 2010 WL 3894119, at *4. The *Ash Grove* court also cited the Ninth Circuit's decision in *Aetna Casualty* for the proposition that a PRP notice exposed an insured to "'immediate and severe implications'" and that "'in a CERCLA case, the PRP's substantive rights and ultimate liability [*1255] are affected from the start of the administrative process.'" *Ash Grove*, 2010 U.S. Dist. LEXIS 103763, [WL] at *5 (quoting *Aetna Casualty*, 948 F.2d at 1517). The *Ash Grove* court concluded that the 104(e) letter was subject to the same analysis as that of a PRP notice: "in view of the substantial penalties available to the EPA should Ash Grove not comply with the letter's requests, it is not accurate to say that the letter imposed no obligation on Ash Grove to investigate the contamination." *Id.*

In reaching its decision in *Aetna Casualty*, the Ninth [**54] Circuit looked to the nature of CERCLA to determine when an insured's interests would be genuinely in jeopardy. It noted that CERCLA was a coercive statutory scheme that "greatly empowers the government. In order to influence the nature and costs of the environmental studies and cleanup measures, the PRP must get involved from the outset." 948 F.2d at 1517. In addition to the strong incentives to cooperate with the EPA with respect to CERCLA, the court noted that coverage under a CERCLA claim "should not depend on whether the EPA may choose to proceed with its administrative remedies or go directly to litigation. A fundamental goal of CERCLA is to encourage and facilitate voluntary settlements." *Id.* (citation omitted). The court stated that, in evaluating whether an insured faces liability such that its rights are in jeopardy, "[t]he focus should be on the underlying rationale and not on the formalistic rituals. If the threat is clear then coverage should be provided." *Id.* at 1518.

Here, the agency communications combined to achieve the same "suit" equivalent within the meaning of the subject policies. In January 2008, Batson informed BAE that it had been identified as a possible PRP [**55] and invited it to attend an exploratory meeting. That same month, the EPA sent letters to BAE and TMG seeking information to assist in identifying PRPs, invoking section 104(e) of CERCLA, which itself provides that failure to cooperate with the information request authorizes the EPA to pursue enforcement and levy fines. The PHTC also issued letters in January 2008 in which it, first, invited participation and, second, identified TPPs as PRPs. In March 2008, Batson referenced the 104(e) information requests and informed NWM that it was a PRP. In March 2010, GNLs issued to TMG and BAE. In September 2010, the PHTC informed TMG and BAE that had been identified PRPs.

The CGL policies in this case do not define the term "suit." The OECAA sets forth a rule of construction for such term, provided it does not interfere with the intent of the contracting parties. The court finds that finding a "suit" exists here does not interfere with the parties' intent. Relevant and binding precedent counsel that a suit arises when an insured's rights are genuinely in jeopardy and an obligation has been imposed. This can occur at least as early as a request to provide information or otherwise comply with a [**56] CERCLA action, even absent an explicit declaration of liability. Indeed, as the Ninth Circuit has observed,

> The terms of an insurance contract dictate the obligations of the parties. Clear and unambiguous terms in insurance policies are construed according to their plain meaning, that is, what an ordinary reasonable lay person would interpret the meaning to be. * * * [A]n "ordinary person" would believe that the receipt of a PRP notice is the effective commencement of a "suit" necessitating a legal defense.

*Aetna Casualty.*, 948 F.2d at 1512, 1517. Here, administrative communications, including the 104(e) letter and notifications of PRP status, provided clear notice of the need to affirmatively defend allegations of [*1256] liability for environmental contamination and were sufficient to trigger Defendants' duty to defend. Accordingly, the court finds that, at least as early as the 104(e) notices, the agency actions and communications gave rise to a "suit" as a matter of law.

III. Corporate Succession

Century Indem. Co. v. Marine Group, LLC

*A. Succession Under Oregon Corporate Law*

"Under Oregon law, when a corporation purchases the assets of another corporation, the purchasing corporation generally does not assume the debts and liabilities [**57] of the selling corporation." *Cox v. DJO, LLC*, Civ. No. 07-1310-AA, 2009 U.S. Dist. LEXIS 107404, 2009 WL 3855084, at *2 (D. Ore. Nov. 16, 2009) (citing *Erickson v. Grande Ronde Lumber Co.*, 162 Ore. 556, 92 P.2d 170 (1939)). A corporation's debts and liabilities may transfer if any of four circumstances are present:

> 1) the purchasing corporation expressly or impliedly agrees to assume those liabilities; 2) the transaction constitutes a consolidation or merger of the corporations; 3) the purchasing corporation is a "mere continuation" of the selling corporation; or 4) the corporations effectuated the transaction for fraudulent purposes to escape liability.

*Cox*, 2009 U.S. Dist. LEXIS 107404, 2009 WL 3855084, at *2 (citing *Erickson*, 162 Ore. at 568).

In *Cox*, the plaintiffs sought to recover from an alleged successor corporation for liability that arose prior to the succession on the theory that the liability of the original corporation had transferred to the successor corporation under one of the four exceptions. The district court gave multiple reasons for rejecting plaintiffs' argument: the merger agreement explicitly stated that the successor would not take on any liabilities arising prior to the closing date of the merger; the merger with the another [**58] closely-aligned corporation was not a de facto merger with the original corporation; the merger did not create a mere continuation as the original corporation continued to operate as "an existing, separate corporate entity and an active defendant" and there was "no continuity of management, directors, or shareholders"; and the plaintiffs did not produce evidence that the corporations had colluded in the transaction to avoid liability. 2009 U.S. Dist. LEXIS 107404, [WL] at *3-4.

In *Dahlke v. Cascade Acoustics, Inc.*, 216 Ore. App. 27, 171 P.3d 992 (2007), the Oregon Court of Appeals analyzed the third exception to the "no transfer" rule, where the asset purchase gives rise to a new corporation that is a "mere continuation" of the previous corporation. The court held that there was no continuation where the purchase was less than all of the original corporation's assets:

> Plaintiff argues that, under the third exception

quoted in Erickson, Drake Management is liable for FMD's debts because Drake Management "is merely a continuation of" FMD. . . . Most notably, Drake Management did not purchase *all* of FMD's assets. Rather, FMD was left with significant assets and continued to operate as a separate corporation for more than [**59] a decade. Plaintiff's theory that Drake Management was simply a continuation of FMD ignores the separate legal existence of the two corporations and disregards the legislative policy that corporations are distinct legal entities.

*Id.* at 37 (emphasis in original). However, the Ninth Circuit, in a case applying California law, has held that an insurance policy's benefits transfer when enough of the predecessor corporation's assets are purchased: "the benefits of an insurance policy, including the right to a defense, issued to a predecessor corporation transferred by operation of law to the successor corporation when it purchased [*1257] substantially all the predecessor's assets." *Quemetco Inc. v. Pacific Automobile Insurance Co.*, 24 Cal. App. 4th 494, 29 Cal. Rptr. 2d 627, (1994) (citing *Northern Insurance Co. of New York v. Allied Mutual Insurance*, 955 F.2d 1353, 1358 (9th Cir. 1992)).

TPPs argue that they have alleged the succession of TMG and BAE to NWMIW's insurance policies sufficient to entitle them to a defense under those policies. TPPs cite the administrative communications that gave rise to this suit as identifying BAE and TMG as the corporate successors of NWMIW. In particular, they refer to the January [**60] 2008 letters from Batston, the 104(e) CERCLA notices, communications from the EPA requesting information about the Site, the General Notice Letters, and letters from the PHTC. TPPs argue that this evidence is sufficient to allege corporate succession such that the duty to defend is triggered.

TPPs cite *Shearer* for the proposition that extrinsic evidence is relevant to determine the identity of an insured, but does not necessarily need to be pleaded where the evidence is not otherwise relevant to the merits of the underlying case:

> The facts relevant to an insured's relationship with its insurer may or may not be relevant to the merits of the plaintiff's case in the underlying litigation. The plaintiff in the underlying case is required to plead facts that establish the defendant's liability; the plaintiff often is not required to establish the nature of the defendant's relationship to some other party or to an insurance company in order to prove a claim.

Century Indem. Co. v. Marine Group, LLC

237 Ore. App. at 477. TPPs thus argue that the court may consider extrinsic evidence of facts not alleged in the pleading. They further argue that in two years of discovery the insurers have failed to uncover evidence that rebuts the succession [**61] of their policies to BAE and TMG.

Defendants assert that TPPs bear the burden of proving coverage and must establish their identity as insureds and, thus, their entitlement to defense coverage. According to Defendants, TPPs have produced no evidence of the transfer of liabilities and assets from NWMIW to BAE and TMG, and have only produced correspondence which presupposed the corporate succession of environmental liability. Furthermore, Defendants argue that the 1997 SPA agreement is ambiguous which itself presents genuine issues of fact regarding succession of the insurance policies. Defendants also argue that the insurance policies at issue include anti-assignment clauses and do not otherwise provide for successor coverage, which point TPPs concede, though TPPs contend the policies transferred by operation of law and, as such, any anti-assignment clauses were overridden.

The court agrees that TPPs have the burden to establish coverage and have failed to do so here. Although the evidence cited by TPPs suggests a possible succession of liability from NWMIW to BAE and/or TMG, it does not establish it as a matter of law. In fact, TPPs state in their reply that the 1997 SPA is ambiguous. [**62] The parties dispute which of them is entitled to a favorable inference where the corporate succession documents are ambiguous. The court need not answer this question because, even if the inferences are made in favor of TPPs, the documents are themselves still ambiguous regarding which entity, BAE or TMG, is the successor to the insurance policy. Thus, Defendants are correct that there are genuine issues of material fact as to the corporate succession and, more specifically, whether the policies issued by St. Paul and the [*1258] other insurers were validly transferred by way of corporate succession.

Defendants argue that a duty to provide a defense to more than one potential successor to an insurance policy is a requirement unsupported by law. However, in light of the ambiguity created by the corporate succession documents, the court has determined that there are questions of fact as to whether either BAE or TMG have succeeded to the insurance policies in this case.

B. Succession by Operation of Law

The parties dispute whether there was a transfer of liability under CERCLA by operation of law. TPPs argue that, in the context of CERCLA and principles of equity, coverage for damage occurring during [**63] a policy period transfers to a subsequent owner regardless of the laws of corporate succession. They rely in large part on the holding in B.S.B. Diversified Co., Inc. v. American Motorists Ins. Co., 947 F. Supp. 1476 (W.D. Wa. 1996), a case from the Western District of Washington involving groundwater contamination and subsequent cleanup efforts. The court held that the insurer was liable for coverage under two theories: first, that an assignment transferred all liabilities and assets to a successor corporation and, second, that the liabilities and assets transferred by operation of law. The court relied on a prior decision by the Ninth Circuit, Northern Ins. Co. of New York v. Allied Mutual Ins. Co., 955 F.2d 1353 (9th Cir. 1992), which it described as follows:

> In Northern Insurance, the court held that there was no explicit transfer of liabilities in an asset purchase agreement in which Brown-Foreman Corporation purchased California Cooler. The Ninth Circuit, however, relied on Washington and California law to conclude that liability for pre-sale activity "transferred irrespective of any clauses to the contrary in the asset purchase agreement." Then, under "operation of law," the [**64] court concluded that the rights under insurance policies to indemnification and a defense followed the liability.

B.S.B. Diversified, 947 F. Supp. at 1481. The district court concluded that "where the events creating liability occurred prior to transfer of liability," the successor assumes responsibility and "the insurance benefits covering liability for those acts" are also transferred to the successor. Id. at 1481-1482.

Defendants argue that this case, and the Ninth Circuit precedent it relies on, have since been undermined, as demonstrated by Quemetco Inc. v. Pacific Automobile Ins. Co., 24 Cal. App. 4th 494, 29 Cal. Rptr. 2d 627 (1994). In Quemetco, the court surveyed relevant California precedent and the holding in Northern Insurance, and considered whether the insurance policy issued to a corporation necessarily transferred to a successor corporation "when it purchased substantially all of the predecessor's assets." Quemetco, 24 Cal. App. 4th at 499. The Quemetco court cited a 1986 California Court of Appeals decision which cited the Northern Insurance holding and had declined to "extend

Century Indem. Co. v. Marine Group, LLC

the rule for determining liability to the issue of insurance coverage, instead preferring to [**65] look to the contract itself to resolve the issue of coverage." *Id.* at 500. The *Quemetco* court distinguished cases that had validated the transfer of insurance benefits as situations wherein the corporate succession had been established. *Id.* at 501. It also noted that the timing of the succession relative to the liability-inducing occurrence was relevant, in that a liability arising after the corporate transfer would not carry with it the coverage of a pre-existing policy. *Id.* The court concluded:

[*1259] In this case, appellant was found to be liable for hazardous waste clean up costs based on an act passed after it purchased Old Quemetco's assets. Thus, unlike the situation in *Northern*, no liability passed as a matter of law at the time of the asset sale as no such liability existed at that time.

*Id.* Thus, under *Quemetco*, the insurance benefits of a pre-existing policy transfer when the liability transfers under the state's law of corporate succession and where the liability existed at the time of the succession.

The court does not agree that *Quemetco* necessarily undermines the holdings of either *Nothern Insurance or B.S.B. Diversified*. In the court's view, the confusion stems from the discussion [**66] by the district court in *B.S.B. Diversified*. There, the court presented its duty inquiry as two distinct analyses, rather than a single analysis. The court first determined that liability flowed to the successor corporation under principles of corporate law and so the insurance benefits should also attach. Then, the court determined that liability and insurance benefits transferred to the successor corporation by operation of law, irrespective of anti-assignment language contained in the insurance policy itself. Although seemingly presented as a separate ground for finding coverage under the insurance policy, the "operation of law" argument presupposed that corporate succession occurred sufficient to transfer liability and merely provided that a successor would be "responsible for environmental cleanup where the events creating liability occurred prior to transfer of liability." *B.S.B. Diversified*, 947 F. Supp. at 1482. The discussion is otherwise sound, except to the extent that it created the appearance of a dichotomy where there is no such difference.

Here, there are questions of fact regarding whether corporate succession occurred sufficient to transfer liability to BAE or TMG, [**67] and summary judgment on this point is denied. However, if a finder of fact determines that BAE and TMG did indeed succeed to

the liabilities of NWMIW, the benefits of the insurance policies will flow to BAE and TMG just as the liability for an occurrence that took place prior to their tenure does.

### III. Constitutionality of the OECAA

St. Paul[6] objects to application of OECAA rules of construction to its policy language as an unconstitutional violation of the Contracts Clauses of both the United States and Oregon Constitutions. The State of Oregon ("the State") intervened in order to defend the OECAA, a position with which TPPs concur. In its responsive briefing, St. Paul makes clear that it does not challenge the OECAA's facial constitutionality, but only the constitutionality of the application proposed by TPPs as overbroad and beyond the intent of the legislature and the contracting parties. St. Paul argues, specifically, that interpreting the agency communications that occurred in this case as a "suit" for purposes of the OECAA would amount to an unconstitutional application.

The United States Constitution provides: "No State [**68] shall . . . pass any . . .Law impairing the Obligation of Contracts[.]" U.S. Const. Art. I § 10. The Oregon Constitution provides: "No . . . law impairing the obligation of contracts shall ever be passed[.]" Or. Const. Art. I § 21. The parties agree generally that to determine whether a law violates either contract clause, a three-step analysis is applied. First, the court considers whether the contract is substantially impaired. Second, the court examines whether the [*1260] state has a "significant and legitimate public purpose" for the regulation. Third, the court determines whether the resulting adjustment of the contract obligations is reasonable in its conditions and character in light of the underlying public purpose. *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411-412, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983).

Under the OECAA, when an agency "directs, requests or agrees that an insured take action with respect to contamination with the State of Oregon" such action is considered a "suit" for purposes of a CGL policy, so long as that interpretation does not undermine the intent of the parties to the policy. St. Paul argues that expanding the definition of a "suit" for purposes of the OECAA in the manner [**69] proposed by TPPs would render the statute unconstitutional. St. Paul contends such application would interfere with the intent of the contracting parties, as expressed in the policy terms

---

[6] St. Paul alone objected to the State's motion to intervene.

Century Indem. Co. v. Marine Group, LLC

themselves. In particular, St. Paul points to the distinction made in the policy between claims and suits, where the insurer has a duty to defend a suit, but not a claim. In light of this distinction, St. Paul argues, it cannot be required to defend what would qualify as a "claim" under its policy, regardless of whether it would qualify as a "suit" under the OECAA. In other words, the definition of "suit" in the statute is broader than the definition contemplated by the policy, and imposition of the statute's definition on the policy thus would unconstitutionally impair the bargain agreed to by the contracting parties.

St. Paul then turns to the three-step analysis. First, St. Paul identifies the particular right that will be substantially impaired by application of the OECAA, namely its right to deny a defense to a what is merely a claim, and not a suit. This impairment is substantial, it argues, because the terms of a duty to defend are a central component of a liability insurance policy. Second, [**70] St. Paul argues that such an interpretation would bring the OECAA beyond its significant and legitimate public purpose, this because the interpretation would actually benefit a narrow class of interested parties, rather than the people of Oregon. St. Paul argues further that the rules of construction set forth in the OECAA apply only to a narrow class of insurance claims, specifically environmental claims. In St. Paul's view, a rule that applies solely to environmental claims, and not all claims under the policy, would be improper and represent a departure from the purportedly substantial and legitimate public purpose of the OECAA. Third, St. Paul argues that application of the OECAA as urged by TPPs is outside of the substantial and legitimate public purpose of the statute. According to St. Paul, the statute's purpose is to "encourage parties to cooperate with environmental agencies in remedying contamination." (St. Paul Opp. Memo. 35.) In particular, St. Paul notes that the agency communications TPPs seek to introduce as initiating a suit are mere requests for cooperation that do not concern an agreement to remedy contamination by a responsible party. In the absence of an allegation [**71] of liability, the agency communications cannot constitute a suit sufficient to trigger St. Paul's duty to defend. Finally, St. Paul urges the court to construe the statute in a manner that avoids a constitutional conflict.

The State argues that the statute is facially constitutional and its uses the history and purpose of the statute to support its argument. First, the State argues that the legislative history and purpose of the statute reveal that it was enacted to allow policy holders to

voluntarily comply with environmental cleanup efforts prior to the formal initiation of litigation. In doing so, the law sought to prevent situations where an insurer would deny its duty to defend [*1261] or the existence of coverage, and thus discourage or at least delay voluntary efforts by policy holders to remedy environmental damage while such issues were litigated in courts of law. Second, the State argues that the statute was drafted to avoid violating the contracts clause. OECAA's definition of "suit" applies only where the court cannot ascertain the meaning of "suit" from the face of the policy. Furthermore, the rule of construction is not applied if its result would be contrary to the parties' intent. [**72] The State notes that where contract terms are ambiguous, courts turn to maxims of construction which are often established by statute. Thus, the inclusion of rules of construction in the OECAA is neither unusual nor unconstitutional.

With respect to the three-step analysis, the State argues first that the statute does not substantially impair the insurance policy by modifying the scope of coverage. Rather, the statute supplies rules with which to evaluate ambiguous contract terms and does not change the underlying contract in any way. And, even if it did modify the contract as St. Paul argues, this would not be considered "substantial" in the context of the heavily regulated insurance industry. Second, the State argues that the purpose of the OECAA is both significant and legitimate in that environmental cleanup benefits all citizens of the State, not any special interest. Furthermore, the State argues, where contract terms are ambiguous, courts ultimately resort to considering policy goals, which goals are appropriately left to elected officials and not to courts. The State also distinguishes *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978), as representing a materially [**73] different situation wherein a legislative enactment was not broadly applicable and may have been enacted with a single entity in mind. Third, the State argues that the rule of construction currently at issue is reasonable measure and is appropriate to achieve its purpose - it applies only where the contract term is ambiguous and facilitates voluntary compliance in environmental cleanup efforts.

For their part, TPPs defend the constitutionality of the OECAA and its definition of "suit" as a construction that has been validated by Oregon courts, noting that a contract can hardly be impaired by a statutory definition for a term the insurer did not bother to define in the policy itself.

Century Indem. Co. v. Marine Group, LLC

The court agrees that this application of the OECAA's rules of construction does not violate the contracts clause of the United States or Oregon Constitutions. First, the application does not substantially impair the terms of the policy. The policy requires St. Paul defend the insured in the event of liability for property damage. The OECAA merely provides guidance for courts in determining when a suit has been initiated where determining that occurrence otherwise is ambiguous, provided that determination [**74] is not in conflict with the contract terms. As previously discussed, a duty to defend arises where there is a threat of liability, and that threat exists under these facts. OECAA's definition of "suit" does not in any way alter or amplify that duty. Second, the OECAA has a significant and legitimate public purpose in protecting the citizens of Oregon from serious environmental contamination and in holding polluters responsible for environmental degradation. In light of this purpose, and weighed against the purported contractual interference, the readjustment of obligations is reasonable in condition and character. The OECAA seeks to facilitate cleanup efforts and encourage voluntary compliance in these efforts, purposes both legitimate and substantial. And, in light of the coercive nature of CERCLA, the OECAA does not unduly impair the insurance policy [*1262] by interpreting "suit" to encompass specific administrative actions that seek to identify and impose liability.

TPPs also argue that St. Paul should have pleaded the alleged unconstitutionality of the OECAA as an affirmative defense. TPPs' sole citation in support for this contention is a treatise which states that certain other issues [**75] not specifically set forth in Federal Rule of Civil Procedure 8(c) must be "set forth affirmatively in the responsive pleading." Wright & Miller, *Federal Practice and Procedure*, Civil 3d § 1271. The rule itself does not provide guidance to determine which unspecified issues must be so pleaded, but the cited treatise notes that, in spite of this lack of guidance, "it is possible to formulate some working principles for determining what constitutes a defense contemplated by the final clause of Rule 8(c)." *Id.*

The Wright & Miller treatise cites three cases. Two are from different circuits, namely the Fifth and Tenth Circuits, and they state categorically that a constitutionality challenge must be pleaded. *Kewanee Oil & Gas Co. v. Mosshamer*, 58 F.2d 711, 712 (10th Cir. 1932); *Butts v. Curtis Publishing Co.*, 225 F. Supp. 916, 920 (D.C. Ga. 1964) (citing *Kewanee*). The other case cited is from the Idaho Supreme Court and stands for the opposite proposition: "The constitutionality of a

statute, however, is not ordinarily an issue upon which evidence must be presented at trial or about which one must be forewarned in order to prepare evidence for trial. In this case the constitutional question [**76] is a matter of law." *Williams v. Paxton*, 98 Idaho 155, 163 n.1, 559 P.2d 1123 (1976). However, in light of the uncertainty of federal law on this issue and the fact that the court otherwise finds the statute constitutional and the pleading issue thus moot, the court declines to rule on this issue.

*Conclusion*

For the reasons stated, TPPs motion for summary judgment (#298) is GRANTED in part and DENIED in part. Century's motion to strike (#334) is DENIED. Argonaut's motion to join (#302) is DENIED.

DATED this 27th day of January, 2012.

/s/ John V. Acosta

JOHN V. ACOSTA

United States Magistrate Judge

**End of Document**

# EXHIBIT E

ALAN R. BRAYTON, ESQ., S.B. #73685
GEOFF T. SLONIKER, ESQ., S.B. #268049
gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
Tel: 415-898-1555
Fax: 415-898-1247

Attorneys for Claimant MARY MARION

**UNITED STATES DEPARTMENT OF LABOR**

**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| MARY MARION (surviving spouse of VERNON J. MARION),<br>　　　　Claimant,<br><br>vs.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., and THE MARINE GROUP,<br>　　　　Employers,<br><br>　　　and<br><br>FAIRLEAD BOATWORKS and FRASER BOILER SERVICES/SIGNAL MUTUAL INDEMNITY ASS'N LTD.,<br>　　　　Employers and Carrier,<br><br>　　　and<br><br>DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,<br>　　　　Party-In-Interest. | OALJ Case No.: 2019-LHC-01475<br><br>OWCP Case No.: 13-306597<br><br>CLAIMANT'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE |

PROPOUNDING PARTY:　Claimant MARY MARION

RESPONDING PARTY:　　Employer BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.

SET NO.:　　　　　　ONE

　　　　COMES NOW CLAIMANT MARY MARION ("CLAIMANT"), the surviving widow of Vernon Marion, the now-deceased injured worker ("DECEDENT"), and pursuant to 29

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
415-898-1555

C.F.R. §§ 18.50, 18.57, and 18.61, requests that the BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC. respond to these REQUESTS FOR THE PRODUCTION OF DOCUMENTS, SET ONE.

CLAIMANT requests that the BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC. produce the requested DOCUMENTS at the office of CLAIMANT's counsel, Brayton❖Purcell LLP, 222 Rush Landing Road, Novato, California, 94948, on or before 30 days from the service of these requests.  Alternatively, the BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC. may produce the DOCUMENTS electronically by email in PDF format.

<div align="center">DEFINITIONS</div>

1.    "BAE SYSTEMS," "YOU" or "YOUR" are intended to mean BAE Systems San Diego Ship Repair, Inc. and its subsidiaries, agents, officers, employees, board of directors and any and all predecessors-in-interest or alternate entities.

2.    "SOUTHWEST MARINE" is intended to mean Southwest Marine, Inc.

3.    "SOUTHWEST MARINE HOLDINGS" is intended to mean Southwest Marine Holdings, Inc.

4.    "MARINE GROUP" is intended to mean Marine Group LLC and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities.

5.    "DOCUMENT" and "DOCUMENT(S)" are intended to mean and to otherwise encompass and include, at least but not limited to, any "writing," whether electronic, hard copy or any other medium in which such writing is or may be preserved, any "recording," "photograph," "original" or "duplicate," as such terms are used and further defined under the Federal Rules of Evidence, Rule 1001, et seq., and as further understood and defined by case authority pertinent to such definitions.

6.    "IDENTIFYING" when used with respect to a corporate officer means to describe each corporate officer by name, last known telephone number and last known address, including city and state of residence.

///

7. "CLAIM" refers to the above-entitled claim being brought by CLAIMANT for which she is seeking death benefits under the provisions of 33 U.S.C. §§ 901, et seq., due to the wrongful death of her husband, DECEDENT.

8. "PERTAINING TO" means regarding, relating to, referring to, referencing, concerning, discussing, evidencing, supporting, identifying or describing.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:  YOUR current DOCUMENT retention policy.

REQUEST FOR PRODUCTION NO. 2:  All of YOUR prior DOCUMENT retention policies.

REQUEST FOR PRODUCTION NO. 3:  YOUR Articles of Incorporation at the time of YOUR incorporation.

REQUEST FOR PRODUCTION NO. 4:  All amendments to YOUR Articles of Incorporation.

REQUEST FOR PRODUCTION NO. 5:  All DOCUMENTS PERTAINING TO the relationship between YOU and SOUTHWEST MARINE.

REQUEST FOR PRODUCTION NO. 6:  All DOCUMENTS PERTAINING TO the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS.

REQUEST FOR PRODUCTION NO. 7:  All DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to SOUTHWEST MARINE HOLDINGS.

REQUEST FOR PRODUCTION NO. 8:  All DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to MARINE GROUP.

REQUEST FOR PRODUCTION NO. 9:  All DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1997.

REQUEST FOR PRODUCTION NO. 10:  All DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1998.

REQUEST FOR PRODUCTION NO. 11:  The 1997 "Assignment and Assumption Agreement" that assigned liabilities to MARINE GROUP.

REQUEST FOR PRODUCTION NO. 12:  The 1997 "Stock Purchase Agreement" that governed SOUTHWEST MARINE HOLDING's purchase of SOUTHWEST MARINE's stock.

///

1   REQUEST FOR PRODUCTION NO. 13:  All DOCUMENTS, including the insurance

2   policies, PERTAINING TO SOUTHWEST MARINE's Longshore & Harbor Workers'

3   Compensation Act liability insurance for each year between 1979 and 1993.

4   REQUEST FOR PRODUCTION NO. 14:  All DOCUMENTS PERTAINING TO and/or

5   IDENTIFYING YOUR corporate officers at the time of YOUR formation.

6   REQUEST FOR PRODUCTION NO. 15:  All DOCUMENTS PERTAINING TO and/or

7   IDENTIFYING YOUR corporate officers in 1997.

8   REQUEST FOR PRODUCTION NO. 16:  All DOCUMENTS PERTAINING TO and/or

9   IDENTIFYING YOUR current corporate officers.

10   REQUEST FOR PRODUCTION NO. 17:  All DOCUMENTS PERTAINING TO any

11   agreements between YOU and MARINE GROUP PERTAINING TO this CLAIM.

12   REQUEST FOR PRODUCTION NO. 18:  A copy of the declaration of Arthur Engel, and all

13   attached exhibits (Docket Number 301), filed on April 20, 2011, in *Century Indemnity*

14   *Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United

15   States District Court, District of Oregon.

16   REQUEST FOR PRODUCTION NO. 19:  A copy of the declaration of Arthur Engel (Docket

17   Number 369), and all attached exhibits, filed on July 11, 2011, in *Century Indemnity Company*

18   *v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United States

19   District Court, District of Oregon.

20

21   Dated:    10/13/2020              BRAYTON❖PURCELL LLP

22

23                               By: /s/ Geoff T. Sloniker

24                                  Geoff T. Sloniker
                                 Attorneys for Claimant

25

26

27

28

BRAYTON◆PURCELL, LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1

<div align="center">

PROOF OF SERVICE BY EMAIL

</div>

2

I am employed in the County of Marin, State of California.  I am over the age of 18 years and am not a party to the within action.  My business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California 94948-6169.

3

4

On October 13, 2020, I served the following document(s) described as:

5

CLAIMANT'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE

6

on the interested party(ies) in this action as follows:

7

Frank Hugg - fhugg@hugglaw.onmicrosoft.com

8

David E. Edeli - Edeli.David.L@dol.gov

David Doeling - ddoeling@aleccialaw.com

9

Barry Ponticello - bponticello@eps-law.com

10

Executed October 13, 2020, at Santa Rosa, California.

11

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

12

13

*Angela Porterfield*

Angela Porterfield

14

15

16

17

18

19

<u>Mary C. Marion vs. BAE Systems San Diego Ship Repair, Inc.</u>, *et al.*

OALJ Case No. 2019-LHC-01495; OWCP #13-306597

20

21

22

23

24

25

26

27

28

# EXHIBIT F

ALAN R. BRAYTON, ESQ., S.B. #73685
GEOFF T. SLONIKER, ESQ., S.B. #268049
gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
Tel: 415-898-1555
Fax: 415-898-1247

Attorneys for Claimant MARY MARION

**UNITED STATES DEPARTMENT OF LABOR**

**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| MARY MARION (surviving spouse of VERNON J. MARION), <br>     Claimant, <br><br> vs. <br><br> BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., and THE MARINE GROUP, <br>     Employers, <br><br> and <br><br> FAIRLEAD BOATWORKS and FRASER BOILER SERVICES/SIGNAL MUTUAL INDEMNITY ASS'N LTD., <br>     Employers and Carrier <br><br> and <br><br> DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, <br>     Party-In-Interest. | OALJ Case No.: 2019-LHC-01475 <br><br> OWCP Case No.: 13-306597 <br><br> CLAIMANT'S INTERROGATORIES TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE |

PROPOUNDING PARTY:   Claimant MARY MARION

RESPONDING PARTY:    Employer BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.

SET NO.:           ONE

      COMES NOW CLAIMANT MARY MARION ("CLAIMANT"), the surviving widow of Vernon Marion, the now deceased injured worker ("DECEDENT"), and pursuant to 29

1   C.F.R. §§ 18.50, 18.57, and 18.60, requests that BAE SYSTEMS SAN DIEGO SHIP REPAIR,

2   INC. respond to the INTERROGATORIES, SET ONE, propounded herein as follows:

3                                              <u>DEFINITIONS</u>

4          1.       "BAE SYSTEMS," "YOU" or "YOUR" are intended to mean BAE Systems San

5   Diego Ship Repair, Inc. and its subsidiaries, agents, officers, employees, board of directors and

6   any and all predecessors-in-interest or alternate entities.

7          2.       "SOUTHWEST MARINE" is intended to mean Southwest Marine, Inc.

8          3.       "SOUTHWEST MARINE HOLDINGS" is intended to mean Southwest Marine

9   Holdings, Inc., and its subsidiaries, agents, officers, employees, board of directors, and any and

10  all predecessors-in-interest or alternate entities.

11         4.       "MARINE GROUP" is intended to mean Marine Group LLC and its

12  subsidiaries, agents, officers, employees, board of directors, and any and all

13  predecessors-in-interest or alternate entities.

14         5.       "DOCUMENT" and "DOCUMENT(S)" are intended to mean and to otherwise

15  encompass and include, at least but not limited to, any "writing," whether electronic, hard copy

16  or any other medium in which such writing is or may be preserved, any "recording,"

17  "photograph," "original" or "duplicate," as such terms are used and further defined under the

18  Federal Rules of Evidence, Rule 1001, et seq., and as further understood and defined by case

19  authority pertinent to such definitions.

20         6.       "CLAIM" refers to the above-entitled claim being brought by CLAIMANT for

21  which she is seeking death benefits under the provisions of 33 U.S.C. §§ 901, et seq., due to the

22  wrongful death of her husband, DECEDENT.

23         7.       "LAST RESPONSIBLE EMPLOYER" means that employer during whose

24  employment it occurred that the exposed individual, here DECEDENT, was last exposed to

25  injurious stimuli which caused or contributed to the death of such exposed individual and that

26  such employment was also prior to the date upon which the exposed individual became aware

27  of the fact that he was suffering from an occupational disease arising naturally out of his

28  ///

CLAIMANT'S INTERROGATORIES TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE; OWCP NO. 13-306597, OALJ NO.
2019-LHC-01475

1   employment, as provided for in *Dillingham Ship Repair v. United States DOL*, 320 Fed. Appx.

2   585, 587 (9th Cir. 2009).

3       8.      "COMPENSATION" means compensation as defined under 33 U.S.C. § 902(12)

4   and equals the applicable initial amount of weekly benefits to be paid is such benefits are

5   awarded.

6       9.      "PERSON" and "PERSONS" include natural persons, firms, associations,

7   organizations, contractors, premise owners, partnerships, businesses, trusts, corporations or

8   public entities.

9       10.     "IDENTIFY", "IDENTIFIED," and "IDENTIFYING" when used in reference to

10  a PERSON means to describe by name, last known telephone number and last known address,

11  including city and state of residence.

12      11.     "IDENTIFY," "IDENTIFIED" and "IDENTIFYING" when used with respect to

13  "statute" shall mean to state the statute number, jurisdiction and any other information that

14  would assist in locating a copy of that statute.

15      12.     "IDENTIFY," "IDENTIFIED" and "IDENTIFYING" when used with respect to

16  "case law" shall mean to state the name of the case, the jurisdiction of the case, the case number

17  and the citation.

18      13.     "IDENTIFY", "IDENTIFIED," and "IDENTIFYING" when used in reference to

19  a DOCUMENT means to provide the title, author, addressee, date and content of the

20  DOCUMENT.

21                          **INTERROGATORIES**

22  <u>INTERROGATORY NO. 1</u>:  IDENTIFY all PERSONS who assisted with the preparation of

23  YOUR responses to CLAIMANT's Interrogatories.

24  <u>INTERROGATORY NO. 2</u>:  IDENTIFY all PERSONS who assisted with the preparation of

25  YOUR responses to CLAIMANT's Requests for Admission.

26  <u>INTERROGATORY NO. 3</u>:  IDENTIFY all PERSONS who assisted with the preparation of

27  YOUR responses to CLAIMANT's Requests for Production of Documents.

28  <u>INTERROGATORY NO. 4</u>:  State the year that YOU formed.

1  INTERROGATORY NO. 5:  State whether YOU amended YOUR Articles of Incorporation in

2  2005 to change your name to BAE Systems San Diego Ship Repair, Inc., from Southwest

3  Marine, Inc.

4  INTERROGATORY NO. 6:  State whether SOUTHWEST MARINE sold its stock to

5  SOUTHWEST MARINE HOLDINGS in 1997.

6  INTERROGATORY NO. 7:  IDENTIFY all DOCUMENTS PERTAINING TO the sale of

7  SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS.

8  INTERROGATORY NO. 8:  IDENTIFY all PERSONS with information PERTAINING TO

9  the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS.

10  INTERROGATORY NO. 9:  IDENTIFY all DOCUMENTS PERTAINING TO

11  communications BETWEEN SOUTHWEST MARINE and SOUTHWEST MARINE

12  HOLDINGS.

13  INTERROGATORY NO. 10:  State which liabilities SOUTHWEST MARINE assigned to

14  MARINE GROUP.

15  INTERROGATORY NO. 11:  IDENTIFY all PERSONS with information PERTAINING TO

16  the liabilities which SOUTHWEST MARINE assigned to MARINE GROUP.

17  INTERROGATORY NO. 12:  IDENTIFY all DOCUMENTS PERTAINING TO the liabilities

18  SOUTHWEST MARINE assigned to MARINE GROUP.

19  INTERROGATORY NO. 13:  If YOU contend that Marine Group Boat Works holds

20  SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act

21  liability, state all facts that support that contention.

22  INTERROGATORY NO. 14:  If YOU contend that Marine Group Boat Works holds

23  SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act

24  liability, IDENTIFY all PERSONS with information that support that contention.

25  INTERROGATORY NO. 15:  If YOU contend that Marine Group Boat Works holds

26  SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act

27  liability, IDENTIFY all DOCUMENTS which support that contention.

28  ///

1   INTERROGATORY NO. 16:  State the name of each company to which YOU tendered this
2   CLAIM.
3   INTERROGATORY NO. 17:  State whether YOU have had communications with MARINE
4   GROUP PERTAINING TO this CLAIM.
5   INTERROGATORY NO. 18:  IDENTIFY all PERSONS with information PERTAINING TO
6   YOUR communications with the MARINE GROUP PERTAINING TO this CLAIM.
7   INTERROGATORY NO. 19:  IDENTIFY all DOCUMENTS PERTAINING TO
8   communications between YOU and the MARINE GROUP PERTAINING TO this CLAIM.
9   INTERROGATORY NO. 20:  State the name of the PERSONS who hold SOUTHWEST
10  MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.
11  INTERROGATORY NO. 21:  IDENTIFY all PERSONS with information PERTAINING TO
12  the PERSON who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore &
13  Harbor Workers' Compensation Act.
14  INTERROGATORY NO. 22:  IDENTIFY all DOCUMENTS PERTAINING TO the PERSON
15  who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor
16  Workers' Compensation Act.
17  INTERROGATORY NO. 23:  State whether YOU have entered into any agreements with
18  MARINE GROUP PERTAINING TO this CLAIM.
19  INTERROGATORY NO. 24:  IDENTIFY all PERSONS with knowledge of agreements
20  between YOU and MARINE GROUP PERTAINING TO this CLAIM.
21  INTERROGATORY NO. 25:  IDENTIFY all DOCUMENTS PERTAINING TO agreements
22  between YOU and MARINE GROUP PERTAINING TO this CLAIM.
23
24  Dated:  ____10/13/2020_____          BRAYTON❖PURCELL LLP
25
26                                          By: /s/ Geoff T. Sloniker
27                                          Geoff T. Sloniker
                                            Attorneys for Claimant
28

CLAIMANT'S INTERROGATORIES TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE; OWCP NO. 13-306597, OALJ NO.
2019-LHC-01475

BRAYTON◆PURCELL, LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

## PROOF OF SERVICE BY EMAIL

I am employed in the County of Marin, State of California.  I am over the age of 18 years and am not a party to the within action.  My business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California 94948-6169.

On October 13, 2020, I served the following document(s) described as:

CLAIMANT'S INTERROGATORIES TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE

on the interested party(ies) in this action as follows:

Frank Hugg - fhugg@hugglaw.onmicrosoft.com
David E. Edeli - Edeli.David.L@dol.gov
David Doeling - ddoeling@aleccialaw.com
Barry Ponticello - bponticello@eps-law.com

Executed October 13, 2020, at Santa Rosa, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Angela Porterfield

Mary C. Marion vs. BAE Systems San Diego Ship Repair, Inc., *et al.*
OALJ Case No. 2019-LHC-01495; OWCP #13-306597

G:\LHWCA\POS\Marion 121330.wpd
PROOF OF SERVICE BY EMAIL

# EXHIBIT G

ALAN R. BRAYTON, ESQ., S.B. #73685
GEOFF T. SLONIKER, ESQ., S.B. #268049
gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
Tel: 415-898-1555
Fax: 415-898-1247

Attorneys for Claimant MARY MARION

**UNITED STATES DEPARTMENT OF LABOR**

**OFFICE OF ADMINISTRATIVE LAW JUDGES**

|  |  |
|---|---|
| MARY MARION (surviving spouse of VERNON J. MARION), <br>     Claimant, <br><br> vs. <br><br> BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., and THE MARINE GROUP, <br>     Employers, <br><br> and <br><br> FAIRLEAD BOATWORKS and FRASER BOILER SERVICES/SIGNAL MUTUAL INDEMNITY ASS'N LTD., <br>     Employers and Carrier <br><br> and <br><br> DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, <br>     Party-In-Interest. | OALJ Case No.: 2019-LHC-01475 <br><br> OWCP Case No.: 13-306597 <br><br> CLAIMANT'S REQUESTS FOR ADMISSION TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE |

PROPOUNDING PARTY:    Claimant MARY MARION

RESPONDING PARTY:    Employer BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.

SET NO.:            ONE

    COMES NOW CLAIMANT MARY MARION ("CLAIMANT"), the surviving widow of Vernon Marion, the now deceased injured worker ("DECEDENT"), and pursuant to 29

rfa BAE.wpd

BRAYTON❖PURCELL LLP <br> ATTORNEYS AT LAW <br> 222 RUSH LANDING ROAD <br> P.O. BOX 6169 <br> NOVATO, CALIFORNIA 94948-6169 <br> 415-898-1555

1   C.F.R. §§ 18.50, 18.57, and 18.63, requests that BAE SYSTEMS SAN DIEGO SHIP REPAIR,

2   INC. respond to these REQUESTS FOR ADMISSION OF FACTS, SET ONE, propounded

3   herein as follows:

<u>DEFINITIONS</u>

5   1.   "BAE SYSTEMS," "YOU" or "YOUR" are intended to mean and to the BAE

6   Systems San Diego Ship Repair, Inc. and its subsidiaries, agents, officers, employees, board of

7   directors, and any and all predecessors-in-interest or alternate entities.

8   2.   "SOUTHWEST MARINE" is intended to mean Southwest Marine, Inc.

9   3.   "SOUTHWEST MARINE HOLDINGS" is intended to mean Southwest Marine

10   Holdings, Inc.

11   4.   "MARINE GROUP" is intended to mean Marine Group LLC and its

12   subsidiaries, agents, officers, employees, board of directors, and any and all

13   predecessors-in-interest or alternate entities.

14   5.   "DOCUMENT" and "DOCUMENT(S)" are intended to mean and to otherwise

15   encompass and include, at least but not limited to, any "writing," whether electronic, hard copy

16   or any other medium in which such writing is or may be preserved, any "recording,"

17   "photograph," "original" or "duplicate," as such terms are used and further defined under the

18   Federal Rules of Evidence, Rule 1001, et seq., and as further understood and defined by case

19   authority pertinent to such definitions.

20   6.   "CLAIM" refers to the above-entitled claim being brought by CLAIMANT for

21   which she is seeking death benefits under the provisions of 33 U.S.C. §§ 901, et seq., due to the

22   wrongful death of her husband, DECEDENT.

23   7.   "LAST RESPONSIBLE EMPLOYER" means that employer during whose

24   employment it occurred that the exposed individual, here DECEDENT, was last exposed to

25   injurious stimuli which caused or contributed to the death of such exposed individual and that

26   such employment was also prior to the date upon which the exposed individual became aware

27   of the fact that he was suffering from an occupational disease arising naturally out of his

28   ///

employment, as provided for in *Dillingham Ship Repair v. United States DOL*, 320 Fed. Appx. 585, 587 (9th Cir. 2009).

8.     "COMPENSATION" means compensation as defined under 33 U.S.C. § 902(12) and equals the applicable initial amount of weekly benefits to be paid is such benefits are awarded.

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1:  Admit that the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (the "Act"), applies to this CLAIM.

REQUEST FOR ADMISSION NO. 2:  Admit that this CLAIM was timely filed pursuant to 33 U.S.C. § 913.

REQUEST FOR ADMISSION NO. 3:  Admit that SOUTHWEST MARINE and DECEDENT had an employer-employee relationship between 1979 and 1993, or some portion thereof.

REQUEST FOR ADMISSION NO. 4:  Admit that there is no statutory authority that precludes an employer from assigning its liability under the Longshore & Harbor Workers' Compensation Act to another entity.

REQUEST FOR ADMISSION NO. 5:  Admit that there is no case law that precludes an employer from assigning its liability under the Longshore & Harbor Workers' Compensation Act to another entity.

REQUEST FOR ADMISSION NO. 6:  Admit that YOUR name prior to 2005 was Southwest Marine, Inc.

REQUEST FOR ADMISSION NO. 7:  Admit that YOU amended YOUR Articles of Incorporation in 2005 to change YOUR name from Southwest Marine, Inc., to BAE Systems San Diego Ship Repair.

REQUEST FOR ADMISSION NO. 8:  Admit that YOU assigned SOUTHWEST MARINE's liability under the Longshore & Harbor Workers' Compensation Act to MARINE GROUP.

REQUEST FOR ADMISSION NO. 9:  Admit that YOU assigned SOUTHWEST MARINE's liability under the Longshore & Harbor Workers' Compensation Act to MARINE GROUP in a document titled "Assignment and Assumption Agreement."

REQUEST FOR ADMISSION NO. 10:  Admit that YOU tendered this CLAIM to the insurance company(ies) who provided SOUTHWEST MARINE with Longshore & Harbor Workers' Compensation Act liability insurance.

REQUEST FOR ADMISSION NO. 11:  Admit that Arthur Engel was SOUTHWEST MARINE's president at the time that it was formed.

REQUEST FOR ADMISSION NO. 12:  Admit that Arthur Engel was one of SOUTHWEST MARINE's owners at the time that it was formed.

REQUEST FOR ADMISSION NO. 13:  Admit that Arthur Engel was SOUTHWEST MARINE's president in 1997.

REQUEST FOR ADMISSION NO. 14:  Admit that Arthur Engel was one of SOUTHWEST MARINE's owners in 1997.

REQUEST FOR ADMISSION NO. 15:  Admit that YOU hold SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

REQUEST FOR ADMISSION NO. 16:  Admit that MARINE GROUP holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

REQUEST FOR ADMISSION NO. 17:  Admit that the National Average Weekly Wage on November 10, 2016, of $718.24, is the based compensation from which to calculate death benefits here, so the initial weekly compensation rate for DECEDENT is $359.12.

REQUEST FOR ADMISSION NO. 18:  Admit that YOU are the LAST RESPONSIBLE EMPLOYER for this CLAIM.

REQUEST FOR ADMISSION NO. 19:  Admit that CLAIMANT is entitled to COMPENSATION for death benefits under 33 U.S.C. § 909.

REQUEST FOR ADMISSION NO. 20:  Admit that YOU are not entitled to a credit under 33 U.S.C. § 933(f).

REQUEST FOR ADMISSION NO. 21:  Admit that this CLAIM is not barred under 33 U.S..C. § 933(g).

REQUEST FOR ADMISSION NO. 22:  Admit that YOU are not entitled to a credit under 33 U.S.C. § 903(e).

1  <u>REQUEST FOR ADMISSION NO. 23:</u>  Admit that YOU are  not entitled to relief under 33

2  U.S.C. § 908(f).

3  <u>REQUEST FOR ADMISSION NO. 24:</u>  Admit that MARINE GROUP and Marine Group Boat

4  Works are different entities.

5  <u>REQUEST FOR ADMISSION NO. 25:</u>  Admit that Marine Group Boat Works does not hold

6  SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers'

7  Compensation Act.

8

9  Dated:  _____10/13/2020_____          BRAYTON❖PURCELL LLP

10

11                                                        By: /s/ Geoff T. Sloniker
                                                               Geoff T. Sloniker
12                                                         Attorneys for Claimant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMANT'S REQUESTS FOR ADMISSION TO  BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE; OWCP NO. 13-306597,
OALJ NO. 2019-LHC-01475

PROOF OF SERVICE BY EMAIL

1

2      I am employed in the County of Marin, State of California.  I am over the age of 18
years and am not a party to the within action.  My business address is 222 Rush Landing Road,
3      P.O. Box 6169, Novato, California 94948-6169.

4      On October 13, 2020, I served the following document(s) described as:

5      CLAIMANT'S REQUESTS FOR ADMISSION TO BAE SYSTEMS SAN DIEGO
        SHIP REPAIR, INC., SET ONE
6

7      on the interested party(ies) in this action as follows:

8      Frank Hugg - fhugg@hugglaw.onmicrosoft.com
        David E. Edeli - Edeli.David.L@dol.gov
        David Doeling - ddoeling@aleccialaw.com
9      Barry Ponticello - bponticello@eps-law.com

10

11      Executed October 13, 2020, at Santa Rosa, California.

12      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

13
                                         _Angela Porterfield_____
14                                         Angela Porterfield

15

16

17

18

19      Mary C. Marion vs. BAE Systems San Diego Ship Repair, Inc., et al.
        OALJ Case No. 2019-LHC-01495; OWCP #13-306597
20

21

22

23

24

25

26

27

28

BRAYTON◆PURCELL, LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

# EXHIBIT H

1
FRANK B. HUGG, ESQ. – No. 64911
5810 Telegraph Avenue
2
Oakland, California 94609-1522
Telephone:   (510) 595-9575
3
Facsimile:   (510) 595-9591

4
Attorney for Employers
BAE SYSTEMS SAN DIEGO
5
SHIP REPAIR, INC., and
THE MARINE GROUP
6

7

8
UNITED STATES DEPARTMENT OF LABOR

9
OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

13
MARY MARION                          )
                                     )   Case No.:     2019-LHC-01475
14
     (Vernon Marion –                )
       deceased employee )           )   OWCP No.:   13-306597
15
                                     )
     Claimant,                       )
16
                                     )
vs.                                  )
17
                                     )
BAE SYSTEMS SAN DIEGO SHIP           )   RESPONSE TO CLAIMANT'S
18
REPAIR, INC., and THE MARINE         )   REQUESTS FOR PRODUCTION TO
GROUP, *et al.*                      )   BAE SYSTEMS SAN DIEGO SHIP
19
                                     )   REPAIR, INC., SET ONE
     Respondents.                    )
20
                                     )

21
     PROPOUNDING PARTY:        MARY MARION, Claimant

22
     RESPONDING PARTY:         BAE  SYSTEMS  SAN  DIEGO  SHIP  REPAIR,
                               INC., and THE MARINE GROUP, Employers
23

24
     SET NO.:                  One.

25
**PRELIMINARY STATEMENT & OBJECTIONS**

26
     Respondents object to the Request for Production, Set One, upon the grounds

27
that  the  Requests  are  overly  broad,  ambiguous,  irrelevant,  and  not  reasonably

28
calculated  to  lead  to  the  discovery  of  admissible  evidence.   29 C.F.R. §18.51(a).   BAE

further objects upon the grounds that the requested documents are protected by attorney client and attorney work product privileges.   BAE further objects on the grounds that these records are of a proprietary confidential nature.

Respondents also object that corporate documents have zero relevance.   The same objection applies to corporates sales, changes of names, current officers and testimony of an officer in an unrelated civil action in Oregon.   Without waiver of these objections, BAE responds as follows:

REQUEST FOR PRODUCTION NO. 1:

YOUR current DOCUMENT retention policy.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Objection, not relevant.

REQUEST FOR PRODUCTION NO. 2:

All of YOUR prior DOCUMENT retention policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Not relevant.

REQUEST FOR PRODUCTION NO. 3:

YOUR Articles of Incorporation at the time of YOUR incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Not relevant

REQUEST FOR PRODUCTION NO. 4:

All amendments to YOUR Articles of Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Not relevant.

REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS PERTAINING TO the relationship between YOU and SOUTHWEST MARINE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

SOUTHWEST MARINE was a predecessor in interest to BAE.

REQUEST FOR PRODUCTION NO. 6:

ALL DOCUMENTS PERTAINING TO the sale of SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Not relevant.

REQUEST FOR PRODUCTION NO. 7:

ALL DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to SOUTHWEST MARINE HOLDINGS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Not relevant for BAE and its successors in interest, including but not limited to Puglia Engineering, who is believed to have all extant documents in regard to the alleged transfers of liability.

REQUEST FOR PRODUCTION NO. 8:

ALL DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE assigned to MARINE GROUP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Neither respondents TMG or BAE have such records.

REQUEST FOR PRODUCTION NO. 9:

ALL DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1997.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Nor relevant.


REQUEST FOR PRODUCTION NO. 10:

ALL DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January 1, 1998.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Not relevant.


REQUEST FOR PRODUCTION NO. 11:

The 1997 "Assignment and Assumption Agreement" that assigned liabilities to MARINE GROUP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Confidential and not relevant to any issue.


REQUEST FOR PRODUCTION NO. 12:

The 1997 "Stock Purchase Agreement" that governed SOUTHWEST MARINE HOLDING's purchase of SOUTHWEST MARINE's stock.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Confidential and not relevant to any issue.  Stock purchases again are not related in any fashion to the alleged agreement.

1  REQUEST FOR PRODUCTION NO. 13:

2      ALL DOCUMENTS, including the insurance policies, PERTAINING TO

3  SOUTHWEST MARINE's Longshore & Harbor Workers' Compensation Act liability

4  insurance for each year between 1979 and 1993.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

6      The policy is proprietary.

7

8  REQUEST FOR PRODUCTION NO. 14:

9      All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR

10  CORPORATE OFFICERS AT THE TIME OF your FORMATION.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

12      Not relevant.

13

14  REQUEST FOR PRODUCTION NO. 15:

15      All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR corporate

16  officers in 1997.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

18      Not relevant.

19

20  REQUEST FOR PRODUCTION NO. 16:

21      All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR current

22  corporate officers.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

24      Not relevant.

25

26  REQUEST FOR PRODUCTION NO. 17:

27      All DOCUMENTS PERTAINING TO any agreement between YOU and

28  MARINE GROUP PERTAINING TO this CLAIM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

There may be such oral agreements, but TMG and BAE have resolved the coverage issues between the corporations for the alleged losses herein.

REQUEST FOR PRODUCTION NO. 18:

A copy of the declaration of Arthur Engel, and all attached exhibits (Docket Number 301), filed on April 20, 2011, in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District of Oregon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Not relevant.

REQUEST FOR PRODUCTION NO. 19:

A copy of the declaration of Arthur Engel (Docket Number 369), and all attached exhibits, filed on July 11, 2011, in *Century Indemnity company v. The Marine Group, LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District of Oregon.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Not relevant.

Respectfully Submitted,

Dated: October 26, 2020

Frank B. Hugg, Attorney for
BAE SYSTEMS SAN DIEGO SHIP
REPAIR, INC., and THE MARINE
GROUP

<u>PROOF OF SERVICE BY MAIL</u>

I, the undersigned, declare:

That I am a citizen of the United States of America over the age of eighteen years, and not a party to the within action.  That my business address is Law Offices of Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated below I served a copy of the **RESPONSE TO CLAIMANT'S REQUESTS FOR PRODUCTION TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE** on the interested parties by enclosing a true copy thereof in a sealed envelope with fully prepaid first class postage affixed thereon by placing same in the United States Mail at Oakland, California, addressed as follows:

Geoff Sloniker, Esq.
Brayton Purcell LLP
gsloniker@braytonlaw.com

Michael K. Marmer, Esq.
Samuelsen, Gonzalez, Valenzuela & Brown, LLP
mmarmer@sgvblaw.com

David Doeling, Esq.
Aleccia & Mitani
ddoeling@aleccialaw.com

Barry W. Ponticello, Esq.
England, Ponticello & St. Clair
bponticello@eps-law.com

William N. Brooks, Esq.
Law Offices of William N. Brooks
wbrooks@wnblaw.com

David L. Edeli, Esq.
Office of the Solicitor
edeli.david.l@dol.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed in Oakland, California, on October 26, 2020.

_____
Susan Chow

# EXHIBIT I

1   FRANK B. HUGG, ESQ. – No. 64911
    5810 Telegraph Avenue
2   Oakland, California 94609-1522
    Telephone:   (510) 595-9575
3   Facsimile:   (510) 595-9591

4   Attorney for Employers
    BAE SYSTEMS SAN DIEGO
5   SHIP REPAIR, INC., and
    THE MARINE GROUP

6

7

8                UNITED STATES DEPARTMENT OF LABOR

9                OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

| | |
|---|---|
| 13  MARY MARION | Case No.:   2019-LHC-01475 |
| 14     (Vernon Marion –<br>      deceased employee ) | OWCP No.:  13-306597 |
| 15 | |
| 16     Claimant, | |
| 17  vs. | RESPONSE TO CLAIMANT'S<br>INTERROGATORIES TO |
| 18  BAE SYSTEMS SAN DIEGO SHIP<br>    REPAIR, INC., and THE MARINE | BAE SYSTEMS SAN DIEGO SHIP<br><u>REPAIR, INC., SET ONE</u> |
| 19  GROUP, *et al.* | |
| 20     Respondents. | |

21        PROPOUNDING PARTY:     MARY MARION, Claimant

22        RESPONDING PARTY:       ·  BAE SYSTEMS SAN DIEGO SHIP REPAIR,
23                                   INC., and THE MARINE GROUP, Employers

24        SET NO.:                One.

25               **<u>PRELIMINARY STATEMENT & OBJECTIONS</u>**

26       Respondents object to the Interrogatories, Set One, upon the grounds that the

27  Requests are overly broad, ambiguous, irrelevant, and not reasonably calculated to lead

28  to the discovery of admissible evidence. 29 C.F.R. §18.51(a).  BAE further objects upon

the grounds that the requested documents are protected by attorney client and attorney
work product privileges.  BAE further objects on the grounds that these records are of a
proprietary confidential nature.  Without waiver of these objections, BAE responds as
follows:

INTERROGATORY NO. 1:

    IDENTIFY all PERSONS who assisted with the preparation of YOUR responses
to CLAIMANT's Interrogatories.

**RESPONSE TO INTERROGATORY NO. 1:**

    Ellen Vinck.


INTERROGATORY NO. 2:

    IDENTIFY all PERSONS who assisted with the preparation of YOUR responses
to CLAIMANT's Request for Admission.

**RESPONSE TO INTERROGATORY NO. 2:**

    Ellen Vinck.


INTERROGATORY NO. 3:

    IDENTIFY all PERSONS who assisted with the preparation of YOUR responses
to CLAIMANT's Requests for Production of Documents.

**RESPONSE TO INTERROGATORY NO. 3:**

    Ellen Vinck.


INTERROGATORY NO. 4:

    State the year that YOU formed.

**RESPONSE TO INTERROGATORY NO. 4:**

    Irrelevant.

1    INTERROGATORY NO. 5:

2          State whether YOU amended YOUR Articles of Incorporation in 2005 to change

3    your name to BAE Systems San Diego Ship Repair, Inc., from Southwest Marine, Inc.

4    **RESPONSE TO INTERROGATORY NO. 5:**

5          Irrelevant.

6

7    INTERROGATORY NO. 6:

8          State whether SOUTHWEST MARINE sold its stock to SOUTHWEST MARINE

9    HOLDINGS in 1997.

10   **RESPONSE TO INTERROGATORY NO. 6:**

11         Not relevant.

12

13   INTERROGATORY NO. 7:

14         IDENTIFY all DOCUMENTS PERTAINING TO the sale of SOUTHWEST

15   MARINE's stock to SOUTHWEST MARINE HOLDINGS.

16   **RESPONSE TO INTERROGATORY NO. 7:**

17         Not relevant.

18

19   INTERROGATORY NO. 8:

20         IDENTIFY all PERSONS with information PERTAINING TO the sale of

21   SOUTHWEST MARINE's stock to SOUTHWEST MARINE HOLDINGS.

22   **RESPONSE TO INTERROGATORY NO. 8:**

23         Not relevant.

24

25   INTERROGATORY NO. 9:

26         IDENTIFY all DOCUMENTS PERTAINING TO communications BETWEEN

27   SOUTHWEST MARINE and SOUTHWEST MARINE HOLDINGS.

28

1  **RESPONSE TO INTERROGATORY NO. 9:**

2      Not relevant.

3

4  <u>INTERROGATORY NO. 10:</u>

5      State which liabilities SOUTHWEST MARINE assigned to MARINE GROUP.

6  **RESPONSE TO INTERROGATORY NO. 10:**

7      Not relevant.

8

9  <u>INTERROGATORY NO. 11:</u>

10     IDENTIFY all PERSONS with information PERTAINING TO the liabilities

11 which SOUTHWEST MARINE assigned to MARINE GROUP.

12 **RESPONSE TO INTERROGATORY NO. 11:**

13     Not relevant.

14

15 <u>INTERROGATORY NO. 12:</u>

16     IDENTIFY all DOCUMENTS PERTAINING TO the liabilities SOUTHWEST

17 MARINE assigned to MARINE GROUP.

18 **RESPONSE TO INTERROGATORY NO. 12:**

19     Not relevant.

20

21 <u>INTERROGATORY NO. 13:</u>

22     If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's

23 pre-1997 Longshore & Harbor Workers' Compensation Act liability, state all facts that

24 support that contention.

25 **RESPONSE TO INTERROGATORY NO. 13:**

26     Do not so contend.

27

28

**INTERROGATORY NO. 14:**

     If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act liability, IDENTIFY all PERSONS with information that support that contention.

**RESPONSE TO INTERROGATORY NO. 14:**

     Not relevant.


**INTERROGATORY NO. 15:**

     If YOU contend that Marine Group Boat Works holds SOUTHWEST MARINE's pre-1997 Longshore & Harbor Workers' Compensation Act liability, IDENTIFY all DOCUMENTS which support that contention.

**RESPONSE TO INTERROGATORY NO. 15:**

     Not relevant.

**INTERROGATORY NO. 16:**

     State the name of each company to which YOU tendered this CLAIM.

**RESPONSE TO INTERROGATORY NO. 16:**

     Not relevant.


**INTERROGATORY NO. 17:**

     State whether YOU have had communications with MARINE GROUP PERTAINING TO this CLAIM.

**RESPONSE TO INTERROGATORY NO. 17:**

     Not relevant.


**INTERROGATORY NO. 18:**

     IDENTIFY all PERSONS with information PERTAINING TO YOUR communications with the MARINE GROUP PERTAINING TO this CLAIM.

**RESPONSE TO INTERROGATORY NO. 18:**

    Not relevant.


<u>INTERROGATORY NO. 19:</u>

    IDENTIFY all DOCUMENTS PERTAINING TO communications between YOU and the MARINE GROUP PERTAINING TO this CLAIM.

**RESPONSE TO INTERROGATORY NO. 19:**

    Not relevant.


<u>INTERROGATORY NO. 20:</u>

    State the name of the PERSONS who hold SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

**RESPONSE TO INTERROGATORY NO. 20:**

    Not relevant.


<u>INTERROGATORY NO. 21:</u>

    IDENTIFY all PERSONS with information PERTAINING TO the PERSON who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor workers' Compensation Act.

**RESPONSE TO INTERROGATORY NO. 21:**

    Not relevant.


<u>INTERROGATORY NO. 22:</u>

    IDENTIFY all DOCUMENTS PERTAINING TO the PERSON who holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

1   **RESPONSE TO INTERROGATORY NO. 22:**

2        Not relevant.

3

4

5   INTERROGATORY NO. 23:

6        State whether YOU have entered into any agreements with MARINE GROUP
    PERTAINING TO this CLAIM.

7
    **RESPONSE TO INTERROGATORY NO. 23:**
8
         Not relevant.
9

10

11  INTERROGATORY NO. 24:

12       IDENTIFY all PERSONS with knowledge of agreements between YOU and

13  MARINE GROUP PERTAINING TO this CLAIM.

14  **RESPONSE TO INTERROGATORY NO. 24:**

15       Not relevant.

16

17

18  INTERROGATORY NO. 25:

19       IDENTIFY all DOCUMENTS PERTAINING TO agreements between YOU and

20  MARINE GROUP PERTAINING TO this CLAIM.

21  **RESPONSE TO INTERROGATORY NO. 25:**

22       Not relevant.

23
                                    Respectfully Submitted,
24

25  Dated: October 26, 2020

26                                  Frank B. Hugg, Attorney for
                                    BAE SYSTEMS SAN DIEGO SHIP
27                                  REPAIR, INC., and THE MARINE
                                    GROUP
28

PROOF OF SERVICE BY MAIL
================================================================

I, the undersigned, declare:

That I am a citizen of the United States of America over the age of eighteen years, and not a party to the within action.  That my business address is Law Offices of Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated below I served a copy of the **RESPONSE TO CLAIMANT'S INTERROGATORIES TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE** on the interested parties by enclosing a true copy thereof in a sealed envelope with fully prepaid first class postage affixed thereon by placing same in the United States Mail at Oakland, California, addressed as follows:

Geoff Sloniker, Esq.
Brayton Purcell LLP
gsloniker@braytonlaw.com

Michael K. Marmer, Esq.
Samuelsen, Gonzalez, Valenzuela & Brown, LLP
mmarmer@sgvblaw.com

David Doeling, Esq.
Aleccia & Mitani
ddoeling@aleccialaw.com

Barry W. Ponticello, Esq.
England, Ponticello & St. Clair
bponticello@eps-law.com

William N. Brooks, Esq.
Law Offices of William N. Brooks
wbrooks@wnblaw.com

David L. Edeli, Esq.
Office of the Solicitor
edeli.david.l@dol.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed in Oakland, California, on October 26, 2020.

_____
Susan Chow

# EXHIBIT J

1    FRANK B. HUGG, ESQ. – No. 64911
     5810 Telegraph Avenue
2    Oakland, California 94609-1522
     Telephone:   (510) 595-9575
3    Facsimile:   (510) 595-9591

4    Attorney for Employers
     BAE SYSTEMS SAN DIEGO
5    SHIP REPAIR, INC., and
     THE MARINE GROUP

6

7

8              UNITED STATES DEPARTMENT OF LABOR

9              OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

13   MARY MARION                    )     Case No.:      2019-LHC-01475
                                     )
14        (Vernon Marion –          )
           deceased employee )      )     OWCP No.:   13-306597
15                                   )
          Claimant,                  )
16                                   )
     vs.                             )
17                                   )     RESPONSE TO CLAIMANT'S
     BAE SYSTEMS SAN DIEGO SHIP      )     REQUESTS FOR ADMISSION TO
18   REPAIR, INC., and THE MARINE    )     BAE SYSTEMS SAN DIEGO SHIP
     GROUP, et al.                   )     REPAIR, INC., SET ONE
19                                   )
          Respondents.               )
20   _____)

21        PROPOUNDING PARTY:        MARY MARION, Claimant

22        RESPONDING PARTY:         BAE SYSTEMS SAN DIEGO SHIP REPAIR,
                                    INC., and THE MARINE GROUP, Employers
23

24        SET NO.:                  One.

25              **PRELIMINARY STATEMENT & OBJECTIONS**

26        Respondents object to the Request for Admissions, Set One, upon the grounds

27   that the Requests are overly broad, ambiguous, irrelevant, and not reasonably

28   calculated to lead to the discovery of admissible evidence.  29 C.F.R. §18.51(a).  BAE

1   and further The Marine Group objects upon the grounds that the requested documents

2   are protected by attorney client and attorney work product privileges.

3         Further, Respondents object on the grounds that the Request for Admissions, Set

4   Two, does not comply with the regulations of practice and procedure for discovery

5   before the Office of Administrative Law Judges.  29 C.F.R. § 18.63.  In effect Claimant

6   seeks to test the genuine nature of documents from the Office of the California of

7   Secretary of State.   Where such a challenge is so made then the RFA "must be

8   accompanied by a copy of the document," unless the document "is or has been

9   otherwise furnished or made available."  29 C.F.R. § 18.63(2).  Claimant has not and

10  does not produce any documents in these RFA, Set Two.

11        Contrary to the regulations, Claimant should have and must be required to

12  produce the documents upon which her RFA are hinged.  Again in effect, these RFA

13  defectively would require every respondent under the Act to agree with her or his RFA

14  without recourse to copies of same.  This objection would not be subject to challenge if

15  Claimant had served a copy, rather than seeking to compel Respondents to deny or

16  affirm unknown and unstated documents allegedly filed with the Secretary of State.

17        Likewise the identity of the corporate officers is not relevant to any issue with

18  respect to the payment of workers' compensation benefits herein.

19        TMG and BAE advise that TMG has no records in that after the sale, the all

20  records were left behind.  TMG has no way of providing any records of any kind.

21  REQUEST FOR ADMISSION NO. 1:

22        Admit that the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §

23  901, *et seq.* (the "Act"), applies to this CLAIM.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

25        Admitted.

26

27  REQUEST FOR ADMISSION NO. 2:

28        Admit that this CLAIM was timely filed pursuant to 33 U.S.C. § 913.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Admitted.

REQUEST FOR ADMISSION NO. 3:

Admit that SOUTHWEST MARINE and DECEDENT had an employer-employee relationship between 1979 and 1993, or some portion thereof.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Admitted.

REQUEST FOR ADMISSION NO. 4:

Admit that there is no statutory authority that precludes an employer from assigning its liability under the Longshore & Harbor Workers' Compensation Act to another entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied.

REQUEST FOR ADMISSION NO. 5:

Admit that there is no case law that precludes an employer from assigning its liability under the Longshore & Harbor Workers' Compensation Act to another entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

REQUEST FOR ADMISSION NO. 6:

Admit that YOUR name prior to 2005 was Southwest Marine, Inc.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

REQUEST FOR ADMISSION NO. 7:

Admit that YOU amended YOUR Articles of Incorporation in 2005 to change YOUR name from Southwest Marine, Inc., to BAE Systems San Diego Ship Repair.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.


REQUEST FOR ADMISSION NO. 8:

Admit that YOU assigned SOUTHWEST MARINE's liability under the Longshore & Harbor Workers' Compensation Act to MARINE GROUP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Denied.


REQUEST FOR ADMISSION NO. 9:

Admit that YOU assigned SOUTHWEST MARINE's liability under the Longshore & Harbor Workers' Compensation Act to MARINE GROUP in a document titled "Assignment and Assumption Agreement."

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.


REQUEST FOR ADMISSION NO. 10:

Admit that you tendered this CLAIM to the insurance company(ies) who provided SOUTHWEST MARINE with Longshore & Harbor Workers' Compensation Act liability insurance.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

REQUEST FOR ADMISSION NO. 11:

Admit that Arthur Engel was SOUTHWEST MARINE's president at the time that it was formed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**




REQUEST FOR ADMISSION NO. 12:

Admit that Arthur Engel was one of SOUTHWEST MARINE's owners at the time that it was formed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**




REQUEST FOR ADMISSION NO. 13:

Admit that Arthur Engel was SOUTHWEST MARINE's president in 1997.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**




REQUEST FOR ADMISSION NO. 14:

Admit that Arthur Engel was one of SOUTHWEST MARINE's owners in 1997.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**




REQUEST FOR ADMISSION NO. 15:

Admit that YOU hold SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

REQUEST FOR ADMISSION NO. 16:

Admit that MARINE GROUP holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

REQUEST FOR ADMISSION NO. 17:

Admit that the National Average Weekly Wage on November 10, 2016, of $718.24, is based compensation from which to calculate death benefits here, so the initial weekly compensation rate for DECEDENT is $359.12.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Admitted.

REQUEST FOR ADMISSION NO. 18:

Admit that YOU are the LAST RESPONSIBLE EMPLOYER for this CLAIM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Denied.

REQUEST FOR ADMISSION NO. 19:

Admit that CLAIMANT is entitled to COMPENSATION for death benefits under 33 U.S.C. § 909.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied.

REQUEST FOR ADMISSION NO. 20:

Admit that YOU are not entitled to a credit under 33 U.S.C. § 933(f).

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Denied.

REQUEST FOR ADMISSION NO. 21:

Admit that this CLAIM is not barred under 33 U.S.C. § 933(g).

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Denied.


REQUEST FOR ADMISSION NO. 22:

Admit that YOU are not entitled to a credit under 33 U.S.C. § 933(e).

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Denied.


REQUEST FOR ADMISSION NO. 23:

Admit that YOU are not entitled to a relief under 33 U.S.C. § 908(f).

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Denied.


REQUEST FOR ADMISSION NO. 24:

Admit that MARINE GROUP and Marine Group Boat Works are different entities.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Denied.


REQUEST FOR ADMISSION NO. 25:

Admit that Marine Group Boat Works does not hold SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Denied.

1

2

3    Dated: October 26, 2020

Respectfully Submitted,

Frank B. Hugg, Attorney for
BAE SYSTEMS SAN DIEGO SHIP
REPAIR, INC., and THE MARINE
GROUP

1

<u>PROOF OF SERVICE BY MAIL</u>

2

I, the undersigned, declare:

3

That I am a citizen of the United States of America over the age of eighteen

4

years, and not a party to the within action.  That my business address is Law Offices of

5

Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated

6

below I served a copy of the **RESPONSE TO CLAIMANT'S REQUESTS FOR**

7

**ADMISSION TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE** on

8

the interested parties by enclosing a true copy thereof in a sealed envelope with fully

9

prepaid first class postage affixed thereon by placing same in the United States Mail at

10

Oakland, California, addressed as follows:

11

Geoff Sloniker, Esq.
Brayton Purcell LLP

Michael K. Marmer, Esq.
Samuelsen, Gonzalez, Valenzuela & Brown, LLP

12

gsloniker@braytonlaw.com

mmarmer@sgvblaw.com

13

David Doeling, Esq.
Aleccia & Mitani

Barry W. Ponticello, Esq.
England, Ponticello & St. Clair

14

ddoeling@alecclaw.com

bponticello@eps-law.com

15

William N. Brooks, Esq.
Law Offices of William N. Brooks

David L. Edeli, Esq.
Office of the Solicitor

16

wbrooks@wnblaw.com

edeli.david.l@dol.gov

17

I declare under penalty of perjury under the laws of the State of California that

18

the foregoing is true and correct and that this declaration was executed in Oakland,

19

California, on October 26, 2020.

20

Susan Chow

21

22

23

24

25

26

27

28

# EXHIBIT K



# Brayton✦Purcell LLP

## TRIAL LAWYERS

ALAN R. BRAYTON
GILBERT L. PURCELL*

————————

DAVID R. DONADIO
JAMES P. NEVIN**

OF COUNSEL
JOHN P. MASON

*   ADMITTED IN CALIFORNIA
    AND WASHINGTON, D.C.

**  ADMITTED IN CALIFORNIA
    AND WASHINGTON

***ADMITTED IN CALIFORNIA
    AND UTAH

222 Rush Landing Road
P O Box 6169
Novato, California 94948-6169
Telephone: (415) 898-1555
Facsimile: (415) 898-1247

Los Angeles: (415) 898-1555
Salt Lake City: (801) 521-1712

Email: mail@braytonlaw.com
www.braytonlaw.com

GARY L. BRAYTON
ANDREW CHEW
KIMBERLY J. CHU**
HUGH C. COOK
ERICA L. FALKNER
JANINE M. FIEL-COSSE
RICHARD M. GRANT
CURT F. HENNECKE
BRANDY A. HILLMAN-
AZEVEDO

BRYN G. LETSCH
DANIEL J. MORSE***
STEVEN J. PATTI
BRENDA D. POSADA
CHRISTINE A. RENKEN
JASON M. ROSE
GEOFF T. SLONIKER
ERIC C. SOLOMON
NANCY T. WILLIAMS
GARY V. JUDD (1952-2019)

October 29, 2020

Frank B. Hugg, Esq.
Law Offices of Frank B. Hugg
5810 Telegraph Avenue
Oakland, California 94609

      Re:     **Mary Marion (Vernon Marion, deceased)**
                 OALJ No. 2019-LHC-01475
                 OWCP No. 13-306597
                 Your Client: BAE Systems San Diego Ship Repair, Inc.

Dear Mr. Hugg:

      Claimant Mary Marion ("Claimant") received the responses to the discovery she propounded on BAE Systems San Diego Ship Repair, Inc. ("BAE Systems"). Claimant has several general concerns with BAE Systems's responses and more specific concerns that are addressed in detail below.

      Regarding the general concerns, Claimant notes that both The Marine Group LLC ("The Marine Group") and BAE Systems are listed as the "Responding Parties" on BAE Systems's responses. Claimant notes that she propounded a separate set of discovery on The Marine Group. Please confirm that The Marine Group will be serving separate responses.

      Claimant also notes that BAE Systems asserts that many of the discovery requests seek documents and/or information that are not relevant. BAE Systems is not the arbiter of what is or is not relevant to this matter. Further, as indicated below, what Claimant seeks is relevant because BAE Systems and The Marine Group filed motions to dismiss alleging that neither holds Southwest Marine, Inc.'s ("Southwest Marine") liability under the Longshore & Harbor Workers' Compensation Act. Given that BAE Systems and The Marine Group raised that defense, Claimant is now entitled to discovery into the basis for that defense.

**Please supplement BAE Systems's responses by November 5, 2020**, to include the information that BAE Systems has inappropriately deemed to lack relevance.  **If Claimant does not receive those responses by November 5, 2020, Claimant will immediately file a motion to compel further responses.**

### BAE Systems's Responses to Claimant's Requests for Production

Claimant notes that BAE Systems has not indicated that it will produce any documents in response to Claimant's Requests for Production.  Claimant also notes that BAE Systems objects to these Requests on the basis of attorney-client privilege but has not produced a privilege log. Please either withdraw that objection or produce a privilege log.

Request for Production Numbers 1-2:  Claimant asked BAE Systems to provide a copy of its current and prior document retention policies.  BAE Systems objected that the document retention policies are "not relevant."  However, because BAE Systems has denied having possession of certain corporate records elsewhere in these responses, these document retention policies are relevant to determine whether its own policies would have required that such documents had been retained.  Please produce copies of the requested documenst.

Request for Production Numbers 3-4:  Claimant requested that BAE Systems provide its Articles of Incorporation and all amendments to its Articles of Incorporation.  BAE Systems objected that the Articles of Incorporation are "not relevant."  It is unclear what information is contained with the Articles of Incorporation.  To state that the documents lack relevance is premature.  Please produce the requested Articles of Incorporation.

Request for Production Number 6:  Claimant requested that BAE Systems provide copies of documents pertaining to the sale of Southwest Marine's, stock to Southwest Marine Holdings, Inc.  BAE Systems stated that the requested documents were "not relevant."  The January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, stated that such a transaction occurred.  That Order, based on information contained within Arthur Engel's declaration, stated that the Southwest Marine, sold its stock to Southwest Marine Holdings, Inc. in 1997.  The Order further states that a document titled "Stock Purchase Agreement" described liabilities that were transferred to The Marine Group.  Given that BAE Systems has conceded that Southwest Marine was it corporate predecessor (*See, Response to Request for Production Number 5*), Claimant expects that BAE Systems has documents related to that transaction.  Further, given that the Stock Purchase Agreement described liabilities that were passed to The Marine Group.  The nature of those liabilities is relevant to this claim.  Please produce the documents, including the Stock Purchase Agreement, related to the 1997 sale of Southwest Marine's, stock to Southwest Marine Holdings, Inc.

Request for Production Number 7:  Claimant requested that BAE Systems provide copies of documents pertaining to liabilities that Southwest Marine may have transferred to Southwest Marine Holdings, Inc.  BAE Systems responded with a reference to a company named Puglia Engineering, which is described as a successor-in-interest to BAE Systems.  BAE Systems states that this Request is "not relevant" as to BAE Systems or its successors-in-interest and claims that

it does not have any documents related to liabilities that it transferred.  It seems unlikely that BAE Systems would have discarded those documents, which could be used in the future to avoid being held responsible for liabilities that had been assigned to another entity.  Please provide the requested documents.

Request for Production Number 8:  Claimant requested that BAE Systems provide copies of documents pertaining to liabilities that Southwest Marine, assigned to The Marine Group.  BAE Systems responded that neither it nor The Marine Group have any such records.  It is unclear why BAE Systems is attempting to respond on behalf of The Marine Group.  Claimant points out that there are several documents that appear to identify the liabilities that Southwest Marine assigned to The Marine Group.  Those documents were mentioned in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC: the 1997 Stock Purchase Agreement and the 1997 Assignment and Assumption Agreement.  Further, Art Engel's multiple declarations in that matter seem to relate to the transactions between Southwest Marine, Southwest Marine Holdings, Inc., and The Marine Group.  Please produce the documents discussed above.

Request for Production Number 9-10:  Claimant requested that BAE Systems provide documents pertaining to its assets and liabilities on January 1, 1997, and January 1, 1998.  Given that Southwest Marine, is BAE Systems's predecessor, these documents are relevant to showing the assets and liabilities that Southwest Marine divested in 1997.  These documents are relevant to showing who holds Southwest Marine's liability under the Act.  Please produce the requested documents.

Request for Production Number 11:  Claimant requested that BAE Systems provide a copy of the 1997 Assignment and Assumption Agreement discussed in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC .  BAE Systems responded that the document is "confidential and not relevant to any issue."  The document might be confidential, but it is premature to state that the document is not relevant to any issue in this case.  Contrary to BAE Systems's objections, the Assignment and Assumption Agreement appears to contain information that will be very relevant to this claim.  That is because the Court in Century Indemnity, based on a declaration from Arthur Engel, stated that the Assignment and Assumption Agreement provided for the assignment of liabilities from Southwest Marine to The Marine Group.  Please produce the Assignment and Assumption Agreement.

Request for Production Number 12:  Claimant requested that BAE Systems provide a copy of the 1997 Stock Purchase Agreement discussed in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC .  BAE Systems responded that the document is "confidential and not relevant to any issue."  BAE Systems also asserted that "stock purchases again are not related in any fashion to the alleged agreement."  However, in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, the Court stated that the 1997 Stock Purchase Agreement described liabilities that were subsequently assigned to The Marine Group,

Inc.  The nature of those liabilities is relevant to this claim.  Please produce the requested document.

Request for Production Number 13:  Claimant requested policies for Southwest Marine's Longshore and Harbor Workers' Compensation Act liability insurance between 1979 and 1993.  BAE Systems responded that the policies are "proprietary."  These policies are relevant and there are no valid grounds upon which BAE Systems can base a refusal to produce the policies.  Those policies indicate which carrier or carriers will be responsible for paying death benefits in this matter.  Please produce the requested insurance policies.

Request for Production Numbers 14-16:  Claimant requested that BAE Systems produce documents identifying its corporate officers at the time of its formation, its corporate officers in 1997 and its current corporate officers.  BAE Systems responded that these documents are "not relevant."  Claimant is seeking to discover the names of individuals who are able to provide information regarding the 1997 transactions between Southwest Marine Southwest Marine Holdings, Inc., and The Marine Group.  The requested documents are relevant because they will allow Claimant to identify individuals with information related to that transaction.  Please produce the requested documents.

Request for Production Number 17:  Claimant requested copies of any agreements between The Marine Group and BAE Systems pertaining to this claim.  BAE Systems responded that "there may be such oral agreements, but [The Marine Group] and [BAE Systems] have resolved the coverage issues between the corporations for the alleged losses herein."  The response does not deny that there are documents related to that agreement.  This agreement is relevant to which entity is liable for death benefits in this case.  Please either affirmatively state that there are no documents responsive to this request or produce the requested documents.

Request for Production Number 18:  Claimant requested that BAE Systems produce a copy of the declaration of Arthur Engel (Docket Number 301) filed on April 20, 2011, in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC.  BAE Systems responded that this declaration is "not relevant."  Based on the January 27, 2011, Order, Mr. Engel's declaration contains information related to the corporate history of Southwest Marine and The Marine Group.  The declaration also appears to contain information regarding the disposition of Southwest Marine's liabilities.  Such information is relevant in this case.  Please produce the requested document and all attached exhibits.

Request for Production Number 19:  Claimant requested that BAE Systems produce a copy of the declaration of Arthur Engel (Docket Number 369) filed on July 11, 2011, in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC.  BAE Systems responded that this declaration is "not relevant."  Based on the January 27, 2011, Order, Mr. Engel's declaration contains information related to the corporate history of Southwest Marine and The Marine Group.  The declaration also appears to contain information regarding the disposition of Southwest Marine's liabilities.  Such information is relevant in this case.  Please produce the requested document and all attached exhibits.

## BAE Systems's Responses to Claimant's Interrogatories

BAE Systems's response to Claimant's Interrogatories are inadequate.  Rather than providing substantive responses, BAE Systems responded either "irrelevant" or "not relevant" to the Claimant's Interrogatories 4-12 and 14-25.  Apart from three responses identifying who provided assistance in responding to Claimant's discovery (numbers 1-3) and one response contradicting statements that BAE Systems made in its LS-207 (number 13), all of BAE Systems's responses merely assert that the requested information and documents are not relevant.  BAE Systems makes no effort to justify its refusal to respond to Claimant's Interrogatories.

Interrogatory Number 4:  Claimant asked BAE Systems to "[s]tate the year that YOU formed."[1]  Instead of stating that year, BAE Systems responded only "irrelevant."  However, this information is relevant as the year that BAE Systems was formed is the year that its corporate predecessor formed.  It appears that BAE Systems was formerly known as Southwest Marine, which was Decedent Vernon Marion's ("Decedent") last responsible employer.  Records from the California Secretary of State support this relationship.  Claimant is entitled to investigate whether BAE Systems is the entity who holds Southwest Marine's liability under the Act.  Please amend BAE Systems's responses to identify the year that its corporate predecessor formed.

Interrogatory Number 5:  Claimant asked BAE Systems to state whether it amended its Articles of Incorporation in 2005 to change its name from Southwest Marine to BAE Systems San Diego Ship Repair.  Instead of responding in the affirmative or negative, BAE Systems only stated "irrelevant."  As indicated above, the requested information is relevant because Southwest Marine was Decedent's last responsible employer.  Please respond either yes or no.

Interrogatory Numbers 6-8:  Claimant asked BAE Systems to state whether it sold its stock to Southwest Marine Holdings, Inc., in 1997.  Claimant also asked BAE Systems to identify documents related to that transaction and people with information related to that transaction.  As indicated in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, Southwest Marine sold its stock to Southwest Marine Holdings, Inc., in 1997.  Documents related to that transaction and the identities of people with knowledge of that transaction may be very relevant to support Claimant's assertion that The Marine Group holds Southwest Marine's pre-1997 liability under the Act.  Please state whether Southwest Marine, sold its stock to Southwest Marine Holdings, Inc., in 1997.  Please also identify documents related to that transaction and witnesses with information related to that transaction.

Interrogatory Number 9:  Claimant asked BAE Systems to identify documents related to communications between Southwest Marine and Southwest Marine Holdings, Inc.  For the same reason set forth above, communications between those two entities may support Claimant's

---

[1] In the Interrogatories, "YOU" and "YOUR" were defined to mean "BAE Systems San Diego Ship Repair and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities."

position that Southwest Marine transferred its pre-1997 liability under the Act to The Marine Group.  Please identify the requested documents.

Interrogatory Numbers 10-12:  Claimant asked BAE Systems to state which liabilities Southwest Marine assigned to The Marine Group.  BAE Systems responded with only "not relevant."  Claimant also asked BAE Systems to identify the documents related to those liabilities and to identify people with information regarding the assignment of liabilities.  BAE Systems responded "not relevant" to both of those requests.  It is difficult to understand how BAE Systems can believe that discovery requests to determine which of its liabilities Southwest Marine transferred to The Marine Group to be anything other than relevant to this action.  Southwest Marine was Decedent's last responsible employer.  As indicated in the January 27, 2012, Order in *Century Indemnity Company v. The Marine Group LLC, et al*, Case No. 3:08-CV-01375-AC, Southwest Marine assigned certain liabilities to The Marine Group.  Those liabilities were assigned in a document titled the "Assignment and Assumption Agreement," which provided for the assignment of liabilities described in the 1997 Stock Purchase Agreement.  These transactions were described in a declaration executed by Art Engel, who was Southwest Marine's president.  It is clear that liabilities were transferred to Southwest Marine.  Given that Southwest Marine was Decedent's last responsible employer, the nature of those liabilities are relevant to this claim.  Please identify which liabilities were transferred.  Please also identify documents pertaining to the liabilities that were transferred along with the names of people with information related to those liabilities.

Interrogatory Number 16:  Claimant asked BAE Systems to identify the company or companies to which it tendered this claim.  BAE Systems responded "not relevant."  Because certain parties just prior to the previously-scheduled formal hearing attempted to deny liability, this is very relevant.  This request gets to the insurance carrier who may hold the liability for Southwest Marine's, liability under the Act between 1979 and 1993.  Please identify the names of the company or companies to which this claim was tendered.

Interrogatory Numbers 17-19:  Claimant asked BAE Systems to provide information and documents related to communications between BAE Systems and The Marine Group pertaining to this claim.  Claimant also asks BAE Systems to identify individuals with information related to those communications.  BAE Systems responded that the requested information and documents are "not relevant."  Given that BAE Systems's predecessor appears to have been Southwest Marine, and given that Southwest Marine appears to have assigned its liabilities under the Act in 1997, this is highly relevant.  It appears that BAE Systems and The Marine Group are attempting to point at other entities in a clear attempt to avoid liability.  Also, as indicated by BAE Systems's response to Claimant's Request for Production Number 17, BAE Systems and The Marine Group have come to an agreement regarding coverage of this claim.  Such an agreement is relevant to his claim given that it appears related to which entity is responsible for paying death benefits in this matter.  Please produce the requested information, documents and names.

Interrogatory Numbers 20-22:  Claimant asked BAE Systems to provide information and documents pertaining to the entity that currently holds Southwest Marine's pre-1997 liability

under the Act.  Claimant also asked for the names of individuals who have information regarding which entity currently holds Southwest Marine's pre-1997 liability under the Act.  BAE Systems responded to each of these requests as "not relevant."  Because the parties have stipulated that Decedent was exposed to asbestos while working for Southwest Marine between 1979 and 1993, and because there is no evidence of subsequent maritime exposures, Southwest Marine is the last responsible employer.  It is difficult to imagine information that is more relevant to this matter.  That entity is the entity which is liable to Claimant for death benefits.  Please provide the requested information.

Interrogatory Numbers 23-25:  Claimant asked BAE Systems to state whether it had entered into any agreements with BAE Systems.  Claimant asked BAE Systems to identify documents related to any such agreements and to identify individuals with knowledge of those agreements.  BAE Systems responded "not relevant."  Whether there are any agreements between BAE Systems and The Marine Group is relevant.  If those agreements include issues related to coverage or indemnification, then those agreements are relevant to which of these entities is liable to Claimant for death benefits.  Please state whether there are any agreements and identify the documents and individuals as requested.

## BAE Systems's Responses to Claimant's Requests for Admission

Claimant notes that BAE Systems has failed to respond to Claimant's Requests for Admission Number 11-14.

Request for Admission Number 11:  Claimant asked BAE Systems to admit that Art Engel was Southwest Marine's president at the time that it was formed.  BAE Systems did not respond.  As BAE Systems conceded elsewhere in its responses to Claimant's discovery, Southwest Marine was the successor to BAE Systems.  Please admit or deny.

Request for Admission Number 12:  Claimant asked BAE Systems to admit that Art Engel was one of Southwest Marine's owners at the time that it was formed.  BAE Systems did not respond.  As BAE Systems conceded elsewhere in its responses to Claimant's discovery, Southwest Marine was the successor to BAE Systems.  Please admit or deny.

Request for Admission Number 13:  Claimant asked BAE Systems to admit that Art Engel was Southwest Marine's president in 1997.  BAE Systems did not respond.  As BAE Systems conceded elsewhere in its responses to Claimant's discovery, Southwest Marine was the successor to BAE Systems.  Please admit or deny.

Request for Admission Number 14:  Claimant asked BAE Systems to admit that Art
Engel was one of Southwest Marine's owners in 1997.  BAE Systems did not respond.  As BAE
Systems conceded elsewhere in its responses to Claimant's discovery, Southwest Marine was the
successor to BAE Systems.  Please admit or deny.

Please contact the undersigned if you have with any questions.

Very truly yours,

*Geoff T. Sloniker*

Geoff T. Sloniker

GTS:aap

# EXHIBIT L

**Geoff Sloniker - RE:  [External] Marion Discovery**

| | |
|---|---|
| **From:** | Geoff Sloniker |
| **To:** | 'Frank Hugg' |
| **Date:** | 11/30/2020 4:08 PM |
| **Subject:** | RE:  [External] Marion Discovery |

Please let me know by Friday at 12:00 p.m.  I need to file a motion to compel otherwise.

Thank you,

Geoff

> > > Frank Hugg <fhugg@hugglaw.onmicrosoft.com> 11/30/2020 4:02 PM > > >

I have requested. Hope to have responses by end of week.

**From:** Geoff Sloniker <GSloniker@braytonlaw.com>
**Sent:** Monday, November 30, 2020 3:35 PM
**To:** Frank Hugg <fhugg@hugglaw.onmicrosoft.com>
**Subject:** Marion Discovery

Frank:

Do you have any updates regarding whether you will be able to produce the documents that Claimant requested in her discovery?

Thanks,

Geoff

*Please be advised that Brayton\*Purcell is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents electronically. Receipt of and response to physical mailings may be delayed.  Be safe and thank you in advance for your cooperation.*

NOTICE: This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email.  If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal.  Sender reserves and asserts all rights to confidentiality, including all privileges that may apply.  Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email.  DO NOT review, copy, forward or rely on the email and its attachments in any way.

NOTICE: NO DUTIES ARE ASSUMED, INTENDED OR CREATED BY THIS COMMUNICATION.  If you have not executed a fee contract or an engagement letter, this firm does NOT represent you as your attorney.  You are encouraged to retain counsel of your choice if you desire to do so.  All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved.

# EXHIBIT B

UNITED STATES DEPARTMENT OF LABOR

OFFICE OF ADMINISTRATIVE LAW JUDGES

```
In the Matter of:              )
                               )
MARY MARION (Surviving Spouse)
of VERNON T. MARION),          )
     Claimant,                 )
                               )
versus                         )  Case No.: 2019-LHC-01475
                               )  OWCP No.: 13-306597
PACIFIC SHIP REPAIR, BAE       )
SYSTEMS SAN DIEGO SHIP         )
REPAIR, INC., and MARINE       )
GROUP,                         )
     Employers,                )
                               )
and                            )
                               )
FAIRLEAD BOATWORKS and FRASER)
BOILER SERVICES, SIGNAL        )
MUTUAL INDEMNITY ASSOCIATION,)
LTD.,                          )
     Employers and Carrier     )
                               )
and                            )
                               )
DIRECTOR, OFFICE OF WORKERS'   )
COMPENSATION PROGRAMS,         )
                               )
     Party-in-Interest.        )
```

Tuesday,
March 16, 2021

Video Conference
Microsoft Teams Meeting

The above-entitled matter came on for hearing,

pursuant to notice, at 1:00 o'clock p.m.


BEFORE:        THE HONORABLE EVAN H. NORDBY
                    Administrative Law Judge

**APPEARANCES:**

On behalf of the Claimant
GEOFF SLONIKER, ESQ.
BRAYTON PURCELL, LLP
222 Rush Landing Road
Novato, California  94948-8169
PH:  (415) 898-1555
FX:  (415) 898-1247

On behalf of FAIRLEAD BOATWORKS & FRASER BOILER
DAVID DOELING, ESQ.
Aleccia & Mitani
One World Trade Center, Suite 1840
Long Beach, California  90831
PH:  (562) 491-1816
FX:  (562) 491-5326

On behalf of BAE SYSTEMS SAN DIEGO SHIP REPAIR INC.
FRANK B. HUGG, ESQ.
5810 Telegraph Avenue
Oakland, California  94609
PH:  (510) 595-5975
FX:  (510) 595-9591

On behalf of PACIFIC SHIP REPAIR
BARRY PONTICELLO, ESQ.
England, Ponticello & St. Clair
701 B Street, Suite 1790
San Diego, California  92101
PH:  (619) 255-6450
FX:  (619) 255-8981

On behalf of OFFICE OF THE SOLICITOR
DAVID EDELI, Esq.
Office of the Solicitor
U.S. Department of Labor
90 7th Street, Suite 3-700
San Francisco, California  94103
PH:  (415) 625-7753

I N D E X

PROCEEDING:                                          PAGE:

Tuesday, March 16, 2021                                 4

WITNESSES:              DIRECT   CROSS   REDIRECT   RECROSS JUDGE

EXHIBITS:              IDENTIFIED    RECEIVED    REJECTED   W/D

CLAIMANT
 (None marked nor received.)


RESPONDENTS
 (None marked nor received.)

ALJ
 (None marked nor received.)

```
 1                    P R O C E E D I N G S

 2                                    (1:01 o'clock p.m.)

 3          JUDGE NORDBY:  Good afternoon, everyone.  We're on

 4   the record for this conference call regarding discovery

 5   disputes in Vernon Marion, 2019-LHC-01475.  Would Counsel for

 6   the Claimant please enter your appearance?

 7          MR. SLONIKER:  Good afternoon, Your Honor.  This is

 8   Geoff Sloniker from Brayton Purcell on behalf of the

 9   Claimant.  And I believe Kimberly Chu, from my office, is

10   also calling in today to listen, but won't be participating.

11          JUDGE NORDBY:  All right.  Good afternoon, Mr.

12   Sloniker.  Do I have Mr. Hugg for BAE and The Marine Group?

13   Do I have any Counsel on behalf of BAE Systems San Diego and

14   The Marine Group?

15          Who just joined us?

16          MR. EDELI:  This is David Edeli with the

17   Solicitor's office.

18          JUDGE NORDBY:  All right.  Good afternoon, Mr.

19   Edeli on behalf of the Director.

20          Do I have anyone on behalf of BAE Systems San Diego

21   and The Marine Group?  Okay.  Do I have Counsel for Fairlead

22   Boatworks and Signal?

23          MR. DOELING:  This is Dave Doeling.

24          JUDGE NORDBY:  All right.  Good afternoon, Mr.

25   Doeling.
```

1            MR. DOELING:  I also represent Fraser Boiler

2    Services and Signal.

3            JUDGE NORDBY:  Okay.  All right.  Thank you.

4            My law clerk is trying to contact Mr. Hugg's

5    office.  Who just joined us?

6            MR. HUGG:  Frank Hugg, Your Honor.  Good morning.

7            JUDGE NORDBY:  All right.  We were just reaching

8    out to you.  And Mr. Hugg, would you enter your appearance on

9    behalf of your clients?

10            MR. HUGG:  Yes.  BAE Systems San Diego Ship Repair.

11            JUDGE NORDBY:  I also have you for The Marine

12    Group.  Is that correct?

13            MR. HUGG:  No. That is incorrect.  I don't -- do

14    not officially represent The Marine Group.

15            JUDGE NORDBY:  Okay.  Hmm.  Give me just a moment.

16     Is Mr. Ponticello there for Pacific Ship?

17            MR. PONTICELLO:  Yes, Your Honor.  Good afternoon.

18            JUDGE NORDBY:  Ah, good afternoon.  Is there anyone

19    else on that I have not called on yet?

20            Okay.  Well, I guess no one has entered an

21    appearance on behalf of The Marine Group in this case.  I'll

22    just file that away and keep that in mind.

23            There are several pending discovery motions.  To

24    start with, Mr. Sloniker, you filed a Motion to Compel

25    Supplementary Document Production and Interrogatory Answers

1    back on December 11th.  There were also several depositions

2    scheduled that the parties apparently agreed to postpone

3    while I resolve the issue of whether or not they were, I

4    guess, within the scope of discovery.

5        I've reviewed Claimant's filings as well as

6    Respondents' filings in opposition.  Mr. Hugg -- excuse me,

7    who just joined us?

8        MS. CHU:  Hi.  Sorry.  This is Kimberly Chu from

9    Brayton Purcell.  I'm just listening in.  I was on mute.  I

10   apologize.

11       JUDGE NORDBY:  Okay.  All right.  Thanks.

12       Mr. Hugg, I noticed the objections that were filed

13   were that the -- certain of the discovery was not relevant.

14   You know, relevance is not a proper objection to discovery.

15   Can you explain -- I'll give you a chance to explain a little

16   more why you think you should not have to respond to that

17   discovery.

18       MR. HUGG:  The discovery all focuses on, as I

19   recall, focuses on the status of the persons involved or

20   persons working for The Marine Group.  The position of BAE

21   Systems on the carrier Signal Mutual is that the TMG -- The

22   Marine Group is not a proper party to this proceeding.  It

23   never had a Workers' Compensation Claim.  It has no employees

24   and is otherwise not subject to jurisdiction of the Act.

25   There is -- and that's the core of the argument.  (Inaudible)

1   the same thing that I just described.

2            JUDGE NORDBY:  Okay.

3            MR. HUGG:  The --

4            JUDGE NORDBY:  Well -- sorry, please go ahead.  If

5   you could sit a little closer to your phone, too.  Your

6   speaker phone is cutting in and out a little bit.

7            MR. HUGG:  Thank you.  I will.  And that's the

8   position with regard to the discovery, but (inaudible).

9            JUDGE NORDBY:  Mr. Hugg, is it possible for you to

10   take your phone off speaker phone?  It is still cutting in

11   and out quite a bit.  I think we may have missed --

12            MR. HUGG:  Is this better, Your Honor?

13            JUDGE NORDBY:  That's much better.  Thank you.

14            MR. HUGG:  Yeah.

15            JUDGE NORDBY:  Actually, I'm not hearing you right

16   now.

17            MR. HUGG:  I haven't said anything.

18            JUDGE NORDBY:  Oh, okay.  Well, I -- in reviewing

19   the filings, and listening to your position, even if The

20   Marine Group was not a party to the case at all, you're still

21   subject to third party discovery by -- I guess it would be by

22   subpoena rather than by interrogatories or request for

23   production -- well, they could still be subpoenaed to a

24   deposition.  But I -- I don't think -- at this point, I don't

25   think that -- I think The Marine Group and BAE Systems San

1    Diego need to respond to the discovery.

2         I -- I think in -- I've also reviewed the Motion to

3    Dismiss and the Claimant's filings with respect to that.  And

4    I don't -- well, I'm not going to grant the Motion to

5    Dismiss.  I'm going to deny it.  My concern is relevance

6    isn't a proper objection.  There's a Request for Admissions

7    that were apparently not responded to at all regarding a Mr.

8    Engel.  And the four employees -- four individuals, I should

9    say, Stanton (ph), Kake (ph), Machato (ph) and Vink (ph), you

10   know, if they have factual information, they can be deposed

11   and questioned about the facts that they know, you know,

12   whether or not they -- their employer may have a legal

13   position, they're still required to respond and to answer

14   questions about the facts that they know.  And those facts

15   may well -- Mr. Hugg, may well prove your client's

16   position --

17        MR. HUGG:  Well --

18        JUDGE NORDBY:  -- but we don't know what the facts

19   are yet.

20        MR. HUGG:  -- the -- the facts are, based on the

21   lack of employment by The Marine Group, of not only this

22   Claimant, an alleged Claimant, but any other person has never

23   been searched against TMG.  This -- this ulterior purpose is

24   to try to force some type of settlement against a person

25   whose company is not a party and never will be a party to

1  anything under the Longshore Act.  They've never had a claim.

2   They don't have -- they don't have any -- pay taxes.  They

3  don't have any filings whatsoever with the Department of

4  Labor, or any other Workers' Compensation business.  And the

5  -- that keeps being repeated.  But if they -- they're total

6  strangers to the litigation.  Total strangers to any

7  liability.  And for that reason alone, I think the -- you

8  know, the discovery directed towards those persons who are

9  all employees of BAE Systems is irrelevant.  It should not

10  even proceed.  And the -- the -- TMG has asserted that all

11  along.  And that there's nothing relevant or even admissible,

12  if you will, of what these persons might say about the

13  purchase and sale of -- of a company.

14          JUDGE NORDBY:  And as I recall, there's also

15  document production requests that I'm going to order your

16  client to produce, and that, I think rather than all of us

17  talking about what the documents there don't say, I think if

18  you put the documents in the hands of everyone who can look

19  at them, and then they say what they -- they will say what

20  they say or don't say.  And that's how I think the -- we

21  should proceed here.  I mean, The Marine Group is also party

22  in -- in multiple other cases before me.  This is the first

23  one where it had raised that they, actually, were never a

24  Longshore employer, which --

25          MR. HUGG:  They're a holding company.  They didn't

1    pay any taxes.  They didn't have any Workers' Compensation,

2    so -- but I understand the Court's ruling.

3            Could I have one moment to grab a document?

4            JUDGE NORDBY:  You may.

5            MR. HUGG:  Thank you.  Thank you, Your Honor.

6            JUDGE NORDBY:  All right.  We're opening up a -- I

7    believe -- I know I reached -- granted a continuance.  I

8    looked in the -- what I want to do is actually grant that

9    continuance, continue that further because this is

10   substantial additional discovery that I'm ordering.  So, I'm

11   going to push all of the deadlines in that.  January 22nd,

12   2021, continuance order, I'll push all those out,

13   approximately 30 days.  I'm going to open my calendar and

14   then read off some new deadlines.  And then, what we'll do is

15   issue a -- the transcript of this call will be my Order

16   Compelling the Discovery, granting the Claimant's December

17   11th Motion to Compel Additional Discovery and Answers to the

18   Interrogatories, Supplemental Production of Documents.  I am

19   not going to find -- admitted the four admissions regarding

20   Arthur Engel, but I will order the Respondent to respond to

21   those. I think it's more important to know the truth of the

22   matter rather than a legal matter to deem them admitted if,

23   in fact, Mr. Engel was not in any of those alleged positions.

24    And I'm going to order the Supplemental Production of

25   Interrogatory Answers, Documents, and the Answers to Engel's

1    Admissions one through 14 be done by April 19th -- April

2    19th, 2021, a little more than 30 days from now.

3             I'll also order that Stanton, Kake, Machato, and

4    Vink be produced for depositions no later than April 19th.

5             MR. HUGG:  Your Honor --

6             JUDGE NORDBY:  I trust --

7             MR. HUGG:  I'm sorry.  Go ahead.

8             JUDGE NORDBY:  I trust that the parties can work

9    that out, mutually acceptable dates for those.

10             Mr. Hugg, you had a question.

11             MR. HUGG:  I think that's not enough time because

12    if we're going forward, then there will be discovery and

13    related Section 33, which has yet to be discussed.  And the

14    spouse and two adult children need to be deposed if we're

15    still in a litigation.

16             JUDGE NORDBY:  Well, that's a good -- that is a

17    good point.  That issue hadn't been raised yet in this case,

18    at least.  Mr. Sloniker, I imagine you would need to consult

19    with your clients about their schedule, but I suggest you do

20    that and talk with Mr. Hugg and schedule those.

21             MR. HUGG:  I would suggest at least 60 days for the

22    continuance.

23             JUDGE NORDBY:  Mr. Sloniker, what do you think of

24    60 days?

25             MR. SLONIKER:  Sixty days, I think, is probably

1  better, Your Honor, just given -- given the volume of the

2  material I expect to be produced.

3        JUDGE NORDBY:  Okay.  All right.  So, I had said

4  April 19th a minute ago on the -- related to those -- those

5  outstanding written discovery.  Is that a reasonable amount

6  of time just to produce that quantity of information related

7  to the deposition -- move to compel -- the subject of the

8  Motion to Compel on December 11th?  Mr. Hugg?

9        MR. HUGG:  I suppose so, 60 days, just for the

10  documents?

11        JUDGE NORDBY:  Right.  Just for those -- just for

12  those documents.  And then we'll worry about the depositions

13  as well as the depositions that you want to take.  We'll push

14  the whole deadline out, but -- but as far as producing what

15  was -- the subject of the December 11th Motion to Compel.

16        MR. HUGG:  So, you're suggesting what date -- what

17  new date, Your Honor?

18        JUDGE NORDBY:  April 19th, about 30 days from now.

19   We're staging things a little bit.

20        MR. HUGG:  And pardon me, since we don't -- the

21  transcript will be your order, I'd like to make sure that I

22  have your notes, or your directions in regard to the

23  depositions.

24        JUDGE NORDBY:  Okay.  So, the depositions of

25  Stanton, Kake, Machato, and Vink, I'm going to order that

1    they be -- allow to be deposed on a date mutually agreed by

2    Counsel, or Claimant and Respondent.  That -- those

3    depositions can be held between now and what we'll set as the

4    new discovery cut off of say May 28th, approximately 60 days,

5    that looks about it.

6            MR. HUGG:  Completion of depositions by May 28th.

7            JUDGE NORDBY:  May 28th, correct.  And same for the

8    depositions that you're proposing to take, Mr. Hugg.

9            MR. HUGG:  Understood.

10           JUDGE NORDBY:  The new discovery cut off will be

11   May 28th for completion of all discovery, and with that April

12   19th deadline for responses to the December 11th Motion to

13   Compel discovery.

14           MR. HUGG:  Thank you.

15           JUDGE NORDBY:  Also, denying -- for the record,

16   denying the Motions to Dismiss of BAE Systems San Diego, and

17   The Marine Group because there appears to be disputed facts

18   and ongoing discovery related to that status.  And of course,

19   that sort of denial is without prejudice.

20           As far as additional deadlines, I will issue a new

21   Order with the new deadlines but anticipate approximately the

22   same period of time between the new discovery deadline and

23   then the exchange of exhibits and briefing deadline.  We'll

24   push that out about -- approximately the same amount of time.

25           MR. HUGG:  Your Honor, if I may comment on the --

1    and it may be outside of the record or that written motion,

2    after further review of this, it seems to me that it may be a

3    case of not appropriate for on the record.  When these

4    Section 22 cases come up, the credibility of the person who

5    signs the releases, and the reasons why are -- have been --

6    other judges held to be relevant.  And in this instance,

7    perhaps achieve better summary of the facts, and credibility

8    of all the witnesses becomes important.  So, I would suggest

9    -- ask the Court about consideration of making it an

10   electronic hearing, but not -- not on the record.

11           JUDGE NORDBY:  I mean, you're correct about the

12   assertions, you know, the -- related to credibility but what

13   I would like you all to do is talk about that and maybe --

14   may well -- due to the case, if Mr. Sloniker agrees, and you

15   all can stipulate to a live video hearing and propose dates

16   for that.  Or if it's in dispute, to -- to -- that this no

17   longer be an on-the-record hearing, then you can brief that

18   also.  But I mean, I understand what you're saying, but --

19           MR. HUGG:  So, if we -- if we agree to it, it would

20   be -- there would be no need for further Motions.

21           JUDGE NORDBY:  If you agree to it, you can file a

22   Stipulated -- right, a Stipulated Request for a Live Video

23   Hearing, and propose some dates and we pick one of them.

24           MR. HUGG:  Geoff, I'll call you as soon as this is

25   over.

1          MR. SLONIKER:  Your Honor, what I just want to make

2   sure that there were -- in addition to stipulations proceed

3   by written -- by submission on the record, we'd also reached

4   several factual stipulations and those, I believe, were

5   entered -- provided to the Court prior to the initial hearing

6   date of September 21st, 2020.  And then those were entered in

7   an Order that the Court set on the issue.  Claimant is not

8   going to stipulate to withdraw from those stipulations.  I'm

9   not sure if that's what Mr. Hugg was entertaining or

10  suggesting.  I just wanted to make that clear.

11         JUDGE NORDBY:  Well, I didn't understand Mr. Hugg's

12  request to mean that.  But Mr. Hugg, do you want to clarify?

13         MR. HUGG:  Well, I think your clarification came on

14  the 10 days before so the unusual setting.  I learned about

15  these new witnesses that would be relevant to Section 22.

16  So, even though that was signed, I would think that the --

17  those disclosures change the ambit of the -- the status

18  report, which could be amended to proceed with witnesses.

19         JUDGE NORDBY:  Okay.  So, it does sound like the

20  two of you have some factual disputes here to discuss.  So, I

21  encourage you to do that.

22         MR. SLONIKER:  Your Honor, I just wanted to -- to

23  point out, because you mentioned that this transcript is

24  going to be ordered to correct something Mr. Hugg said

25  earlier.  The Marine Group is a party to this case.  There --

1    initially, William Brooks entered his appearance back in

2    September of 2019.  And then Mr. Hugg submitted a Notice of

3    Representation for The Marine Group last August.

4              JUDGE NORDBY:  I see that --

5              MR. SLONIKER:  I -- I --

6              MR. HUGG:  All of my appearances should -- should

7    be deemed special appearances until these preliminary issues

8    are resolved.

9              JUDGE NORDBY:  Well, I think the question of -- I

10   -- I -- the -- they are clearly a party to this case.  Whether

11   or not they should or continue to be a party is a subject for

12   litigation, and you all are actively litigating.  Mr. Hugg,

13   you -- you have entered an appearance on their behalf.  And

14   you're on the record.  They are a party to the case.  And I

15   understood you describing them as being a "stranger" as a

16   media colloquial use of the term, but not literally that they

17   were not a party properly joined.  Because I'm looking at the

18   record, and they are a party so.  So, I think that's probably

19   all on that front.

20             Any other questions, things to clarify?  Mr.

21   Sloniker?

22             MR. SLONIKER:  No, Your Honor.  I think as long as

23   we get those -- the supplemental -- or the -- the discovery

24   responses prior to the depositions of -- the four depositions

25   that we noted, I think that we should be good.

1          JUDGE NORDBY:  Mr. Hugg, anything?

2          MR. HUGG:  No, Your Honor.

3          JUDGE NORDBY:  Okay.  Anyone else on the call, any

4     questions?

5          MR. PONTICELLO:  Yes, Your Honor.  Barry Ponticello

6     for Pacific Ships.  You will recall that we had been

7     dismissed and then on recall, we were somehow added in.  And

8     I have two issues.  One is, the original Order you -- you had

9     didn't include the service on us and everything.  And I had

10    written to -- to your office and I had just asked that, that

11    be part of the Order that all -- all prior documents be

12    served on us because I had been getting them in drips and

13    drafts of e-mails.  And I'm not sure I have everything.

14    That's number one, if that could be part of the Order that

15    you had ordered last time, but I don't think it made it to

16    the final.

17          And the second is, we -- we plan to renew our

18    dismissal.  Is there going to be a time established for --

19    for Motions once the discovery has been completed?

20          JUDGE NORDBY:  Well, the discovery -- currently,

21    the case is set for submission on the record with exhibits

22    exchanged deadline, objections, open briefs, and response

23    briefs.  So, I'm not planning on setting any other specific

24    deadlines.  I -- I'm looking back through the record here.

25    Just give me a minute.

1          MR. PONTICELLO:  Sure.  As I understood it, when --

2     when you'd added us back in, you said our Motion to Dismiss

3     was without prejudice.  And I -- I still don't see a reason

4     why we're in.  I understand that discovery needs to happen.

5     And then at the conclusion of that, if things didn't change,

6     I'd planned on renewing it for our prior conference.

7          JUDGE NORDBY:  Right.  All right.  I'm not going to

8     set any specific deadline.  But I mean, the distinction

9     between filing a Motion to Dismiss because you're too far

10    back in line versus filing an Opening Brief, I mean, it's one

11    thing -- if you're filing an Opening Brief that says, we are

12    not the last employer, and that's a very simple brief, it's

13    about as simple as a Motion to Dismiss, we're not the last

14    responsible employer.  Now if this goes ahead to a live

15    hearing, and it's clear that you are far enough back in line

16    to not be a responsible employer, then it makes more sense

17    for you to file a Motion to not have to show up at the live

18    hearing.  Does that make sense?

19         MR. PONTICELLO:  It does.  It does.  So, I'll -- if

20    -- if -- I'll note -- I'll note that if it -- if it's

21    submitted on the record, we'll do it via Motion, but if it's

22    a hearing, we'll have the opportunity to do a -- a Motion in

23    that regard.

24         JUDGE NORDBY:  You can file a Motion, but it will

25    be a different Motion.  Right?

1           MR. PONTICELLO:  Yeah.

2           JUDGE NORDBY:  Okay.  And I -- all of the parties,

3    if you have not -- Mr. Ponticello's point about not having a

4    complete record is very well taken.  And if you would all be

5    sure to serve on Mr. Ponticello anything that you filed in

6    the case that was not served on him and his client -- on

7    behalf of his client, essentially, it's that chief problem is

8    there's a gap in time where they were dismissed and then they

9    were brought back, and so, then, those documents that weren't

10   served during that time most likely, and it's possible that

11   they're not being served since they were rejoined in the case

12   late last year.  So, if all parties would review your -- your

13   filings in the case and make sure that they were served on

14   Mr. Ponticello on behalf of Pacific Ship.

15          All right.  Thank you all very much for being

16   available.

17          MR. HUGG:  Judge, may I interrupt?

18          JUDGE NORDBY:  Yes.

19          MR. HUGG:  So, you mentioned that -- that The

20   Marine Group is a party.  And with all due respect, the --

21   the -- as I think it may be this case, or it may be another

22   one, but the underlying basis is that someone filed a form

23   from -- for The Marine Group when they were in no position to

24   do so.  And I've asked that you -- if I file some

25   supplemental points, the Court may reconsider their status in

1   this case, but it would only be if, like it's fine if -- what

2   I think happened is, the Department of Labor picked up and

3   noticed a letter from The Marine Group, and said they were a

4   party.  But if I find it more convincing, then I'll -- or not

5   so convincing, then I'll not pursue it, but I want to make

6   sure that our position on that is clear.

7          JUDGE NORDBY:  Okay.

8          MR. HUGG:  Thank you.

9          JUDGE NORDBY:  All right.

10         MR. SLONIKER:  Your Honor, this is Counsel for the

11   Claimant, just -- just to touch on what -- what Mr. Hugg

12   said, and this is our Motion to Compel and attached to my

13   declarations, it's a bit concerning that Mr. Hugg is saying

14   that there's no liability for The Marine Group.  There was a

15   different case that's the Brown case where Mr. Hugg

16   represented to the Claims Examiner that work performed for

17   BAE Systems, which used to be (inaudible), but work performed

18   for BAE Systems prior to November of '97 is covered under The

19   Marine Group.  We don't have to address it right now, but --

20         JUDGE NORDBY:  Right.  I --

21         MR. SLONIKER:  It's a bit of a moving --

22         JUDGE NORDBY:  I'm not -- I understand your

23   concern.  I also have Brown, so if it's Geraldine Brown, or

24   Mr. Wallace's Counsel, is that --

25         MR. SLONIKER:  Yes.

1          JUDGE NORDBY:  -- what you're referring to?

2          MR. HUGG:  There's a --

3          MR. SLONIKER:  Yes, Your Honor.

4          JUDGE NORDBY:  So, you know, I'm -- I'm not in the

5   position here now to make any rulings on -- without any

6   evidence in front of me on the issue.  But they all still

7   appear to be disputed.  And I have multiple cases where The

8   Marine Group is a party.  So, in acknowledging, Mr. Sloniker,

9   in acknowledging Mr. Hugg's point, it is -- I don't think it

10   surprises anyone that in -- in Longshore, nothing ever is

11   really final so it seems.  So, if -- if there's more evidence

12   out there that -- you know, that the Courts have told us, and

13   the Act says that getting it right is more important than

14   getting it done.  And it's kind of the opposite perspective

15   from the other Courts.  So, I'll shall -- I will look at

16   evidence that parties file with the (inaudible) Motion.

17          Anything else from anyone?  All right.  I'll issue

18   an order on the -- all right.  Thanks.  I'll issue an order

19   with the new case deadlines and this transcript is my word on

20   the -- on the discovery disputes.  All right.  Thank you all

21   for being available.

22          (Whereupon, hearing was concluded at 1:35 o'clock

23   p.m.)

24                        ---o0o---

25

1                    REPORTER'S CERTIFICATE

2   TITLE:MARY MARION (surviving spouse of VERNON J. MARION),

3            Claimant versus PACIFIC SHIP REPAIR, BAE SYSTEMS

4            SAN DIEGO SHIP REPAIR, INC., and THE MARINE GROUP,

5            Employers, and FAIRLEAD BOATWORKS and FRASER BOILER

6            SERVICES/SIGNAL MUTUAL INDEMNITY ASSOCIATION,

7            LIMITED, Employer and Carrier, and DIRECTOR, OFFICE

8            OF WORKERS' COMPENSATION PROGRAMS,

9            Party-in-Interest

10  CASE NUMBER:  2019-LHC-01475

11  OWCP NO.:  13-306597

12  DATE:  TUESDAY, MARCH 16, 2021

13  LOCATION:  MICROSOFT TEAMS VIDEO CONFERENCE HEARING

14

15           This is to certify that the attached proceedings

16  before the United States Department of Labor, were held

17  according to the record and that this is the original,

18  complete, true and accurate transcript which has been

19  compared to the reporting or recording accomplished at the

20  hearing.

21

22

23  _____     _____
                                          04/07/2021

24  SIGNATURE OF REPORTER                              DATE

# EXHIBIT C

**U.S. Department of Labor**

Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)
OALJ-SanFrancisco@dol.gov



**Issue Date: 03 June 2021**

CASE NO.:    2019-LHC-01475

OWCP NO.:    13-306597

*In the Matter of:*

**MARY MARION**
**(surviving spouse of VERNON J. MARION**),
        Claimant,

        vs.

**PACIFIC SHIP REPAIR,**
**BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.,**
and **THE MARINE GROUP**,
        Employers,

        and

**FAIRLEAD BOATWORKS** and **FRASER BOILER SERVICES/**
**SIGNAL MUTUAL INDEMNITY ASS'N LTD.**,
        Employers and Carrier.

**DIRECTOR, OFFICE OF**
**WORKERS' COMPENSATION PROGRAMS**,
        Party-in-Interest.

### ORDER TO SHOW CAUSE
### AND STAYING DISCOVERY AND BRIEFING SCHEDULE

The parties have agreed to submit this Longshore Act case on a written record.

On a March 16, 2021, conference call on the record, following discovery-related motions, I ordered that responses to Claimant's written discovery take place no later than April 19, 2021, as follows:

> I'm going to order the Supplemental Production of Interrogatory Answers, Documents, and the Answers to Engel's Admissions one through 14 be done by April 19th -- April 19th, 2021, a little more than 30 days from now.

Transcript of March 16, 2021 Conference Call at 10-11.

Following receipt of responses to this written discovery, Claimant also planned to take depositions of four apparently former employees of BAE Systems San Diego, identified in the March 16 call transcript as Stanton, Kake, Machato, and Vink. While I initially ordered these also be completed by April 19, *id.*, I revised that order following further discussion on the call and the parties' agreement to sequence discovery. I ordered that these four depositions, as well as depositions proposed by BAE Systems San Diego, be conducted no later than the new discovery cutoff of May 28:

> JUDGE NORDBY: So, the depositions of Stanton, Kake, Machato, and Vink, I'm going to order that they be -- allow to be deposed on a date mutually agreed by Counsel, or Claimant and Respondent. That – those depositions can be held between now and what we'll set as the new discovery cut off of say May 28th, approximately 60 days . . . .
> MR. HUGG: Completion of depositions by May 28th.
> JUDGE NORDBY: May 28th, correct. And same for the depositions that you're proposing to take, Mr. Hugg.
> MR. HUGG: Understood.

Transcript of March 16, 2021 Conference Call at 12-13.

But as discussed on the March 16, 2021 call, the deadline for BAE Systems San Diego to respond to Claimant's written discovery remained April 19:

> JUDGE NORDBY: The new discovery cut off will be May 28th for completion of all discovery . . . with that April 19th deadline for responses to the December 11th Motion to Compel discovery.
>
> MR. HUGG: Thank you.

Transcript of March 16, 2021 Conference Call at 13.

By written order dated March 25, 2021, I continued the deadlines in this case. In that order, as discussed on the call, I continued the discovery deadline to May 28, 2021.

On April 6, 2021, BAE Systems San Diego filed a Motion for Reconsideration and Request for Written Orders on Discovery Issues. On April 7, 2021, the transcript of the March 16, 2021 call became available to the parties. This Office communicated with the parties to confirm that the call transcript containing the orders and deadlines set out above answered any outstanding questions.

By letter-motion filed June 2, 2021, Claimant states that the written discovery that I ordered has not been produced, and that the depositions were not held. Claimant seeks referral to the U.S. District Court for imposition of discovery sanctions. *See Goicochea v. Wards Cove Packing Co.*, 37 BRBS 4 (2003) (setting out Section 27(b) procedure for referral for discovery sanctions).

It is ORDERED that Respondent BAE Systems San Diego show cause no later than **June 18, 2021**, why this discovery matter should not be referred to the U.S. District Court for the Northern District of California for further proceedings under the Longshore Act.

It is further ORDERED that the current discovery and briefing schedule in this case, issued by order dated March 25, 2021, is STAYED until further order.



EVAN H. NORDBY
Administrative Law Judge

## SERVICE SHEET

Case Name:  **MARION_VERNON_J_v_PACIFIC_SHIP_REPAIR_**

Case Number: **2019LHC01475**

Document Title: **Order To Show Cause And Staying Discovery And Briefing Schedule**

I hereby certify that a copy of the above-referenced document was sent to the following this 3rd day of June, 2021:



**Tracey Y. Queripel**
LEGAL ASSISTANT

Geoff T. Sloniker, Esq.
gsloniker@braytonlaw.com
Brayton Purcell, LLP
222 Rush Landing Road, P.O. Box 6169
NOVATO CA 94948-8169
   *{Electronic - Regular Email}*

Barry Ponticello, Esq.
bponticello@eps-law.com
England, Ponticello & St. Clair
701 B Street, Suite 1790
SAN DIEGO CA 92101
   *{Electronic - Regular Email}*

David Doeling, Esq.
ddoeling@aleccialaw.com
Aleccia & Mitani
One World Trade Center, Suite 1840
LONG BEACH CA 90831
   *{Electronic - Regular Email}*

Frank B. Hugg, Esq.
fhugg@hugglaw.onmicrosoft.com
5810 Telegraph Ave.
OAKLAND CA 94609
   *{Electronic - Regular Email}*

David Edeli, Esq.
US Department of Labor
Office of the Solicitor
90 - 7th Street, Suite 3-700
SAN FRANCISCO CA 94103
   *{Electronic - Regular Email}*

# EXHIBIT D

LAW OFFICE OF

# FRANK B. HUGG

5810 Telegraph Avenue
Oakland, California 94609-1522

email: fhugg@pacbell.net
Facsimile: (510) 595-9591
Telephone: (510) 595-9575

June 17, 2021

<u>VIA EMAIL ONLY</u>

Judge Evan H. Nordby
Office of Administrative Law Judges
U.S. Department of Labor
<u>OALJ-SanFrancisco@dol.gov</u>

> RE:  VERNON J. MARION vs. BAE SYSTEMS
> SAN DIEGO SHIP REPAIR, INC. and
> <u>THE MARINE GROUP (collectively "BAE")</u>

| | |
|---|---|
| OALJ Case No.: | 2019-LHC-01475 |
| OWCP No.: | 13-306597 |
| WCAB No.: | ADJ10044945 |
| Date of Injury: | CT 1979-1993 |
| <u>Date of Death:</u> | <u>November 10, 2016</u> |

Dear Judge Nordby:

May I respectfully respond to the Order by your Honor of June 3, 2021. While the format of the disputed issues in this letter may imply informality, the undersigned and the parties represented thereby consider this to be a serious matter of the utmost gravity. Please see below.

<u>SUMMARY OF CLAIMS AND PROCEEDING BEFORE THE OALJ</u>

The Claimant, Mary Marion, is the surviving spouse of the deceased employee, Vernon Marion. The Claimant contends that her husband died as a result of occupational exposures to asbestos. The decedent was 78 years old at the time of his death (dob: October 24, 1938). The decedent was also survived by a daughter, Tina Amerson, and a son, Teddy Marion.

<u>RESPONSE RE: ORDER TO SHOW CAUSE</u>

RE: VERNON J. MARION
June 17, 2021
Page 2 of 4

The work history of the decedent may be summarized as follows.

| Employers | Years of Employment | | | | |
|---|---|---|---|---|---|
| The Marine Group and BAE Systems San Diego Ship Repair, Inc. | 1979-1993 | | | | |
| Pacific Ship Repair | | 1984, 1996 | | | |
| Davis Boat Works, Inc. | | | 1997-2002 | | |
| Campbell Industries | | | | 1997 | |
| Frasers Boiler Service, Inc./Fairleads Boatworks | | | | | 2002-2014 |

In the third-party proceeding, Claimant has served or will serve copies of "inbound" checks for payments by civil defendant to Brayton. There will also be payments "outbound" by Brayton to their clients.

See also four pages of copies of checks from the Brayton Trust Accounts. The checks are likely Claimant's trust accounts for years 2017 to 2018. Not sure what Claimant is doing. If ALJ stays on the file, then he will hopefully herein require an explanation these checks.

COURSE OF FORMAL DISCOVERY

October 15, 2020  -  Order Setting Deadlines for Submission on the Record

October 26, 2020  -  BAE Response to Claimant Request for Admission. Set One. BAE Response to Claimant Request for Production. Set One.

April 22, 2021  -  Draft Stipulation by BAE to try to initiate a settlement dialogue including payment of any award that waived asbestos exposure and section 33.

May 12, 2021  -  Suggestion by Claimant's Counsel that the first draft of the Stipulations will not be adequate.

May 14, 2021  -  Statement of willingness to all dependent of surviving spouse and two children. Claimant's position to comply and consider revised Stipulations.

RESPONSE RE: ORDER TO SHOW CAUSE

RE: VERNON J. MARION
June 17, 2021
Page 3 of 4

| | | |
|---|---|---|
| June 2, 2021* | - | Letter by Claimant to Judge advising the alleged failure to produce witnesses and other discovery documents to Claimant. |
| June 3, 2021 | - | Order to Show Cause. |

## CLAIMANT'S ARGUMENT

The core of Claimant's argument is that BAE caused the Claimant to be unable to conduct discovery. Claimant ignores, however, that the responses by BAE to Production and Admissions from October 26, 2020. The Claimant did nothing to conduct discovery for the next 14 month, when Claimant then noticed four corporate deposition in December, 2020.

Counsel for Claimant argued that Claimant need not disclose the sorting and culling of the accounts for the wife and children, until such time as BAE produced the BAE documents from BAE depositions.

## BAE'S ARGUMENT

BAE argues that the final summaries of all these resolution and releases, premised upon Claimant's down to the penny of analysis. Namely, BAE is unable to evaluate the ability of § 33(f) for credit or § 33(g) for a complete bar until Brayton produces all settlement documents.

The leading civil cases devoted to interpretation are as follows: *Goicochea v. Wards Cove Packing Co.* 37 BRBS 4 (2003). *AZ International v. Philips* 179 F.3d 1187 (9th 1999) establishes that the Administrative Law Judge holds only certified facts to be considered under § 27(b). *See also. Eggert*, 953 F.2d at 552, 554 (9th Circuit).

## SUMMARY

The law in regard to § 27(b) is murky, but seemingly does not apply here. Namely, § 27(b) applies when a party disobeys any "lawful order." No such order exists at this time. Likewise if a party after having been ordered to produce documents and then refuses, § 27(b) may apply.

In the larger picture, the potential claim by Claimant is an argument premised on revenge. For unknown reason, Claimant produced to response for subpoenas checks for the following: **July 6, 2017** - $585,256.40; **July 13, 2018** - $2,722,942.30; **July 8, 2019** - $13,996,681.02; and **July 8, 2019** - $5,660,485.39.

RESPONSE RE: ORDER TO SHOW CAUSE

RE: VERNON J. MARION
June 17, 2021
Page 4 of 4

It is pure speculation to wonder why these checks are somehow tied to the payments on behalf or to the deceased employee. Further, the manner in which the surviving Claimant received and accounted must be disclosed.

Indeed, words used in the dictionary are close to § 27(b), which are defined often by the contentions. Such conduct is, "stubbornly or willfully disobedient to authority." Claimant is obligated to produce reasons and documents to explain why the payments were made to Brayton and how much upon gross and net fees' may land on Brayton.

Otherwise, I trust that this report is satisfactory of a complex arena of law and detailed facts. I suspect that Judge Nordby may well be dubious of the releases and my role in trying to shut down the seemingly never ending fog for asbestos claims by shipyard workers. Thank you.

Very Truly Yours,

Frank B. Hugg

FBH:sc

Via Email Only:

cc:     Geoff Sloniker, Esq.
        Barry W. Ponticello, Esq.
        David Doeling, Esq.
        David Louis Edeli, Esq.
        Ellen Vinck
        Lisa Cake
        Richard Stanton

RESPONSE RE: ORDER TO SHOW CAUSE

PLANT INSULATION COMPANY
ASBESTOS SETTLEMENT TRUST
CLAIM PAYMENTS
300 E 2ND ST STE 1205
RENO, NV 89501-1566

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

1822

7/8/2019

PAY TO THE
ORDER OF   Brayton Purcell Client Trust Acct                    $ **5,660,485.39

Five Million Six Hundred Sixty Thousand Four Hundred Eighty-Five and 39/100************************************ DOLLARS

Brayton Purcell Client Trust Acct
222 Rush Landing Road
Novato, CA 94945-2469

TWO SIGNATURE REQUIRED OVER 25,000

MEMO
Funds Received Ratio Increase-Trust Claims

AUTHORIZED SIGNATURE

⑈000000１８２２⑈ ⑆321270742⑆ 579527528７⑈

PLANT INSULATION COMPANY  ASBESTOS SETTLEMENT TRUST          1822

Brayton Purcell Client Trust Acct                    7/8/2019

5,313,014.30
347,471.09

# Plant Insulation Company
(Payment #2)

Claim Checking - 528    Funds Received Ratio Increase-Trust Claims          5,660,485.39

WESTERN ASBESTOS SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1565

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

7614

7/8/2019

PAY TO THE
ORDER OF   Brayton Purcell Client Trust Acct                                    $ **13,996,681.02

Thirteen Million Nine Hundred Ninety-Six Thousand Six Hundred Eighty-One and 02/100************************   DOLLARS

Brayton Purcell Client Trust Acct
222 Rush Landing Road
Novato CA 94945

TWO SIGNATURES REQUIRED OVER $25,000.00

MEMO

Trust Payment Percentage Increase

AUTHORIZED SIGNATURE

⑈000000761411⑈ ⑆321270742⑆ 37956202141⑈

WESTERN ASBESTOS SETTLEMENT TRUST   (CLAIM PAYMENTS)                                    7614

Brayton Purcell Client Trust Acct                          7/8/2019

10,619,637.12
3,377,043.90

# Western MacArthur Company
(Payment #2)

Claim Checking - 021    Trust Payment Percentage Increase                          13,996,681.02

J.T. THORPE SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1566

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

5233

7/13/2018

PAY TO THE
ORDER OF    Brayton Purcell Client Trust Account                                    $ **2,722,942.30

Two Million Seven Hundred Twenty-Two Thousand Nine Hundred Forty-Two and 30/100************************    DOLLARS

Brayton Purcell Client Trust Account
222 Rush Landing Rd.
Novato, CA 94945-2469

TWO SIGNATURES REQUIRED
OVER $25,000.00

MEMO

AUTHORIZED SIGNATURE

Payment Percentage Increase

⑆000005233⑈ ⑆321270742⑈ 5795275345⑈

---

J.T. THORPE SETTLEMENT TRUST   (CLAIM PAYMENTS)                                    5233

Brayton Purcell Client Trust Account                    7/13/2018

| | |
|---|---:|
| Trust Payment Percentage Increase | 2,192,436.62 |
| Trust Inflation Adjustment. | 483,213.03 |
| Pre-Petition Payment Percentage Increase | 38,751.76 |
| Pre-Petition Inflation Adjustment | 8,540.89 |

## J.T. Thorpe, Inc.
(Payment #2)

| | | |
|---|---|---:|
| Claim Checking - 534 | Payment Percentage Increase | 2,722,942.30 |

J.T. THORPE SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1566

WELLS FARGO BANK, N.A. 
www.wellsfargo.com
94-7074/3212

5074

7/6/2017

PAY TO THE
ORDER OF    Brayton Purcell Client Trust Account

$ **585,256.40

Five Hundred Eighty-Five Thousand Two Hundred Fifty-Six and 40/100**************************************************

DOLLARS

Brayton Purcell Client Trust Account
222 Rush Landing Rd.
Novato, CA 94945-2469

TWO SIGNATURES REQUIRED
OVER $25000.00

MEMO

Claim Payment - Schedule Attached

AUTHORIZED SIGNATURE

⑈000000 5074⑈ ⑆321270742⑆ 5795275345⑈

---

J.T. THORPE SETTLEMENT TRUST   (CLAIM PAYMENTS)                                    5074

Brayton Purcell Client Trust Account                        7/6/2017

585,256.40
585,256.40
-585,256.40

## J.T. Thorpe, Inc.
(Payment #1)

Claim Checking - 534    Claim Payment - Schedule Attached                     585,256.40

1  FRANK B. HUGG, ESQ. – No. 64911
   5810 Telegraph Avenue
2  Oakland, California 94609-1522
   Telephone:    (510) 595-9575
3  Facsimile:    (510) 595-9591

4  Attorney for Employer
   BAE SYSTEMS SAN DIEGO
5  SHIP REPAIR, INC.

6

7

8                  UNITED STATES DEPARTMENT OF LABOR

9                  OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12  MARY MARION                        )        Case No.:      2019-LHC-01475
                                       )
13         (Vernon Marion –            )        OWCP No.:   13-306597
            deceased employee )        )
14                                     )
           Claimant,                   )
15                                     )
    vs.                                )
16                                     )
                                       )        DECLARATION RE: RESPONSE TO
17  BAE SYSTEMS SAN DIEGO SHIP         )        ORDER TO SHOW CAUSE WHY
    REPAIR, INC., et al.               )        MATTER SHOULD NOT BE
18                                     )        REFERRED TO DISTRICT COURT OF
           Employers.                  )        THE NORTHERN DISTRICT
19                                     )
                                       )
20  _____)

21         I, Frank B. Hugg, am an attorney admitted to practice law in all courts of the

22  States of Florida (1974) and California (1975).  If called to testify herein, I would state

23  that the items attached are true and correct copies.  Further, all references to

24  conversations, emails notes, and all other writings are truthful.  By way of introduction

25  and foundation, I offer the following.

26         1.     The evidence that is produced in cases under section 33 are voluminous.

27  For example, see attached responses in *DeCeoursty*.  FBH Dec. 1.  Such notices required

28  and Brayton produce all "in-bound' checks from third-parties and outbound funds/

                                      -1-

settlement including releases from Brayton to client.   Brayton did not provide the necessary summary of the inbound checks.  Without further discovery of the dollar amount, third-party settlement cannot be applied or determined as against any defendant employer/carrier.

2.      BAE noticed the Claimants deposition on seven different occasions as follows: September 15, 2020; September 16, 2020; October 23, 2020; December 9, 2020; December 10, 2020; January 4, 2021; and May 14, 2021.  FBH Dec. 2.

3.      Third-party disclosures are required.  See also Response of Claimant's Requests for Admission to BAE Systems San Diego Ship Repair, Inc., Set One and Response to Claimant's Requests for Production to BAE Systems San Diego Ship Repair, Inc., Set One dated October 13, 2020.  FBH Dec. 3.

4.      Claimant noticed the depositions for four witnesses: Richard Stanton – December 23, 2020; Ellen Vinck – December 28, 2020; Laura Machado – December 30, 2020; and Lisa Cake – January 4, 2021.  FBH Dec. 4.  Such notices were upon notices of less than 20 days.  See example Vinck notice.

5.      Against the background of such enclosures, I engaged in telephone discussions and emails drafting stipulations.  There were further discussions on May 12, 2021.  FBH Dec. 5.  The deposition notice suggested dates for deposition of surviving spouse and also 'Teddy.'  *Id.*  I made sure this was for a proposed Stipulation with "DRAFT."  Counsel for Claimant would not agree to resolve if BAE offered more.

6.      There were no further contact or telephone calls or conversations with Claimant's Counsel with respect to this loss but checks still a mystery.  FBH Dec. 6.

Dated: ___June 17, 2021___

Frank B. Hugg

-2-

# Exhibit 1

1  ALAN R. BRAYTON, ESQ., CA. S.B. #73685
   JOHN R. WALLACE, ESQ., CA. S.B # 85709.
2  BRAYTON ❖ PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Facsimile)
   Attorneys for Claimant GAIL DeCEOURSTY
6

7            UNITED STATES DEPARTMENT OF LABOR

8            OFFICE OF ADMINISTRATIVE LAW JUDGES

9  GAIL DeCEOURSTY, Widow, DAVID          ) OALJ Case No. 2017-LHC-00366
   DeCEOURSTY, Deceased,                  )
10                                        ) OWCP Case No. 13-302931
                                          )
11              Claimant,                 )
                                          ) CLAIMANT GAIL DeCEOURSTY'S
12 vs.                                    ) RESPONSES TO REQUESTS FOR
                                          ) PRODUCTION OF DOCUMENTS,
13 BAE SYSTEMS - SAN FRANCISCO SHIP       ) SET: ONE, FROM EMPLOYER BAE
   REPAIR INC. and SIGNAL MUTUAL          ) SYSTEMS SAN FRANCISCO SHIP
14 INDEMNITY ASSOCIATION,                 ) REPAIR, INC. AND CARRIER SIGNAL
                                          ) MUTUAL INDEMNITY
15            Employer and Carrier,       ) ASSOCIATION, LTD
                                          )
16 and                                    )
                                          )
17 SERVICE ENGINEERING COMPANY and        )
   INSURANCE COMPANY OF THE STATE         )
18 OF PENNSYLVANIA,                       )
                                          )
19            Employer and Carrier,       )
                                          )
20 and                                    )
                                          )
21 TODD SHIPYARD COMPANY and              )
   TRAVELERS INSURANCE COMPANY,           )
22                                        )
              Employer and Carrier,       )
23                                        )
   and                                    )
24                                        )
   CONTINENTAL MARITIME OF SAN            )
25 DIEGO and AMTRUST NORTH AMERICA,       )
                                          )
26            Employer and Carrier.       )

27 ///

28 ///

                                          1

CLAIMANT GAIL DeCEOURSTY'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET: ONE, FROM
EMPLOYER BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC. AND CARRIER SIGNAL MUTUAL INDEMNITY ASSOCIATION,
LTD.; OALJ Case No. 2017-LHC-00366; OWCP Case No. 13-302931

1 | PROPOUNDING PARTY: Employer BAE SYSTEMS SAN FRANCISCO SHIP REPAIR,
2 | INC. and Carrier SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD.

3 | RESPONDING PARTY: Claimant GAIL DeCEOURSTY

4 | SET NUMBER: ONE (1)

5 | COMES NOW CLAIMANT GAIL DeCEOURSTY ("Claimant") and provides the

6 | following Responses to Requests for Production of Documents, Set One, propounded by

7 | Employer BAE Systems San Francisco Ship Repair, Inc. ("BAE") and Carrier Signal Mutual

8 | Indemnity Association, Ltd.. ("Signal") (collectively "Employer," unless otherwise noted), as

9 | follows:

10 | **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:** Please produce the all of your

11 | Releases, Settlements and/or Settlement Documents signed and dated by you after September

12 | 17, 2014.

13 | **RESPONSE TO REQUEST NO. 1:** Claimant objects to this Request for Production on the

14 | grounds that it is vague, ambiguous, and compound, overly broad and unduly burdensome in

15 | that it appears to call for information from one or more individuals who are not a party to this

16 | action, is not reasonably calculated to lead to the discovery of admissible evidence, appears to

17 | call for irrelevant evidence and calls for information subject to the attorney/client and/or the

18 | attorney work-product privilege. Additionally, Claimant objects to this Request on the grounds

19 | that it seeks the disclosure of confidential settlement information which is protected under

20 | California law pursuant to Evidence Code §1152, accord, Hinshaw, Winckler, Draa, Marsh &

21 | Still, et al. v. Super. Ct (Kauffman), (1996) 51 Cal.App.4th 233, 241; Covell v. Super. Ct.

22 | (Drasin), (1984) 159 Cal.App.3d 39, 43; and C&K Engineering Contractors v. Amber Stell Co.

23 | (1978) 23 Cal.3d 1. However, without waiving these objections and as Claimant understands

24 | this Request for Production, Claimant responds that since the death of her husband, David

25 | DeCeoursty ("Decedent") on September 17, 2014, she is informed and believes that his

26 | ///

27 | ///

28 | ///

2

EX 2.2

1   surviving issue concluded resolutions of claims with the following companies, entities and/or

2   bankrupts, bankruptcy trusts or asbestos bankruptcy trusts: 1)  AC and S, Inc. (Payment

3   Pending), 2)  Armstrong World Industries, Inc., 3)  E.J. Bartells Company, 4)  Fibreboard

4   Corporation, 5)  Flexitallic, Inc., 6)  General Dynamics Corporation, 7)  G-I Holdings, Inc., 8)

5   Halliburton Energy Services, Inc., 9)  Huntington Ingalls Incorporated (fka Northrop Grumman

6   Shipbuilding, Inc.), 10)  J.T. Thorpe, Inc., 11)  Manville Trust, 12)  National Steel and

7   Shipbuilding Company, 13)  Plant Insulation Company, 14)  Puget Sound Commerce Center,

8   Inc. (fka Todd Shipyards Corporation), 15)  Quigley Company, Inc., 16)  Quintec Industries,

9   Inc., 17)  T&N, Ltd., and 18)  Western MacArthur Company.  The documents reflecting these

10  resolutions are produced herewith and are attached hereto and marked Exhibit "A," which

11  exhibit contains 178 total pages.

12  <u>REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:</u>  Please produce copies of all

13  checks "inbound" to Brayton-Purcell from any party in any third party actions or from any other

14  entity that has entered into a settlement with you; and copies of all checks front and back of

15  "out-bound" funds from Brayton in disbursement of the proceeds of any settlements whatsoever.

16  <u>RESPONSE TO REQUEST NO. 2:</u>  Please see Claimant's Response to Request for

17  Production, No. 1, which is incorporated herein by this reference as though set forth in full.

18  However, without waiving these objections and as she understands this request for production,

19  Claimant responds that as to "inbound" payments received, copies of such documents or wire

20  transfer verifications, redacted to reflect only payments received regarding the Decedent David

21  DeCeoursty, are attached hereto and marked Exhibit "B," this exhibit contains twenty-three

22  (23) total pages.  Further, as to "out-bound" payments made, copies of such documents, redacted

23  to protect account information, are attached hereto and marked Exhibit "C," this exhibit

24  contains six (6) total pages and the payments made as reflected on such checks can be itemized

25  as follows:

26  ///

27  ///

28  ///

CLAIMANT GAIL DeCEOURSTY'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET: ONE, FROM
EMPLOYER BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC. AND CARRIER SIGNAL MUTUAL INDEMNITY ASSOCIATION,
LTD.; OALJ Case No. 2017-LHC-00366; OWCP Case No. 13-302931

EX 2.3

Client Payments of Post Death Settlements:

| Payee | Amount | Check No. |
|-------|--------|-----------|
| Jenna R. DeCeoursty | $127,169.25 | 212305 |
| Kevin D. DeCeoursty | $127,169.26 | 212306 |
| Jenna R. DeCeoursty | $  5,942.18 | 224180 |
| Kevin D. DeCeoursty | $  5,942.18 | 224181 |
| Jenna R. DeCeoursty | $  4,428.83 | 234288 |
| Kevin D. DeCeoursty | $  4,428.83 | 234289 |
| Total Post Death - Client Portion Disbursed | $275,080.53* | [*See Note 3, *infra.*: funds in the total amount of $52,090.65 at this time have not been paid out and remain on hold for payment of any potential Medicare Lien.] |

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3**:  Please produce a current "Settlement Status Report" which includes the date of every "resolution" and discloses the gross and net amounts of every settlement that in any marine (*sic*.) arise out of the death of the employee.

**RESPONSE TO REQUEST NO. 3**:   Please see Claimant's  Response to Request for Production, No. 1, which is incorporated herein by this reference as though set forth in full. However, without waiving these objections and as she understands this request for production, Claimant responds that since the death of Decedent she is informed and believes that his surviving issue concluded resolutions of claims with companies, entities and/or bankrupts and/or bankruptcy trusts or asbestos bankruptcy trusts, which were consummated on and resulted in payments as are here set forth:

| Company and/or Bankrupt Entity | Gross Settlement | Client Portion | Settlement Finalized |
|-------|-------|-------|-------|
| Bankrupt Entities [Note 1] | | | |
| 1) Armstrong World Industries, Inc. | $8,280.02 | $2,056.32 | 09/11/15 |
| 2) Armstrong World Industries, Inc.- 2016 Payment Increase | $1,892.58 | $1,135.55 | Note 2 & 3 |

4

EX 2.4

| | | | |
|---|---|---|---|
| 3) Armstrong World Industries, Inc. - Sequencing Adjustment | $8.95 | $5.37 | Note 2 |
| 4) E.J. Bartells Company | $630.00 | $0.00 | 01/04/16  Note 4 |
| 5) Fibreboard Corporation | $1,066.06 | $596.77 | 09/11/15 |
| 6) Fibreboard Corporation - 2015 Payment Increase | $392.76 | $147.78 | Note 2 |
| 7) Fibreboard Corporation - Sequencing Adjustment | $7.12 | $4.27 | Note 2 |
| 8) Flexitallic, Inc. - Partial Payment | $82.97 | $49.78 | 09/11/15 |
| 9) Flexitallic, Inc. - Sequencing Adjustment | $1.33 | $0.80 | Note 2 |
| 10) G-I Holdings, Inc. | $1,279.46 | $767.68 | 12/19/16  Note 3 |
| 11) G-I Holdings, Inc. - Sequencing Adjustment | $16.18 $9.71 | | Note 2 & 3 |
| 12) Halliburton Energy Services, Inc. | $792.00 | $475.20 | 09/11/15 |
| 13) Halliburton Energy Services, Inc. - 2017 Payment Increase | $320.37 | $0.00 | Note 2 |
| 14) J.T. Thorpe, Inc. | $8,723.41 | $5,426.56 | 09/11/15 |
| 15) Manville Trust | $2,500.00 | $1,875.00 | 10/07/15 |
| 16) Plant Insulation Company | $47,662.70 | $33,565.06 | 01/27/18  Note 3 |
| 17) Quigley Company, Inc. | $2,175.00 | $1,230.41 | 09/02/16  Note 3 |
| 18) Quintec Industries, Inc. | $19,807.27 | $11,884.36 | 02/24/16 |
| 19) T&N, Ltd. - Partial Payment | $421.46 | $252.88 | 11/11/15 |
| 20) T&N, Ltd. - Sequencing Adjustment | $7.74 | $4.64 | Note 2 |
| 21) Western MacArthur Company | $324,567.89 | $243,425.92 | 09/11/15 |
| **Non-Bankrupt Entities** [Note 1] | | | |
| 22) General Dynamics Corp. | $12,000.00 | $7,181.40 | 07/05/16  Note 3 |
| /// | | | |
| /// | | | |
| 23). Huntington Ingalls Inc. | $15,000.00 | $8,857.66 | 04/05/16 |

5

CLAIMANT GAIL DeCEOURSTY'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET: ONE, FROM EMPLOYER BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC. AND CARRIER SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD.; OALJ Case No. 2017-LHC-00366; OWCP Case No. 13-302931

EX 2 5

(fka Northrop Grumman Shipbuilding, Inc.)

24) National Steel and                $3,500.00              $2,100.00        06/08/16  Note 3
    Shipbuilding Company

25) Puget Sound Commerce             $17,500.00             $6,100.84        05/23/16  Note 3
    Center, Inc. (fka Todd Shipyards Corporation)

Pending-No Payment(s) Yet Made to Client(s)  [Note 1]

27) AC and S, Inc.                    $1,036.80                              02/14/18

28) Flexitallic, Inc.                    $82.97                              Note 2
    - Final Payment

29) T&N, Ltd. - Final Payment           $421.46                             Note 2

Note 1:  No proceeds from Post Death Settlements were or will be paid to "Gail DeCeoursty."
Note 2:  Interim payment posting, covered by original C&R.
Note 3:  Funds On Hold for Potential Medicare Lien.
Note 4:  Disbursal Date, release not required by defendant/company/bankrupt.

Accrued Interest in the total amount of $17.22 has also been paid to Decedent's issue as a consequence of the timing of the receipt of the company/entity payment(s) above-described and the subsequent payments after such resolutions. Further and as noted above (i.e.: Note 3.) where applicable, funds in the total amount of $52,090.65 at this time have not been paid out to Decedent's issue and instead remain on hold for payment of any potential Medicare Lien as the amount of same is still being determined by Medicare.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:** Please produce in regard to the death of David K. DeCeoursty the original of the following: his last will and testament, any holographic wills, any and all probate proceeding (sic.) involving his demise, all addendums, any codicils and all other documents in regard to the disposition of his estate and which establish the persons who were his successors in interests, executors, and/or administrators.

**RESPONSE TO REQUEST NO. 4:** Claimant objects to this Request for Production on the grounds that it is vague, ambiguous, and compound, overly broad and unduly burdensome in that it appears to call for information from one or more individuals who are not a party to this action, calls for the disclosure of confidential information and thus is an invasion of privacy guaranteed not only to Claimant, but also to such other non-parties whose permission for such disclosure might otherwise be required but has not been obtained, calls for information in a

6

EX 2.6

1   manner that is not reasonably calculated to lead to the discovery of admissible evidence, appears

2   to call for irrelevant evidence and/or calls for information subject to the attorney/client and/or

3   the attorney work-product privilege.

4

5   Dated: April 4 2018

    BRAYTON❖PURCELL LLP

6

7

8   By: _____

9       John R. Wallace, Esq.
        Attorneys for Claimant GAIL DeCEOURSTY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMANT GAIL DeCEOURSTY'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET: ONE, FROM
EMPLOYER BAE SYSTEMS SAN FRANCISCO SHIP REPAIR, INC. AND CARRIER SIGNAL MUTUAL INDEMNITY ASSOCIATION,
LTD.; OALJ Case No. 2017-LHC-00366; OWCP Case No. 13-302931

EX 2.7

# Exhibit 2

1   FRANK B. HUGG, ESQ. – No. 64911
5810 Telegraph Avenue
2   Oakland, California 94609-1522
Telephone:   (510) 595-9575
3   Facsimile:   (510) 595-9591

4   Attorney for Employer
BAE SYSTEMS SAN DIEGO
5   SHIP REPAIR, INC.

6

7

8             UNITED STATES DEPARTMENT OF LABOR

9             OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11   MARY MARION           )
                           )      Case No.:    2019-LHC-01475
12       (Vernon Marion –    )
        deceased employee )   )      OWCP No.:  13-306597
13                      )
        Claimant,        )
14                      )
vs.                    )
15                      )
                      )
16   BAE SYSTEMS SAN DIEGO SHIP )   NOTICE OF TAKING DEPOSITION
REPAIR, INC., *et al.*          )   <u>AND REQUEST FOR PRODUCTION</u>
17                      )
        Respondents.     )
18

19       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE that the deposition of Claimant, MARY MARION,

21   whose address is known to his attorneys, will be taken in the above-entitled action

22   before a qualified Notary Public authorized to administer oaths in and for the State of

23   California remotely via the Zoom webcast and the Court Reporter will provide the

24   parties the "join meeting" code to access the deposition on **Tuesday, October 27, 2020,**

25   **at 10:00 a.m.**

26       At time and place of the deposition, pursuant to Federal Rules of Civil

27   Procedure, the deponent is requested to produce the following original information for

28   inspection and photocopying:

(1)     Please produce all of the Releases, Settlements and/or Settlement Documents signed and dated by you OR ANY OTHER FAMILY MEMBERS OR OTHER PERSONS, after November 10, 2016.

(2)     Please produce copies of all checks "**inbound**" to Brayton-Purcell from any party in any third party actions or from any other entity that has entered into a settlement with you; and copies of all checks front and back of "**out-bound**" funds from Brayton in disbursement of the proceeds of any settlements whatsoever.

(3)     Please produce a current "Settlement Status Report" which includes the date of every "resolution" and discloses the gross and net amounts of every settlement that in any manner arises out of the death of the employee, including **a statement or list of the amounts of all settlements that each bankrupt, insolvent corporation, asbestos funds, and/or asbestos trusts funds <u>AS OPPOSED TO NON-BANKRUPTS WHICH ARE VIABLE CORPORATIONS STILL DOING BUSINESS.</u>**

(4)     Please produce in regard to the death of Vernon Marion the original of the following: his last will and testament, any holographic wills, any and all probate proceeding involving his demise, all addendums, any codicils and all other documents in regard to the disposition of his estate and which establish the persons who were his successors in interests, executors, and/or administrators.

(5)     The powers of attorney signed by any family members.

(6)     The Revocable Trust or Trusts of Vernon Marion and Mary Marion.

(7)     Copies of all checks issued by Brayton on or after November 10, 2016, payable to the surviving widow, to any family member, to any "clients" of Brayton Purcell and to any other persons.

Said deposition will continue from day to day, Sundays and holidays excepted until completed, on behalf of the employer to be used at the hearing thereof.

This deposition is being taken under the provisions of 33 U.S.C.924, 927(a) and 29 C.F.R. 18.61 & 18.64.  Notice is further provided and request made that at the deposition the Claimant be made available for photographs.

-2-

1

2

3  Dated: September 15, 2020

Respectfully Submitted,

Frank B. Hugg, Attorney for
BAE SYSTEMS SAN DIEGO
SHIP REPAIR, INC.

1

<u>PROOF OF SERVICE BY MAIL</u>

2

I, the undersigned, declare:

3

That I am a citizen of the United States of America over the age of eighteen

4

years, and not a party to the within action.  That my business address is Law Offices of

5

Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609.  That on the date

6

indicated below I served a copy of the **NOTICE OF TAKING DEPOSITION AND**

7

**REQUEST FOR PRODUCTION**, on the interested parties via email only, addressed as

8

follows:

9

John R. Wallace, Esq.

Brayton Purcell, LLP

10

jrwallacelaw@gmail.com

11

Barry W. Ponticello, Esq.

England, Ponticello & St. Clair

12

bponticello@eps-law.com

David L. Edeli, Esq.

Office of the Solicitor

edeli.david.l@dol.gov

David Doeling, Esq.

Aleccia & Mitani

ddoeling@aleccialaw.com

13

Aiken & Welch Court Reporters,

a Veritext Company

14

calendar-aikenwelch@veritext.com

15

I declare under penalty of perjury under the laws of the State of California that

16

the foregoing is true and correct and that this declaration was executed in Oakland,

17

California, on September 15, 2020.

18

Susan Chow

19

20

21

22

23

24

25

26

27

28

FRANK B. HUGG, ESQ. – No. 64911
5810 Telegraph Avenue
Oakland, California 94609-1522
Telephone:   (510) 595-9575
Facsimile:   (510) 595-9591

Attorney for Employers
BAE SYSTEMS SAN FRANCISCO SHIP
REPAIR, INC., SOUTHWEST MARINE, INC., &
SAN FRANCISCO DRYDOCK, INC., and
A Holding Company, THE MARINE GROUP

## UNITED STATES DEPARTMENT OF LABOR

## OFFICE OF ADMINISTRATIVE LAW JUDGES

MARY MARION                                    )
                                               )
    (Vernon Marion –                           )      Case No.:     2019-LHC-01475
     deceased employee )                      )
                                               )      OWCP No.:   13-306597
    Claimant,                                  )
                                               )
vs.                                            )
                                               )
BAE SYSTEMS SAN FRANCISCO                      )
SHIP REPAIR, INC., SOUTHWEST                   )
MARINE, INC., and SAN                          )
FRANCISCO DRYDOCK, INC.                        )
                                               )
    Employers,                                 )      SEVENTH AMENDED NOTICE
                                               )      OF TAKING DEPOSITION AND
and                                            )      REQUEST FOR PRODUCTION
                                               )
THE MARINE GROUP                               )
                                               )
    A Holding Company.                         )

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

    PLEASE TAKE NOTICE that the depositions will be taken as listed below of

witnesses, whose addresses are known to the Claimant's attorneys, in the above-

entitled action before a qualified Notary Public affiliated with Aiken and Welch, a

Veritext Company, authorized to administer oaths in and for the State of California

1  remotely via the Zoom webcast and protocols.  The Court Reporter will provide the
2  parties the "join meeting" code to access the depositions on Friday, May 21, 2021, as
3  follows:

4      10:00 a.m. – Mary Marion

5      1:00 p.m. – Tina Amerson

6      3:00 p.m. – Teddy Marion

7      At time and place of the depositions, pursuant to Federal Rules of Civil
8  Procedure, the deponent is requested to produce the following original information for
9  inspection and photocopying:

10     (1)    Please produce all of the Releases, Settlements and/or Settlement
11 Documents signed and dated by you OR ANY OTHER FAMILY MEMBERS OR
12 OTHER PERSONS, after November 10, 2016.

13     (2)    Please produce copies of all checks "inbound" to Brayton-Purcell from
14 any party in any third party actions or from any other entity that has entered into a
15 settlement with you; and copies of all checks front and back of "out-bound" funds from
16 Brayton in disbursement of the proceeds of any settlements whatsoever.

17     (3)    Please produce a current "Settlement Status Report" which includes the
18 date of every "resolution" and discloses the gross and net amounts of every settlement
19 that in any manner arises out of the death of the employee, including a statement or
20 list of the amounts of all settlements that each bankrupt, insolvent corporation,
21 asbestos funds, and/or asbestos trusts funds AS OPPOSED TO NON-BANKRUPTS
22 WHICH ARE VIABLE CORPORATIONS STILL DOING BUSINESS.

23     (4)    Please produce in regard to the death of Vernon Marion the original of
24 the following: his last will and testament, any holographic wills, any and all probate
25 proceeding involving his demise, all addendums, any codicils and all other documents
26 in regard to the disposition of his estate and which establish the persons who were his
27 successors in interests, executors, and/or administrators.

28     (5)    The powers of attorney signed by any family members.

1    (6)    The Revocable Trust or Trusts of Vernon Marion and Mary Marion.

2    (7)    Copies of all checks issued by Brayton on or after November 10, 2016,

3    payable to the surviving widow, to any family member, to any "clients" of Brayton

4    Purcell and to any other persons.

5    (8)    The bank records evidencing any transfer from any heir to the widow or

6    to any trust within two years of the date of any of the Brayton checks to the heirs.

7    Said deposition will continue from day to day, Sundays and holidays excepted

8    until completed, on behalf of the employer to be used at the hearing thereof.

9    This deposition is being taken under the provisions of 33 U.S.C.924, 927(a) and

10   29 C.F.R. 18.61 & 18.64.

11                              Respectfully Submitted,

12

13   Dated: May 14, 2021        _____

14                              Frank B. Hugg, Attorney for
                                BAE SYSTEMS SAN FRANCISCO SHIP
15                              REPAIR, INC., SOUTHWEST MARINE,
                                INC., & SAN FRANCISCO DRYDOCK,
16                              INC., and A Holding Company, THE
                                MARINE GROUP

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE BY MAIL</u>

1

2    I, the undersigned, declare:

3    That I am a citizen of the United States of America over the age of eighteen

4 years, and not a party to the within action.  That my business address is Law Offices of

5 Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609.  That on the date

6 indicated below I served a copy of the **SEVENTH AMENDED NOTICE OF**

7 **DEPOSITION AND REQUEST FOR PRODUCTION,** on the interested parties via

8 email only, addressed as follows:

9 Geoff Sloniker, Esq.               David L. Edeli, Esq.
Brayton Purcell LLP              Office of the Solicitor

10 gsloniker@braytonlaw.com       edeli.david.l@dol.gov

11 David Doeling, Esq.                Barry W. Ponticello, Esq.
Aleccia & Mitani                  England, Ponticello & St. Clair

12 ddoeling@aleccialaw.com        bponticello@eps-law.com

13 Aiken & Welch Court Reporters,
a Veritext Company

14 calendar-aikenwelch@veritext.com
(510) 451-1580

15

16    I declare under penalty of perjury under the laws of the State of California that

17 the foregoing is true and correct and that this declaration was executed in Oakland,

18 California, on May 14, 2021.

19

                                      Susan Chow

20

21

22

23

24

25

26

27

28

# Exhibit 3

1   FRANK B. HUGG, ESQ. – No. 64911
    5810 Telegraph Avenue
2   Oakland, California 94609-1522
    Telephone:    (510) 595-9575
3   Facsimile:    (510) 595-9591

4   Attorney for Employers
    BAE SYSTEMS SAN DIEGO
5   SHIP REPAIR, INC., and
    THE MARINE GROUP

6

7

8                  UNITED STATES DEPARTMENT OF LABOR

9                    OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

13   MARY MARION                          )
                                          )   Case No.:     2019-LHC-01475
14        (Vernon Marion –                )
           deceased employee )            )   OWCP No.:   13-306597
15                                        )
          Claimant,                       )
16                                        )
     vs.                                  )
17                                        )   RESPONSE TO CLAIMANT'S
     BAE SYSTEMS SAN DIEGO SHIP           )   REQUESTS FOR ADMISSION TO
18   REPAIR, INC., and THE MARINE         )   BAE SYSTEMS SAN DIEGO SHIP
     GROUP, et al.                        )   REPAIR, INC., SET ONE
19                                        )
          Respondents.                    )
20   _____        )

21        PROPOUNDING PARTY:       MARY MARION, Claimant

22        RESPONDING PARTY:        BAE SYSTEMS SAN DIEGO SHIP REPAIR,
                                   INC., and THE MARINE GROUP, Employers
23
24        SET NO.:                 One.

25              __PRELIMINARY STATEMENT & OBJECTIONS__

26        Respondents object to the Request for Admissions, Set One, upon the grounds

27   that the Requests are overly broad, ambiguous, irrelevant, and not reasonably

28   calculated to lead to the discovery of admissible evidence.  29 C.F.R. §18.51(a).  BAE

                                      -1-

1  and further The Marine Group objects upon the grounds that the requested documents
2  are protected by attorney client and attorney work product privileges.

3       Further, Respondents object on the grounds that the Request for Admissions, Set
4  Two, does not comply with the regulations of practice and procedure for discovery
5  before the Office of Administrative Law Judges. 29 C.F.R. § 18.63. In effect Claimant
6  seeks to test the genuine nature of documents from the Office of the California of
7  Secretary of State. Where such a challenge is so made then the RFA "must be
8  accompanied by a copy of the document," unless the document "is or has been
9  otherwise furnished or made available." 29 C.F.R. § 18.63(2). Claimant has not and
10 does not produce any documents in these RFA, Set Two.

11      Contrary to the regulations, Claimant should have and must be required to
12 produce the documents upon which her RFA are hinged. Again in effect, these RFA
13 defectively would require every respondent under the Act to agree with her or his RFA
14 without recourse to copies of same. This objection would not be subject to challenge if
15 Claimant had served a copy, rather than seeking to compel Respondents to deny or
16 affirm unknown and unstated documents allegedly filed with the Secretary of State.

17      Likewise the identity of the corporate officers is not relevant to any issue with
18 respect to the payment of workers' compensation benefits herein.

19      TMG and BAE advise that TMG has no records in that after the sale, the all
20 records were left behind. TMG has no way of providing any records of any kind.

21 REQUEST FOR ADMISSION NO. 1:

22      Admit that the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §
23 901, *et seq.* (the "Act"), applies to this CLAIM.

24 **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

25      Admitted.

26

27 REQUEST FOR ADMISSION NO. 2:

28      Admit that this CLAIM was timely filed pursuant to 33 U.S.C. § 913.

1    RESPONSE TO REQUEST FOR ADMISSION NO. 2:

2         Admitted.

3

4    REQUEST FOR ADMISSION NO. 3:

5         Admit that SOUTHWEST MARINE and DECEDENT had an employer-

6    employee relationship between 1979 and 1993, or some portion thereof.

7    RESPONSE TO REQUEST FOR ADMISSION NO. 3:

8         Admitted.

9

10   REQUEST FOR ADMISSION NO. 4:

11        Admit that there is no statutory authority that precludes an employer from

12   assigning its liability under the Longshore & Harbor Workers' Compensation Act to

13   another entity.

14   RESPONSE TO REQUEST FOR ADMISSION NO. 4:

15        Denied.

16

17   REQUEST FOR ADMISSION NO. 5:

18        Admit that there is no case law that precludes an employer from assigning its

19   liability under the Longshore & Harbor Workers' Compensation Act to another entity.

20   RESPONSE TO REQUEST FOR ADMISSION NO. 5:

21        Denied.

22

23   REQUEST FOR ADMISSION NO. 6:

24        Admit that YOUR name prior to 2005 was Southwest Marine, Inc.

25   RESPONSE TO REQUEST FOR ADMISSION NO. 6:

26        Denied.

27

28

1  REQUEST FOR ADMISSION NO. 7:

2  Admit that YOU amended YOUR Articles of Incorporation in 2005 to change

3  YOUR name from Southwest Marine, Inc., to BAE Systems San Diego Ship Repair.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

5  Denied.

6

7  REQUEST FOR ADMISSION NO. 8:

8  Admit that YOU assigned SOUTHWEST MARINE's liability under the

9  Longshore & Harbor Workers' Compensation Act to MARINE GROUP.

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

11  Denied.

12

13  REQUEST FOR ADMISSION NO. 9:

14  Admit that YOU assigned SOUTHWEST MARINE's liability under the

15  Longshore & Harbor Workers' Compensation Act to MARINE GROUP in a document

16  titled "Assignment and Assumption Agreement."

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

18  Denied.

19

20  REQUEST FOR ADMISSION NO. 10:

21  Admit that you tendered this CLAIM to the insurance company(ies) who

22  provided SOUTHWEST MARINE with Longshore & Harbor Workers' Compensation

23  Act liability insurance.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

25  Denied.

26

27

28

1    REQUEST FOR ADMISSION NO. 11:

2          Admit that Arthur Engel was SOUTHWEST MARINE's president at the time

3    that it was formed.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

5

6

7    REQUEST FOR ADMISSION NO. 12:

8          Admit that Arthur Engel was one of SOUTHWEST MARINE's owners at the

9    time that it was formed.

10   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

11

12

13   REQUEST FOR ADMISSION NO. 13:

14         Admit that Arthur Engel was SOUTHWEST MARINE's president in 1997.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

16

17

18   REQUEST FOR ADMISSION NO. 14:

19         Admit that Arthur Engel was one of SOUTHWEST MARINE's owners in 1997.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

21

22

23   REQUEST FOR ADMISSION NO. 15:

24         Admit that YOU hold SOUTHWEST MARINE's pre-1997 liability under the

25   Longshore & Harbor Workers' Compensation Act.

26   **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

27         Denied.

28

REQUEST FOR ADMISSION NO. 16:

Admit that MARINE GROUP holds SOUTHWEST MARINE's pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.


REQUEST FOR ADMISSION NO. 17:

Admit that the National Average Weekly Wage on November 10, 2016, of $718.24, is based compensation from which to calculate death benefits here, so the initial weekly compensation rate for DECEDENT is $359.12.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Admitted.


REQUEST FOR ADMISSION NO. 18:

Admit that YOU are the LAST RESPONSIBLE EMPLOYER for this CLAIM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Denied.


REQUEST FOR ADMISSION NO. 19:

Admit that CLAIMANT is entitled to COMPENSATION for death benefits under 33 U.S.C. § 909.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied.


REQUEST FOR ADMISSION NO. 20:

Admit that YOU are not entitled to a credit under 33 U.S.C. § 933(f).

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Denied.

1  REQUEST FOR ADMISSION NO. 21:

2      Admit that this CLAIM is not barred under 33 U.S.C. § 933(g).

3  RESPONSE TO REQUEST FOR ADMISSION NO. 21:

4      Denied.

5

6  REQUEST FOR ADMISSION NO. 22:

7      Admit that YOU are not entitled to a credit under 33 U.S.C. § 933(e).

8  RESPONSE TO REQUEST FOR ADMISSION NO. 22:

9      Denied.

10

11  REQUEST FOR ADMISSION NO. 23:

12      Admit that YOU are not entitled to a relief under 33 U.S.C. § 908(f).

13  RESPONSE TO REQUEST FOR ADMISSION NO. 23:

14      Denied.

15

16  REQUEST FOR ADMISSION NO. 24:

17      Admit that MARINE GROUP and Marine Group Boat Works are different

18  entities.

19  RESPONSE TO REQUEST FOR ADMISSION NO. 24:

20      Denied.

21

22  REQUEST FOR ADMISSION NO. 25:

23      Admit that Marine Group Boat Works does not hold SOUTHWEST MARINE's

24  pre-1997 liability under the Longshore & Harbor Workers' Compensation Act.

25  RESPONSE TO REQUEST FOR ADMISSION NO. 25:

26      Denied.

27

28

1

2

3     Dated: October 26, 2020

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

_____
Frank B. Hugg, Attorney for
BAE SYSTEMS SAN DIEGO SHIP
REPAIR, INC., and THE MARINE
GROUP

1  <u>PROOF OF SERVICE BY MAIL</u>

2  I, the undersigned, declare:

3  That I am a citizen of the United States of America over the age of eighteen

4  years, and not a party to the within action.  That my business address is Law Offices of

5  Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated

6  below I served a copy of the **RESPONSE TO CLAIMANT'S REQUESTS FOR**

7  **ADMISSION TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE** on

8  the interested parties by enclosing a true copy thereof in a sealed envelope with fully

9  prepaid first class postage affixed thereon by placing same in the United States Mail at

10  Oakland, California, addressed as follows:

11  Geoff Sloniker, Esq.            Michael K. Marmer, Esq.
    Brayton Purcell LLP             Samuelsen, Gonzalez, Valenzuela & Brown, LLP
12  gsloniker@braytonlaw.com        mmarmer@sgvblaw.com

13  David Doeling, Esq.             Barry W. Ponticello, Esq.
    Aleccia & Mitani                England, Ponticello & St. Clair
14  ddoeling@aleccialaw.com         bponticello@eps-law.com

15  William N. Brooks, Esq.         David L. Edeli, Esq.
    Law Offices of William N. Brooks   Office of the Solicitor
16  wbrooks@wnblaw.com              edeli.david.l@dol.gov

17  I declare under penalty of perjury under the laws of the State of California that

18  the foregoing is true and correct and that this declaration was executed in Oakland,

19  California, on October 26, 2020.

20                                  _____
                                    Susan Chow
21

22

23

24

25

26

27

28

1  FRANK B. HUGG, ESQ. – No. 64911
   5810 Telegraph Avenue
2  Oakland, California 94609-1522
   Telephone:   (510) 595-9575
3  Facsimile:    (510) 595-9591

4  Attorney for Employers
   BAE SYSTEMS SAN DIEGO
5  SHIP REPAIR, INC., and
   THE MARINE GROUP

6

7

8              UNITED STATES DEPARTMENT OF LABOR

9              OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

13  MARY MARION                    )
                                   )   Case No.:    2019-LHC-01475
14      (Vernon Marion –           )
         deceased employee )       )   OWCP No.:   13-306597
15                                 )
        Claimant,                  )
16                                 )
    vs.                            )
17                                 )   RESPONSE TO CLAIMANT'S
    BAE SYSTEMS SAN DIEGO SHIP     )   REQUESTS FOR PRODUCTION TO
18  REPAIR, INC., and THE MARINE   )   BAE SYSTEMS SAN DIEGO SHIP
    GROUP, et al.                  )   REPAIR, INC., SET ONE
19                                 )
        Respondents.               )
20  _____)

21      PROPOUNDING PARTY:      MARY MARION, Claimant

22      RESPONDING PARTY:       BAE SYSTEMS SAN DIEGO SHIP REPAIR,
                                INC., and THE MARINE GROUP, Employers
23
24      SET NO.:                One.

25          **PRELIMINARY STATEMENT & OBJECTIONS**

26      Respondents object to the Request for Production, Set One, upon the grounds

27  that the Requests are overly broad, ambiguous, irrelevant, and not reasonably

28  calculated to lead to the discovery of admissible evidence.  29 C.F.R. §18.51(a).  BAE

1   further objects upon the grounds that the requested documents are protected by

2   attorney client and attorney work product privileges.   BAE further objects on the

3   grounds that these records are of a proprietary confidential nature.

4          Respondents also object that corporate documents have zero relevance.   The

5   same objection applies to corporates sales, changes of names, current officers and

6   testimony of an officer in an unrelated civil action in Oregon.   Without waiver of these

7   objections, BAE responds as follows:

8   REQUEST FOR PRODUCTION NO. 1:

9          YOUR current DOCUMENT retention policy.

10   RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

11          Objection, not relevant.

12

13   REQUEST FOR PRODUCTION NO. 2:

14          All of YOUR prior DOCUMENT retention policies.

15   RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

16          Not relevant.

17

18   REQUEST FOR PRODUCTION NO. 3:

19          YOUR Articles of Incorporation at the time of YOUR incorporation.

20   RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

21          Not relevant

22

23   REQUEST FOR PRODUCTION NO. 4:

24          All amendments to YOUR Articles of Incorporation.

25   RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

26          Not relevant.

27

28

1  <u>REQUEST FOR PRODUCTION NO. 5:</u>

2      ALL DOCUMENTS PERTAINING TO the relationship between YOU and

3  SOUTHWEST MARINE.

4  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 5:</u>

5      SOUTHWEST MARINE was a predecessor in interest to BAE.

6

7  <u>REQUEST FOR PRODUCTION NO. 6:</u>

8      ALL DOCUMENTS PERTAINING TO the sale of SOUTHWEST MARINE's

9  stock to SOUTHWEST MARINE HOLDINGS.

10  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 6:</u>

11      Not relevant.

12

13  <u>REQUEST FOR PRODUCTION NO. 7:</u>

14      ALL DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE

15  assigned to SOUTHWEST MARINE HOLDINGS.

16  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 7:</u>

17      Not relevant for BAE and its successors in interest, including but not limited to

18  Puglia Engineering, who is believed to have all extant documents in regard to the

19  alleged transfers of liability.

20

21  <u>REQUEST FOR PRODUCTION NO. 8:</u>

22      ALL DOCUMENTS PERTAINING TO liabilities that SOUTHWEST MARINE

23  assigned to MARINE GROUP.

24  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 8:</u>

25      Neither respondents TMG or BAE have such records.

26

27

28

1  REQUEST FOR PRODUCTION NO. 9:

2        ALL DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January

3  1, 1997.

4  RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

5        Nor relevant.

6

7  REQUEST FOR PRODUCTION NO. 10:

8        ALL DOCUMENTS PERTAINING TO YOUR assets and liabilities as of January

9  1, 1998.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

11        Not relevant.

12

13  REQUEST FOR PRODUCTION NO. 11:

14        The 1997 "Assignment and Assumption Agreement" that assigned liabilities to

15  MARINE GROUP.

16  RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

17        Confidential and not relevant to any issue.

18

19  REQUEST FOR PRODUCTION NO. 12:

20        The 1997 "Stock Purchase Agreement" that governed SOUTHWEST MARINE

21  HOLDING's purchase of SOUTHWEST MARINE's stock.

22  RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

23        Confidential and not relevant to any issue.  Stock purchases again are not related

24  in any fashion to the alleged agreement.

25

26

27

28

-4-

1    <u>REQUEST FOR PRODUCTION NO. 13:</u>

2       ALL DOCUMENTS, including the insurance policies, PERTAINING TO

3   SOUTHWEST MARINE's Longshore & Harbor Workers' Compensation Act liability

4   insurance for each year between 1979 and 1993.

5    <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 13:</u>

6       The policy is proprietary.

7

8    <u>REQUEST FOR PRODUCTION NO. 14:</u>

9       All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR

10   CORPORATE OFFICERS AT THE TIME OF your FORMATION.

11   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 14:</u>

12       Not relevant.

13

14   <u>REQUEST FOR PRODUCTION NO. 15:</u>

15       All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR corporate

16   officers in 1997.

17   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 15:</u>

18       Not relevant.

19

20   <u>REQUEST FOR PRODUCTION NO. 16:</u>

21       All DOCUMENTS PERTAINING TO and/or IDENTIFYING YOUR current

22   corporate officers.

23   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 16:</u>

24       Not relevant.

25

26   <u>REQUEST FOR PRODUCTION NO. 17:</u>

27       All DOCUMENTS PERTAINING TO any agreement between YOU and

28   MARINE GROUP PERTAINING TO this CLAIM.

1   RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

2       There may be such oral agreements, but TMG and BAE have resolved the

3   coverage issues between the corporations for the alleged losses herein.

4

5   REQUEST FOR PRODUCTION NO. 18:

6       A copy of the declaration of Arthur Engel, and all attached exhibits (Docket

7   Number 301), filed on April 20, 2011, in *Century Indemnity Company v. The Marine Group*

8   *LLC, et al*, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District

9   of Oregon.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

11      Not relevant.

12

13  REQUEST FOR PRODUCTION NO. 19:

14      A copy of the declaration of Arthur Engel (Docket Number 369), and all attached

15  exhibits, filed on July 11, 2011, in *Century Indemnity company v. The Marine Group, LLC,*

16  *et al*, Case No. 3:08-CV-01375-AC, filed in the United States District Court, District of

17  Oregon.

18  RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

19      Not relevant.

20

21                                    Respectfully Submitted,

22  Dated: October 26, 2020

23                                    Frank B. Hugg, Attorney for
                                      BAE SYSTEMS SAN DIEGO SHIP
24                                    REPAIR, INC., and THE MARINE
                                      GROUP

25

26

27

28

1

<u>PROOF OF SERVICE BY MAIL</u>

2

I, the undersigned, declare:

3

That I am a citizen of the United States of America over the age of eighteen

4

years, and not a party to the within action.  That my business address is Law Offices of

5

Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated

6

below I served a copy of the **RESPONSE TO CLAIMANT'S REQUESTS FOR**

7

**PRODUCTION TO BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., SET ONE** on

8

the interested parties by enclosing a true copy thereof in a sealed envelope with fully

9

prepaid first class postage affixed thereon by placing same in the United States Mail at

10

Oakland, California, addressed as follows:

11

Geoff Sloniker, Esq.
Brayton Purcell LLP

12

gsloniker@braytonlaw.com

Michael K. Marmer, Esq.
Samuelsen, Gonzalez, Valenzuela & Brown, LLP
mmarmer@sgvblaw.com

13

David Doeling, Esq.
Aleccia & Mitani

14

ddoeling@alecclaw.com

Barry W. Ponticello, Esq.
England, Ponticello & St. Clair
bponticello@eps-law.com

15

William N. Brooks, Esq.
Law Offices of William N. Brooks

16

wbrooks@wnblaw.com

David L. Edeli, Esq.
Office of the Solicitor
edeli.david.l@dol.gov

17

I declare under penalty of perjury under the laws of the State of California that

18

the foregoing is true and correct and that this declaration was executed in Oakland,

19

California, on October 26, 2020.

20

21

Susan Chow

22

23

24

25

26

27

28

# Exhibit 4

1 ALAN R. BRAYTON, ESQ., S.B. #73685
GEOFF T. SLONIKER, ESQ., S.B. #268049
2 gsloniker@braytonlaw.com
BRAYTON❖PURCELL LLP
3 ATTORNEYS AT LAW
222 Rush Landing Road
4 P.O. Box 6169
Novato, California 94948-6169
5 Tel: 415-898-1555
Fax: 415-898-1247
6

7 Attorneys for Claimant MARY MARION

8 **UNITED STATES DEPARTMENT OF LABOR**

9 **OFFICE OF ADMINISTRATIVE LAW JUDGES**

10

11 MARY MARION (Widow), VERNON          )    OALJ Case No.: 2019-LHC-01475
MARION (Deceased), Claimant,          )
12                                     )    OWCP Case No.: 13-306597
vs.                                   )
13                                     )    NOTICE OF VIDEOTAPED DEPOSITION
FRASER'S BOILER SERVICE,              )    OF ELLEN VINCK AND REQUEST FOR
14 Employer,                          )    PRODUCTION OF DOCUMENTS
                                      )
15        and                         )
                                      )
16 PACIFIC SHIP REPAIR AND            )
FABRICATION, Employer                 )
17                                     )
        and                           )
18                                     )
THE MARINE GROUP, Employer,           )
19                                     )
        and                           )
20                                     )
PACIFIC SHIP REPAIR, Employer,        )
21                                     )
        and                           )
22                                     )
DIRECTOR, OFFICE OF WORKERS'          )
23 COMPENSATION PROGRAMS, Party-      )
In-Interest.                          )
24                                     )

25        PLEASE TAKE NOTICE that, pursuant to 29 C.F.R. 18.64 and Rule 30 of the Federal

26 Rules of Civil Procedure, on December 28, 2020, at 11:00a.m. Pacific Time, via Zoom Video

27 Conferencing arranged by Aiken & Welch - A Veritext Company, upon oral examination,

28 Claimant in the above-captioned action will take the videotaped deposition of Ellen Vinck, who

BRAYTON❖PURCELL
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
NOVATO, CALIFORNIA 94948-6169
415-898-1555

1  has been previously identified as the Risk Consultant for The Marine Group, before a duly

2  qualified court reporter.

3       Said deposition will be taken before a certified shorthand court reporter who will be

4  present at said time and place via Zoom.  The Zoom Video Conferencing link, meeting ID, and

5  password will be sent to each party noticed hereby via email.

6       The deposition will also be recorded with audio and visual technology.  The court

7  reporting and videography will be provided by Aiken & Welch Court Reporters.

8       Claimant will schedule the Court reporter for this deposition.

9       Pursuant to the Federal Rules of Civil Procedure and the Code of Federal Regulations,

10  Ellen Vinck is requested to produce the documents, materials and other tangible items as

11  requested in Exhibit A attached hereto.

12

13  Dated:  _ December 9, 2020_          BRAYTON❖PURCELL LLP

14

15                                 By: _____

16                                      Geoff T. Sloniker
                                      Attorneys for Claimant

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\131330\LHWCA\OALJ PLEADINGS\Notice and DEP - Ellen Vinck.wpd
NOTICE OF DEPOSITION OF ELLEN VINCK AND REQUEST FOR THE PRODUCTION OF DOCUMENTS;
OALJ NO. 2019-LHC-01475 ; OWCP NO. 13-306597

**EXHIBIT A – DOCUMENT REQUEST**

**DEFINITIONS**

1.     "YOU" or "YOUR" shall refer to Ellen Vinck.

2.     "MARINE GROUP" shall refer to Marine Group LLC and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities.

3.     "SOUTHWEST MARINE" shall refer to Southwest Marine, Inc. and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities.

4.     "MARINE GROUP BOAT WORKS" shall refer to Marine Group Boat Works and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities.

5.     "BAE SYSTEMS" shall refer to BAE Systems San Diego Ship Repair and its subsidiaries, agents, officers, employees, board of directors, and any and all predecessors-in-interest or alternate entities.

6.     "DOCUMENT" shall mean every original (and every copy of any original or copy which differs in any way from other copies and originals of such documents) of all written, printed, typed, recorded, transcribed, published, taped, filmed, photocopied or graphic matter of any kind or description, however produced or reproduced, and any other data compilations from which information can be obtained or translated, through detection devices if necessary, into a reasonably usable form, including but not limited to, letters, memoranda, reports, computer data, spreadsheets, notes, telexes, diaries, calendars tables, computer printouts, surveys, blueprints, diagrams, drafts, carbon copies, and phone messages.

7.     "PERTAINING TO" shall mean directly or indirectly mentioning or describing, relating to, concerning, having to do with, being relevant to, connecting with, or reflecting upon the stated subject matter.

8.     "IDENTIFY", "IDENTIFIED," and "IDENTIFYING" when used in reference to a PERSON means to describe by name, last known telephone number and last known address,

K:\Injured 123330 LHWCA\OALJ PLEADINGS\Notice and RFP – Ellen Vinck and

3

NOTICE OF DEPOSITION OF ELLEN VINCK AND REQUEST FOR THE PRODUCTION OF DOCUMENTS;
OALJ NO. 2019-LHC-01475 ; OWCP NO. 13-306597

1  including city and state of residence.

2       9.    "PERSON" and "PERSONS" include natural persons, firms, associations,

3  organizations, contractors, premise owners, partnerships, businesses, trusts, corporations, or

4  public entities.

5  <div align="center">**DOCUMENTS REQUESTED**</div>

6       1.    All DOCUMENTS that YOU reviewed to prepare for this deposition.

7       2.    MARINE GROUP's current and prior DOCUMENT retention policies.

8       3.    All DOCUMENTS PERTAINING TO the date of MARINE GROUP's

9  incorporation.

10       4.    MARINE GROUP's initial Articles of Incorporation.

11       5.    All amendments to MARINE GROUP's Articles of Incorporation.

12       6.    All DOCUMENTS IDENTIFYING PERSONS who are MARINE GROUP's

13  current corporate officers.

14       7.    All DOCUMENTS IDENTIFYING PERSONS who were MARINE GROUP's

15  prior corporate officers.

16       8.    ALL DOCUMENTS PERTAINING TO any of SOUTHWEST MARINE's

17  liabilities, including its liability under the Longshore & Harbor Work Compensation Act, that

18  MARINE GROUP now holds.

19       9.    The 1997 Stock Purchase Agreement regarding the sale of SOUTHWEST

20  MARINE's stock to Southwest Marine Holdings, Inc.

21       10.    The 1997 "Assignment and Assumption Agreement" that assigned liabilities

22  from SOUTHWEST MARINE to MARINE GROUP.

23       11.    All DOCUMENTS PERTAINING TO MARINE GROUP's relationship with

24  SOUTHWEST MARINE.

25       12.    All DOCUMENTS IDENTIFYING PERSONS with information PERTAINING

26  TO YOUR relationship with SOUTHWEST MARINE.

27       13.    All DOCUMENTS PERTAINING TO MARINE GROUP's relationship with

28  BAE SYSTEMS.

14.     All DOCUMENTS IDENTIFYING PERSONS with information PERTAINING TO MARINE GROUP's relationship with BAE SYSTEMS.

15.     All DOCUMENTS IDENTIFYING PERSONS with information PERTAINING TO MARINE GROUP's relationship with MARINE GROUP BOAT WORKS.

16.     All DOCUMENTS PERTAINING TO MARINE GROUP's relationship with MARINE GROUP BOAT WORKS.

NOTICE OF DEPOSITION OF ELLEN VINCK AND REQUEST FOR THE PRODUCTION OF DOCUMENTS;
OALJ NO. 2019-LHC-01475 ; OWCP NO. 13-306597

1

<u>PROOF OF SERVICE</u>

2

     I am employed in the County of Marin, State of California.  I am over the age of 18 years

3

and am not a party to the within action.  My business address is 222 Rush Landing Road, P.O. Box 6169, Novato, California 94948-6169.

4

     On _December 9, 2020_, I served electronically, via Email Only, the following

5

document(s) described as:  on the interested party(ies) in this action as follows:

6

NOTICE OF DEPOSITION OF ELLEN VINCK

7

Ellen Vinck
c/o Frank B. Hugg, Esq.

8

5810 Telegraph Ave.
Oakland, Ca 94609

9

fhugg@hugglaw.onmicrosoft.com

David Edeli, Esq.
Office of the Solicitor
U.S. Department of Labor
90 - 7th Street, Suite 3-700
San Francisco, CA  94103
Edeli.David.L@dol.gov

10

11

Barry Ponticello, Esq.

12

England, Ponticello & St. Clair
701 B Street, Suite 1790

13

San Diego, CA 92101
bponticello@eps-law.com

Frank B. Hugg, Esq.
5810 Telegraph Ave.
Oakland, Ca 94609
fhugg@hugglaw.onmicrosoft.com

14

Nicholas Sabatella, Esq.

15

David Doeling, Esq.
ALECCIA & MITANI

16

One World Trade Center, Suite 1840
Long Beach, CA  90831

17

nsabatella@aleccialaw.com
ddoeling@aleccialaw.com

18

19

     Executed __December 9, 2020___, at Novato, California.

20

     I declare under penalty of perjury under the laws of the State of California that the

21

foregoing is true and correct.

22

23

_Rikki Bambauer_

24

Rikki Bambauer

25

26

27

_Mary Marion (Vernon Marion, deceased) vs. Pacific Ship Repair., et al._
OALJ Case No.: 2019-LHC-01475; OWCP Case No.: 13-306597

28

BRAYTON♦PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
PO BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 8984-1555

K:\Injured\121330\LHWCA\OALJ\PLEADINGS\POS Ntc of Depo Vinck 120920.wpd
PROOF OF SERVICE BY MAIL

# Exhibit 5

**Frank Hugg**

| | |
|---|---|
| **From:** | Geoff Sloniker <GSloniker@braytonlaw.com> |
| **Sent:** | Wednesday, May 12, 2021 2:34 PM |
| **To:** | Frank Hugg |
| **Subject:** | Marion Depositons |

Dear Mr. Hugg,

Claimant Mary Marion and her daughter, Tina Amerson, are available for deposition. Their schedules are flexible, so please serve the deposition notices for the dates (Monday through Friday) on which you wish the depositions to proceed. Should there be a conflict, we will meet and confer, but I anticipate that there will no be any issues.

Also, I sent an email today regarding your proposed stipulation. If BAE Systems is unwilling to agree, please provide dates on which the documents and amended responses to discovery will be provided. Also, please provide dates on which the witnesses are available for their depositions (which must happen after the production of documents).

Very Truly Yours,

Geoff T. Sloniker

Associate Attorney

Brayton Purcell LLP

222 Rush Landing Road

Novato, CA 94948

Tel: (415) 898-1555

Fax: (415) 898-1247

*Please be advised that Brayton\*Purcell is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents electronically. Receipt of and response to physical mailings may be delayed. Be safe and thank you in advance for your cooperation.*

NOTICE: This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges that may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, forward or rely on the email and its attachments in any way.
NOTICE: NO DUTIES ARE ASSUMED, INTENDED OR CREATED BY THIS COMMUNICATION. If you have not executed a fee contract or an engagement letter, this firm does NOT represent you as your attorney. You are encouraged to retain counsel of your choice if you desire to do so. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved.

1   FRANK B. HUGG, ESQ. – No. 64911
5810 Telegraph Avenue
2   Oakland, California 94609-1522
Telephone:   (510) 595-9575
3   Facsimile:    (510) 595-9591

4   Attorney for Employer
BAE SYSTEMS SAN DIEGO
5   SHIP REPAIR, INC.,

6

7

8                 UNITED STATES DEPARTMENT OF LABOR

9                OFFICE OF ADMINISTRATIVE LAW JUDGES

10

11

12

13                                    Case No.:

14                                      OWCP No.:

15            Claimant,

16   vs.

17   BAE SYSTEMS SAN DIEGO SHIP
REPAIR, INC.                          STIPULATION

18           Employers.

19

20        WHEREFORE, BAE Systems San Diego Ship Repair, Inc. ("BAE"), and the

21   Claimant seek to resolve issues in respect to Claimant's employers and liability

22   therefore, IT IS HEREBY STIPULATED AS FOLLOWS.

23       1.  Claimant worked for BAE for the period of time from 1979 to 1993.  BAE hereby

24   assumes liability for any award that may be entered against BAE by an Administrative

25   Law Judge, provided that these stipulations are without prejudice for BAE to contest

26   the following issues:

27       (a)    Was the Claimant exposed to asbestos while working for BAE and did

28   such exposure relate to or cause his demise?

argument personally or by representative it shall not be necessary for the Administrative Law Judge to give notice.

In short, an ALJ can call a hearing on-the-record only when all of the Respondents agree to waive of the right to a live hearing.

# Exhibit 6

**Frank Hugg**

| | |
|---|---|
| **From:** | Frank Hugg |
| **Sent:** | Friday, May 14, 2021 12:50 PM |
| **To:** | Geoff Sloniker |
| **Subject:** | VERNON MARION |
| **Attachments:** | mary.tina.teddy.depo.notice.210514.doc |

OK – will notice Teddy and perhaps he will become available upon this notice.  Will mail to him, if Brayton provides address.

Still working on BAE and TMG.  Should we stipulate to a new discovery deadline?

**Frank Hugg**

| | |
|---|---|
| **From:** | Spy Chow <spychow18@gmail.com> |
| **Sent:** | Wednesday, May 19, 2021 10:55 AM |
| **To:** | Frank Hugg |
| **Subject:** | Marion Checks |
| **Attachments:** | brayton.checks.(4).PDF |

Total amount is $22,965,365.11

5/19/2021

```
            .0.
13,996,681.02   +
 5,860,485.39   +
 2,722,942.3    +
   385,256.4    +
                =
22,965,365.11   *
```

PLANT INSULATION COMPANY
ASBESTOS SETTLEMENT TRUST
CLAIM PAYMENTS
300 E 2ND ST STE 1205
RENO, NV 89501-1566

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

1822

7/8/2019

PAY TO THE
ORDER OF   Brayton Purcell Client Trust Acct                                    $  **5,660,485.39

Five Million Six Hundred Sixty Thousand Four Hundred Eighty-Five and 39/100***************************   DOLLARS

Brayton Purcell Client Trust Acct
222 Rush Landing Road
Novato, CA 94945-2469

TWO SIGNATURE REQUIRED OVER 25,000

AUTHORIZED SIGNATURE

MEMO
Funds Received Ratio Increase-Trust Claims

⑈000000 18 22⑈  ⑆32 1270 74 2⑆  579527528 7⑈

---

| PLANT INSULATION COMPANY  ASBESTOS SETTLEMENT TRUST | | 1822 |
|---|---|---|
| Brayton Purcell Client Trust Acct | 7/8/2019 | |
| | | 5,313,014.30 |
| | | 347,471.09 |

# Plant Insulation Company
(Payment #2)

| Claim Checking - 528   Funds Received Ratio Increase-Trust Claims | 5,660,485.39 |
|---|---|

WESTERN ASBESTOS SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1556

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

7614

7/8/2019

PAY TO THE
ORDER OF   Brayton Purcell Client Trust Acct                           $ **13,996,681.02

Thirteen Million Nine Hundred Ninety-Six Thousand Six Hundred Eighty-One and 02/100*************************** DOLLARS

Brayton Purcell Client Trust Acct
222 Rush Landing Road
Novato CA 94945

TWO SIGNATURES REQUIRED OVER $25,000.00

MEMO

Trust Payment Percentage Increase

AUTHORIZED SIGNATURE

⑈0000007614⑈  ⑆321270742⑆  3795620214⑈

---

WESTERN ASBESTOS SETTLEMENT TRUST  (CLAIM PAYMENTS)                          7614

Brayton Purcell Client Trust Acct                    7/8/2019

10,619,637.12
3,377,043.90

## Western MacArthur Company
(Payment #2)

Claim Checking - 021    Trust Payment Percentage Increase                          13,996,681.02

J.T. THORPE SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1566

WELLS FARGO BANK, N.A.
www.wellsfargo.com
94-7074/3212

5233

7/13/2018

PAY TO THE
ORDER OF   Brayton Purcell Client Trust Account                       $ **2,722,942.30

Two Million Seven Hundred Twenty-Two Thousand Nine Hundred Forty-Two and 30/100************************   DOLLARS

Brayton Purcell Client Trust Account
222 Rush Landing Rd.
Novato, CA 94945-2469

TWO SIGNATURES REQUIRED
OVER $25000.00

AUTHORIZED SIGNATURE

MEMO
         Payment Percentage Increase

⑈000000 5233⑈ ⑆321270742⑆ 5795275345⑈

---

J.T. THORPE SETTLEMENT TRUST   (CLAIM PAYMENTS)                                5233

Brayton Purcell Client Trust Account                    7/13/2018

| | |
|---|---|
| Trust Payment Percentage Increase | 2,192,436.62 |
| Trust Inflation Adjustment. | 483,213.03 |
| Pre-Petition Payment Percentage Increase | 38,751.76 |
| Pre-Petition Inflation Adjustment | 8,540.89 |

## J.T. Thorpe, Inc.
(Payment #2)

Claim Checking - 534   Payment Percentage Increase                      2,722,942.30

J.T. THORPE SETTLEMENT TRUST
(CLAIM PAYMENTS)
300 E 2ND ST STE 1410
RENO, NV 89501-1566

WELLS FARGO BANK, N.A. 
www.wellsfargo.com
94-7074/3212

5074

7/6/2017

PAY TO THE
ORDER OF _____ Brayton Purcell Client Trust Account                          $ **585,256.40

Five Hundred Eighty-Five Thousand Two Hundred Fifty-Six and 40/100******************************************************** DOLLARS

Brayton Purcell Client Trust Account
222 Rush Landing Rd.
Novato, CA 94945-2469

TWO SIGNATURES REQUIRED
OVER $25000.00

AUTHORIZED SIGNATURE

MEMO
Claim Payment - Schedule Attached

⑈000000 5074⑈ ⑆321270742⑆ 5795275345⑈

---

J.T. THORPE SETTLEMENT TRUST   (CLAIM PAYMENTS)                                          5074
Brayton Purcell Client Trust Account                          7/6/2017

585,256.40
585,256.40
-585,256.40

# J.T. Thorpe, Inc.
(Payment #1)

Claim Checking - 534    Claim Payment - Schedule Attached                          585,256.40

<u>PROOF OF SERVICE BY MAIL</u>

I, the undersigned, declare:

That I am a citizen of the United States of America over the age of eighteen years, and not a party to the within action. That my business address is Law Offices of Frank B. Hugg, 5810 Telegraph Avenue, Oakland, CA 94609. That on the date indicated below I served a copy of the **(1) LETTER OF JUNE 17, 2021, TO JUDGE EVAN H. NORDBY and (2) DECLARATION RE: RESPONSE TO ORDER TO SHOW CAUSE WHY MATTER SHOULD NOT BE REFERRED TO DISTRICT COURT OF THE NORTHERN DISTRICT,** on the interested parties via email as follows:

Judge Evan H. Nordby
Office of Administrative Law Judges
U.S. Department of Labor
OALJ-SanFrancisco@dol.gov

Geoff Sloniker, Esq.
Brayton Purcell, LLP
gsloniker@braytonlaw.com

Barry W. Ponticello, Esq.
England, Ponticello & St. Clair
bponticello@eps-law.com

David Doeling, Esq.
Aleccia & Mitani
ddoeling@aleccialaw.com

David Louis Edeli, Esq.
Office of the Solicitor
edeli.david.l@dol.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed in Oakland, California, on June 17, 2021.

Susan Chow

EXHIBIT E

**U.S. Department of Labor**

Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)
OALJ-SanFrancisco@dol.gov



**Issue Date: 02 December 2021**

CASE NO.:     2019-LHC-01475

OWCP NO.:   13-306597

*In the Matter of:*

**MARY MARION**
**(surviving spouse of VERNON J. MARION)**,
          Claimant,

                    vs.

**PACIFIC SHIP REPAIR,**
**BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC.,**
and **THE MARINE GROUP**,
          Employers,

                    and

**FAIRLEAD BOATWORKS** and **FRASER BOILER SERVICES/**
**SIGNAL MUTUAL INDEMNITY ASS'N LTD.**,
          Employers and Carrier.

**DIRECTOR, OFFICE OF**
**WORKERS' COMPENSATION PROGRAMS**,
          Party-in-Interest.

### FINDINGS OF FACT REGARDING DISCOVERY SANCTIONS
### AND ORDER OF REFERRAL

The parties have agreed to submit this Longshore Act case on a written record.

On December 14, 2020, Claimant filed a Motion To Compel BAE Systems Ship Repair San Diego To Provide Further Responses To Claimant's Discovery And To Produce Documents. Claimant included at pages 4-9 of her Motion the various interrogatories, document production requests, and admissions that were the subject of her Motion.

On a March 16, 2021, conference call on the record, following further filings, I granted Claimant's Motion to Compel. I ordered that Respondent BAE Systems San Diego serve supplemental responses to Claimant's interrogatories and requests for documents, as well as answers to requests for admissions 1 through 14 related to a Mr. Engel, no later than April 19, 2021. For the reasons stated on the record on the March 16, 2021 conference call, I found the responses and objections of Respondent BAE Systems San Diego to be deficient.

On the March 16 call, I also ordered that Claimant's properly noticed depositions of four individuals,, Richard Stanton, Ellen Vinck, Laura Machado, and Lisa Cake,[1], be conducted no later than a new discovery cutoff set for May 28, 2021. Counsel for both Claimant and Respondent BAE Systems San Diego appeared and participated in the March 16 call. This conference call was transcribed for the case record and the transcript made available to the parties.

By letter-motion filed June 2, 2021, Claimant stated that the supplemental written discovery that I ordered had not been produced, and that the depositions were not held. Claimant sought referral to the U.S. District Court for imposition of discovery sanctions. *See Goicochea v. Wards Cove Packing Co.*, 37 BRBS 4 (2003) (setting out Section 27(b) procedure for referral for discovery sanctions).

By order dated June 3, 2021, I ordered that Respondent BAE Systems San Diego show cause no later than June 18, 2021, why this discovery matter should not be referred to the United States District Court for the Northern District of California for further proceedings under the Longshore Act. I also stayed discovery and merits briefing in this case, until further order.

Respondent BAE Systems San Diego filed a response to my Order to Show Cause, dated June 17, 2021. To summarize, Respondent argues that there is no "lawful order" to respond to Claimant's discovery that it violated. Respondent acknowledges that if "[a] party having been ordered to produce documents [] then refuses, §27(b) may apply." Respondent also argues that Claimant has engaged in questionable discovery conduct of its own.

Respondent BAE Systems San Diego did not serve supplemental discovery responses as ordered by me on the March 16 conference call, which was noted on the record by Claimant in a filing on July 19, 2021. Nor did the four noticed depositions take place by the new discovery deadline.

The Longshore Act provides a specific procedure for discovery misconduct:

(b) If any person in proceedings before a deputy commissioner or Board disobeys or resists any lawful order or process, . . . or neglects to produce, after having been ordered to do so, any pertinent book, paper, or document, or refuses to appear after having been subpoenaed, or upon appearing refuses to take the oath as a witness, or after having taken the oath refuses to be examined according to law, the deputy commissioner or Board shall certify the facts to the district court having jurisdiction in the place in which he is sitting (or to the United States District Court for the District of Columbia if he is sitting in such District) which shall thereupon in a summary manner hear the evidence as to the acts complained of, and if the evidence so warrants, punish such person in the same manner and to the same extent as for a contempt committed before the court, or commit such person upon the same conditions as if the doing

---

[1] These individuals are identified in the conference call transcript by last name as Stanton, "Vink," "Machato," and "Kake." As of September 3, 2020, Richard Stanton was the Director of Risk Management for BAE Systems Ship Repair, corporate parent of BAE Systems San Diego Ship Repair. Ellen Vinck and Laura Machado are employees of The Marine Group. Machado was, as of August 31, 2020, CFO of The Marine Group. Ellen Vinck was a Risk Consultant of The Marine Group as of the same date. Lisa Cake is or was a Workers' Compensation Manager, apparently for BAE Systems San Diego Ship Repair, as she signed their Form LS-202. I acknowledge that Respondent BAE Systems San Diego Ship Repair may not necessarily have control over some of these deponents, if they are former employees or solely employees of The Marine Group. But I note that Counsel for Respondent BAE Systems San Diego Ship Repair also represents The Marine Group, and should be able to facilitate these depositions.

of the forbidden act had occurred with reference to the process of or in the presence of the court.

33 U.S.C. § 927(b); *see generally A-Z Int'l v. Phillips*, 179 F.3d 1187, 1194 (9th Cir. 1999); *Goicochea*, 37 BRBS 4. Because the Act specifies this referral procedure, neither the OALJ rules of procedure at 29 C.F.R. Part 18 nor the Federal Rules of Civil Procedure apply. *Goicochea*, 37 BRBS at 7-8. The referring ALJ need not recommend a specific sanction. *A-Z Int'l*, 179 F.3d at 1194 n.9.

I find that my March 16 order, transcribed into the record, was a lawful order to serve supplemental discovery responses, to which Respondent BAE Systems San Diego did not comply. I also find that my order that the four depositions take place by the new discovery deadline was a lawful order. At no time did Respondent BAE Systems San Diego file a motion for a protective order, *see* 29 C.F.R. § 18.52, seeking to modify my March 16 order or otherwise limit the scope of the ordered discovery. The record does not reflect any good cause that the supplemental responses were not served, or that the depositions did not take place. That Claimant may also have failed to comply with discovery obligations does not excuse Respondent's non-compliance.

This case is pending in the Office of Administrative Law Judges in San Francisco, and therefore the United States District Court for the Northern District of California is the "district court having jurisdiction." 33 U.S.C. § 927(b). As the Act prescribes one and only one procedure for enforcing compliance with discovery orders, it is ORDERED that the foregoing findings of fact are certified to the United States District Court for the Northern District of California for further proceedings as set forth in the Act. *See A-Z Int'l*, 179 F.3d at 1192-94 & n.9.

Within 30 days from the date of this Order, Claimant is ORDERED to file a Complaint in the United States District Court for the Northern District of California appending this Order, Claimant's December 14, 2020 Motion to Compel, the transcript of the March 16, 2021 conference call, my June 3, 2021 Order to Show Cause, and Respondent's June 17, 2021 response to the Order to Show Cause. *See A-Z Int'l*, 179 F.3d at 1194 n.9 (quoting Fed. R. Civ. P. 3).

Other than the proceeding in the District Court, it is ORDERED that this case remains stayed. Should the parties resolve this discovery dispute, it is ORDERED that they file a status report to that effect.



EVAN H. NORDBY
Administrative Law Judge

**SERVICE SHEET**

Case Name:  **MARION_VERNON_J_v_PACIFIC_SHIP_REPAIR_**

Case Number: **2019LHC01475**

Document Title: **FINDINGS OF FACT REGARDING DISCOVERY SANCTIONS AND ORDER OF REFERRAL**

I hereby certify that a copy of the above-referenced document was sent to the following this 2nd day of December, 2021:

**MAURICE WILLIAMS**
PARALEGAL SPECIALIST

Geoff T. Sloniker, Esq.
gsloniker@braytonlaw.com
Brayton Purcell, LLP
222 Rush Landing Road, P.O. Box 6169
NOVATO CA 94948-8169
        *{Electronic - Regular Email}*

David Doeling, Esq.
ddoeling@aleccialaw.com
Aleccia & Mitani
One World Trade Center, Suite 1840
LONG BEACH CA 90831
        *{Electronic - Regular Email}*

Frank B. Hugg, Esq.
fhugg@hugglaw.onmicrosoft.com
5810 Telegraph Ave.
OAKLAND CA 94609
        *{Electronic - Regular Email}*

David Edeli, Esq.
US Department of Labor
Office of the Solicitor
90 - 7th Street, Suite 3-700
SAN FRANCISCO CA 94103
        *{Electronic - Regular Email}*

Barry Ponticello, Esq.
bponticello@eps-law.com
England, Ponticello & St. Clair
701 B Street, Suite 1790
SAN DIEGO CA 92101
        *{Electronic - Regular Email}*

Jennifer Sta.Ana
staana.jennifer.l@dol.gov
Office of the Solicitor, San Francisco
90 7th Street
Suite 3-700
SAN FRANCISCO CA 94103
        *{Electronic - Regular Email}*

Regional Solicitor
U. S. Department of Labor
Suite 3-700
90 Seventh Street
SAN FRANCISCO CA 94103-1516
        *{Electronic - Regular Email}*